K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice forthcoming*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., AND WHATSAPP LLC,<br><br>Defendants. | CASE NO. 26-CV-0751<br><br>**META PLATFORMS, INC., AND WHATSAPP LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Complaint Filed Date:  January 23, 2026<br><br>Judge:         Honorable Rita F. Lin<br>Hearing Date:  June 2, 2026<br>Time:          10:00 AM<br>Courtroom:     15, 18th Floor |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2026, at 10:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California, Defendants Meta Platforms, Inc. and WhatsApp LLC (collectively, "WhatsApp"), will and hereby do move to dismiss Plaintiffs' complaint with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). WhatsApp moves to dismiss Plaintiffs' complaint because Plaintiffs have failed to plead their claims with adequate particularity under Rule 9(b) and cannot state a claim upon which relief can be granted under Rule 12(b)(6). This Motion is based on this Notice of Motion, the accompanying brief, all other papers filed in this action, the arguments of counsel, and any other matter the Court wishes to consider.

DATED: March 27, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP


*/s/ K. Winn Allen*

K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice forthcoming*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.,
and WhatsApp LLC*

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES AND REQUESTED RELIEF ...................................................................1

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

     A.     Factual Background ...................................................................................................2

     B.     Procedural History ....................................................................................................3

LEGAL STANDARD....................................................................................................................3

ARGUMENT ...............................................................................................................................4

I.     Plaintiffs' Barebones Allegations Of Fraud Fail Under Rule 9(b). ................................4

     A.     Rule 9(b) Governs Plaintiffs' Entire Complaint. ....................................................5

     B.     The Complaint Does Not Satisfy Rule 9(b)'s Stringent Requirements. ............................6

II.     The Complaint's Allegations Are Not Plausible Even Under Rule 8...............................9

III.     Many Claims Suffer From Additional Defects. ...........................................................11

     A.     Certain Counts Fail For Lack Of A Cognizable Harm. .......................................11

     B.     Certain Claims Improperly Seek Extraterritorial Application Of U.S. And California Law To Non-Residents. .................................................................................12

IV.     The Complaint Is An Impermissible Shotgun Pleading. ..............................................14

CONCLUSION............................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*,
   715 F. Supp. 3d 1274 (C.D. Cal. 2024) ...............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................... *passim*

*Baig v. Meta Platforms, Inc.*,
   No. 25-cv-7604 (N.D. Cal. Mar. 19, 2026)........................................................................10

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
   674 F. Supp. 3d 884 (S.D. Cal. 2023).................................................................................10

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) .........................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................... *passim*

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .........................................................................................9, 11

*Campbell v. Honey Sci., LLC*,
   797 F. Supp. 3d 1080 (N.D. Cal. 2025) .........................................................................13, 14

*Citcon USA, LLC v. Miao*,
   2021 WL 3402783 (N.D. Cal. Aug. 4, 2021) ....................................................................10

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..............................................................................11

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ..........................................................................................6, 9

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...........................................................................................8

*de Ayora v. Inspire Brands, Inc.*,
   2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)........................................................................6

*DellaSala v. Samba TV, Inc.*,
   2025 WL 3034069 (N.D. Cal. Oct. 30, 2025).....................................................................13

*Dfinity USA Rsch. LLC v. Bravick*,
   2023 WL 2717252 (N.D. Cal. Mar. 29, 2023)................................................................13, 14

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...................................................................................11

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ...............................................................................................12

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).........................................................................................................1, 4, 8

*Gibson v. City of Portland*,
   165 F.4th 1265 (9th Cir. 2026) ..............................................................................................15

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
   323 F.3d 1219 (9th Cir. 2003) ...............................................................................................14

*Henderson v. Chicago Cubs Baseball Club, LLC*,
   2018 WL 3326682 (C.D. Cal. May 24, 2018) .......................................................................12

*Hudson Bay Master Fund Ltd. v. Centripetal Networks, Inc.*,
   2016 WL 9412455 (E.D. Va. Dec. 20, 2016) ........................................................................10

*In re Interlink Elecs., Inc., Sec. Litig.*,
   2007 WL 9857528 (C.D. Cal. Sept. 26, 2007) .........................................................................8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................................5, 7

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) .................................................................................12

*Lineberry v. AddShopper, Inc.*,
   2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .........................................................................13

*Moore v. Centrelake Med. Grp., Inc.*,
   299 Cal. Rptr. 3d 544 (Ct. App. 2022)...................................................................................11

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ..............................................................................................9, 10

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ..........................................................................................11

*Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004).....................................................................................................8

*Robichaud v. Speedy PC Software*,
   2013 WL 818503 (N.D. Cal. Mar. 5, 2013)............................................................................6

*Rodriguez v. Google LLC*,
   2021 WL 2026726 (N.D. Cal. May 21, 2021)......................................................................6, 7

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Royal Dutch/Shell Transp.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ...............................................................................8

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ...................................................................................................8

*Ryan v. Starco Brands, Inc.*,
  2024 WL 5102651 (N.D. Cal. Apr. 19, 2024) ......................................................................5, 6

*Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*,
  2024 WL 4003894 (C.D. Cal. June 5, 2024) ...........................................................................13

*SEC v. Drake*,
  2017 WL 6507766 (C.D. Cal. Dec. 18, 2017) ...........................................................................8

*Smith v. Rack Room Shoes, Inc.*,
  2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) (Lin, J.) .............................................................11

*Smith v. Rack Room Shoes, Inc.*,
  2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) (Lin, J.)..............................................................12

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) .....................................................................................................5

*Sullivan v. Oracle Corp.*,
  254 P.3d 237 (Cal. 2011) .........................................................................................................13

*Tanner v. Acushnet Co.*,
  2023 WL 8152104 (C.D. Cal. Nov. 20, 2023).........................................................................11

*Tavernetti v. Super. Ct.*,
  583 P.2d 737 (Cal. 1978) .........................................................................................................15

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) .....................................................................................14

*United States v. Peterson*,
  812 F.2d 486 (9th Cir. 1987) ...................................................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................................4, 5, 7

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................................6, 7

*Yastrab v. Apple Inc.*,
  2015 WL 1307163 (N.D. Cal. Mar. 23, 2015).........................................................................6

*Zheng v. Yahoo! Inc.*,
  2009 WL 4430297 (N.D. Cal. Dec. 2, 2009)...........................................................................13

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Statutes**

Cal. Penal Code § 496(c) ..............................................................................................11, 13

Cal. Penal Code § 502(a) ...................................................................................................13

Cal. Penal Code § 630..........................................................................................................13

Cal. Penal Code § 631(a) ....................................................................................................15

Cal. Penal Code § 632(a) ....................................................................................................15

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................ *passim*

Fed. R. Civ. P. 9(b) ................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 4

**Other Authorities**

35A C.J.S. *Fed. Civ. Proc.* § 310 (2025) .........................................................................15

**STATEMENT OF ISSUES AND REQUESTED RELIEF**

Meta Platforms, Inc. and WhatsApp LLC (collectively, "WhatsApp") request that the Court dismiss Plaintiffs' claims with prejudice under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**INTRODUCTION**

This case is premised on a false and implausible allegation: Plaintiffs claim that despite WhatsApp's public commitment that user messages are end-to-end encrypted, WhatsApp actually has "access to *all* WhatsApp users' encrypted communications in their entirety." *See* Doc. 1 ("Compl.") ¶ 5. As WhatsApp has repeatedly explained to Plaintiffs, that allegation is false and the complaint should be withdrawn. But even setting that aside, the Complaint clearly lacks the factual support necessary to proceed past the pleadings. If Plaintiffs' allegations were true, it would mean that WhatsApp has been perpetrating a decade-long fraudulent conspiracy involving hundreds or thousands of employees and contractors secretly spying on user messages and somehow keeping it under wraps, all while deceiving users, courts, and law enforcement. Such an extraordinary claim demands detailed factual support. Instead, Plaintiffs offer only a handful of conclusory allegations about WhatsApp's supposed access to encrypted messages. This case cannot proceed on such thin allegations, especially in a lawsuit attacking WhatsApp's hard-won reputation for privacy and security.

The complaint misses the mark in more ways than one. *First*, the complaint sounds in fraud—it alleges that WhatsApp deceived its users for over a decade about WhatsApp's encryption—yet fails to provide the particularized facts required by Rule 9(b). *Second*, even under the more lenient pleading standard of Rule 8(a)(2), Plaintiffs' barebones allegations do not plausibly allege misconduct by WhatsApp. *Third*, Plaintiffs fail to allege injury sufficient to sustain many of their statutory claims or their claim for unjust enrichment. And in any event, those statutes (and the California Constitution) either do not extend to non-residents or do not apply extraterritorially. *Fourth*, the complaint is an impermissible shotgun pleading because each count adopts the allegations of all preceding counts, and some counts include more than one claim for relief.

Plaintiffs' complaint cannot be remedied. Despite having received an evidentiary proffer disproving their allegations, Plaintiffs have declined to amend their complaint with any additional evidence. Accordingly, the Court should dismiss the complaint with prejudice.

**BACKGROUND**

**A.      Factual Background**

"WhatsApp is the most popular messaging app in the world," with over three billion users.  *See* Compl. ¶ 1.  Since 2014, Meta has owned WhatsApp.  *Id.*  WhatsApp uses end-to-end encryption, so users' "personal messages, photos, calls and more stay between [them] and the people [they] choose, meaning not even WhatsApp can see them."  *Id.* ¶¶ 1, 24 (emphasis omitted).  Since WhatsApp's founding, protecting users' privacy has been part of WhatsApp's "DNA."  *Id.* ¶ 21 (emphasis omitted).

End-to-end encryption protects users' privacy by encrypting data "on the sender's device" and permitting decryption only "once it reaches the recipient's device."  *Id.* ¶ 32.  Unlocking encrypted messages requires a "key," so "they remain encrypted and unreadable to everyone but that intended recipient, because only the sender and the recipient have the key to 'unlock' them on their respective devices."  *Id.*  WhatsApp's end-to-end encryption is built on the Signal Protocol, *id.* ¶ 33, an industry-leading open-source encryption system.  Since April 5, 2016, the Signal Protocol has ensured WhatsApp keeps users' private messages private.  *Id.*

WhatsApp can access message content only when users choose to give WhatsApp access.  As WhatsApp publicly discloses, "when a user reports another user in an individual chat, WhatsApp receives up to five of the last messages the reported user sent to the reporting user."  *Id.* ¶ 28 & n.23.  WhatsApp is also transparent that certain types of communications, such as business messaging services that use Meta's Cloud API product, are not end-to-end encrypted.  *Id.* ¶ 30.  For ordinary user-to-user messages, though, encryption is the default.  "WhatsApp is '[e]ncrypted for everyone' and allows users to '[m]essage privately with everyone.'"  *Id.* ¶ 23.

Plaintiffs say that guarantee is a lie.  They contend that, for nearly a decade, WhatsApp has deceived its three billion users about WhatsApp's core privacy promise.  *See id.* ¶¶ 1-2.  "On information and belief," Plaintiffs allege that WhatsApp "store[s], analyze[s], and can access virtually ***all*** of WhatsApp users'" encrypted messages.  *Id.* ¶ 2.  Relying on unnamed sources, Plaintiffs allege that a "Meta worker" can access any user's WhatsApp messages by sending a "task" "to a Meta engineer with an explanation that they need access to WhatsApp messages for their job."  *Id.* ¶ 36.  If that request is granted, "the worker's workstation will then have a new window or widget available that can pull up any WhatsApp

user's messages based on the user's User ID number." *Id.* Plaintiffs also assert—again, based on unnamed sources—that WhatsApp tracks access to the WhatsApp messages of certain users, "such as certain celebrities, politicians, and Meta employees." *Id.* ¶ 38. Plaintiffs do not explain why WhatsApp gathers this data, what it does with it, or how it has kept this conspiracy under wraps for almost a decade when access is "often [granted] without any scrutiny." *Id.* ¶ 36. Relying on these anonymous sources, though, they "seek[] to expose the fundamental privacy violations and fraud Meta is perpetrating against the billions of people worldwide who have used WhatsApp." *Id.* ¶ 2.

### B.    Procedural History

Plaintiffs are residents of Australia, Brazil, India, Mexico, and South Africa. *See id.* ¶¶ 6-12. They sued WhatsApp on January 23, 2026, seeking relief under the federal Wiretap Act, the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), the California Invasion of Privacy Act ("CIPA"), the California Unfair Competition Law ("UCL"), California's civil-theft statute, California's constitutional right to privacy, and for common-law intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *See id.* ¶¶ 79-190. Plaintiffs seek certification of a class of all WhatsApp users, excluding residents of the United States, United Kingdom, and various European nations, who have "sent or received" any WhatsApp communication since April 5, 2016. *Id.* ¶ 71. Plaintiffs estimate this proposed class has "at least three billion individual members." *Id.* ¶ 73.

This is not an ordinary lawsuit, and WhatsApp did not treat it like one. After receiving notice of the suit, WhatsApp immediately sent Plaintiffs a series of letters, accompanied by an evidentiary proffer, demonstrating the falsity of the complaint's allegations and giving them the opportunity to withdraw. Ignoring WhatsApp's numerous entreaties, Plaintiffs failed to withdraw their complaint or amend with any supporting details. WhatsApp now moves to dismiss the complaint with prejudice.

### LEGAL STANDARD

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where the complaint does not allow "the court to infer more

than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679; *see also* Fed. R. Civ. P. 12(b)(6). Rigorous application of the plausibility standard is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Claims sounding in fraud are subject to a higher standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud *must* be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added) (citation omitted).

## ARGUMENT

Plaintiffs fail to support their claims with concrete, plausible allegations. Although they accuse WhatsApp of deceiving three billion users for nearly a decade about a core feature of its messaging service—an accusation that carries significant reputational harm to WhatsApp—Plaintiffs make no effort to satisfy the heightened particularity requirement of Rule 9(b). They do not explain, for example, the position, access, or knowledge of their so-called whistleblowers; nor do they explain how WhatsApp's alleged scheme works, who was involved, when it started, and why WhatsApp would have any motive to mislead its entire userbase about a defining feature of its services. The complaint therefore falls far short of Rule 9(b)'s standard.

Even under the more forgiving notice-pleading standard of Rule 8(a)(2), the complaint fails. Of the few allegations pertaining to WhatsApp, some are skeletal or internally implausible. For several statutory claims, Plaintiffs fail to allege any cognizable harm. For all statutory claims and the claim under the California Constitution, Plaintiffs fail to plausibly allege a nexus to California and the United States. And were all that not enough, Plaintiffs' complaint is also an impermissible shotgun pleading.

## I.    PLAINTIFFS' BAREBONES ALLEGATIONS OF FRAUD FAIL UNDER RULE 9(b).

Plaintiffs have launched a blunderbuss attack on WhatsApp's hard-won reputation for privacy and transparency. Rule 9(b) exists for situations like this—to protect a "defendant's reputation and goodwill from improvident charges of wrongdoing," *Vess*, 317 F.3d at 1104, and to prevent an irresponsible litigant from "unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In*

*re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Plaintiffs' allegations of fraud are unsupported by "the who, what, when, where, and how" of the alleged misconduct, *Vess*, 317 F.3d at 1106, and there is accordingly no sign that Plaintiffs conducted a pre-suit investigation of any depth, *see Ryan v. Starco Brands, Inc.*, 2024 WL 5102651, at *5 (N.D. Cal. Apr. 19, 2024). This deficiency requires dismissal.

### A.    Rule 9(b) Governs Plaintiffs' Entire Complaint.

Rule 9(b) applies to Plaintiffs' complaint because the gravamen of Plaintiffs' claims is fraud. Plaintiffs allege that, for almost a decade, WhatsApp has defrauded its users by promising near-total privacy while secretly maintaining unlimited access to all their encrypted communications. *See* Compl. ¶ 2. Rule 9(b) governs any case in which "the claim is said to be 'grounded in fraud' or to 'sound in fraud.'" *Vess*, 317 F.3d at 1103-04. When a plaintiff alleges a "unified fraudulent course of conduct, his claims" "are grounded in fraud" and "[h]is *entire complaint* must therefore be pleaded with particularity." *Kearns*, 567 F.3d at 1127 (emphasis added).

Plaintiffs' complaint describes such a "unified fraudulent course of conduct." *Id.* Their entire theory depends on the assertion that WhatsApp represented it could not access users' messages while allegedly knowing that statement was false. Plaintiffs *repeatedly* frame their allegations in the language of fraudulent misrepresentation. *See, e.g.*, Compl. ¶ 2 ("This lawsuit seeks to expose the fundamental privacy violations and *fraud* Meta is perpetrating against the billions of people worldwide who have used WhatsApp believing their communications would be private from everyone, even from WhatsApp and Meta." (emphasis added)); *id.* ¶ 5 ("Plaintiffs bring this action to enforce their privacy rights and seek damages and other relief for the harm WhatsApp and Meta have caused them by *willfully misrepresenting* to them that their private communications were just that—private and inaccessible even to WhatsApp and Meta." (emphasis modified)); *see also id.* ¶¶ 39, 70, 98, 107, 178. Indeed, Plaintiffs devote twenty-three paragraphs to painting Meta as a company that "is willing to *lie* to achieve its priorities." *Id.* ¶ 70 (emphasis added); *see also id.* ¶¶ 47-70 (§ IV, "Meta's History of Blatant Disregard for User Privacy and Subsequent Cover-Ups").

Courts in this district regularly apply Rule 9(b) to complaints with similar allegations. In *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018), for example, where plaintiffs claimed that

Meta's actual data-collection practices differed from its public statements, the court held that Rule 9(b) applied to claims under the CDAFA, the California Constitution's right to privacy, intrusion upon seclusion, and unjust enrichment. *Id.* at 1047, 1052 (dismissing those claims under Rule 9(b)). Likewise, in *Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021), the court held that Rule 9(b) applied to allegations that Google had used "secret lines of code" to steal user data. *Id.* at *3-4, *6-7 ("secret scripts" theory could not support claims under the Wiretap Act, CIPA, the CDAFA, the UCL, and for intrusion upon seclusion and invasion of privacy); *see also*, *e.g.*, *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3-4 (N.D. Cal. Dec. 22, 2025) (Rule 9(b) applied to invasion of privacy, intrusion upon seclusion, CIPA, and unjust enrichment); *Robichaud v. Speedy PC Software*, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013) (Rule 9(b) applied to breach of contract and breach of the covenant of good faith and fair dealing). Here, the entire complaint "sound[s] in fraud," so the particularity requirements of Rule 9(b) apply to each cause of action.

### B.    The Complaint Does Not Satisfy Rule 9(b)'s Stringent Requirements.

Plaintiffs fail to plead "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). This failure indicates that Plaintiffs have not met their "burden to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud ***is responsible and supported***, rather than defamatory and extortionate." *Ryan*, 2024 WL 5102651, at *5 (quoting *Yastrab v. Apple Inc.*, 2015 WL 1307163, at *4 (N.D. Cal. Mar. 23, 2015) (internal quotation marks omitted)).

***First***, Plaintiffs allege what amounts to a massive, decade-long conspiracy by WhatsApp with almost no supporting facts. The breadth of the alleged scheme cannot be overstated. Plaintiffs assert that for ***nearly a decade***, "[s]enior leadership at Meta" has intentionally deceived ***three billion people*** about the security of their encrypted WhatsApp messages. Compl. ¶¶ 1-2. Plaintiffs omit any concrete, particular facts about how this alleged fraud supposedly took place: who the relevant leaders were, when WhatsApp decided to defraud all its users, what teams were "silo[ed]," *id.* ¶ 39, which "Meta worker[s]" had access, *id.* ¶ 36, how WhatsApp managed to cover this up—and, most importantly, why WhatsApp would do this, as Plaintiffs fail to allege how these messages are being used.

That is not enough, as a similar case in this district has concluded.  In *Rodriguez v. Google LLC*, 2021 WL 2026726, plaintiffs accused Google of embedding, in a free software development kit that it provided to third-party app developers, "secret lines of code" that "collect data from user communications with … apps and send that data to Google servers."  *Id.* at *2-3 ("Under this … more sinister theory of liability, Google's offense rises … to the level of outright fraud.").  Like Plaintiffs here, the *Rodriguez* plaintiffs lacked any details to back up that allegation: nothing about "when the … plot was hatched; which Google departments (let alone employees) were involved; and anything resembling a particular date, time, or place."  *Id.* at *6.  The *Rodriguez* court accordingly concluded that the lawsuit "wilt[ed] under Rule 9(b) scrutiny."  *Id.*  Likewise, Plaintiffs' allegations here are "woefully underdeveloped."  *Id.*

***Second***, the complaint fails to allege with particularity "how" WhatsApp's longstanding public representations about message privacy are false.  *Vess*, 317 F.3d at 1106.  As Plaintiffs concede, WhatsApp publicly discloses that it can see end-to-end encrypted messages when they are decrypted on a ***user's device*** and the ***user*** chooses to provide them to WhatsApp, and that some types of communications on WhatsApp are not end-to-end encrypted.  Compl. ¶¶ 28-29.  Yet nothing in the complaint explains ***how*** WhatsApp is supposed to have access to more messages than it publicly discloses.  And Plaintiffs include no details supporting their allegation that WhatsApp "can access virtually ***all*** of WhatsApp users'" encrypted messages beyond their "widget" allegations.  *Id.* ¶ 2.  Indeed, "the complaint appears to be based on selective information … without any suggestion plaintiffs know what the specific" facts are that would support their claims.  *Williams*, 384 F. Supp. 3d at 1053 (holding that a complaint failed Rule 9(b) where it relied only on third-party reporting without direct evidence of a false statement).  In other words, Plaintiffs' complaint is no more than a hunch—"a pretext for the discovery of unknown wrongs."  *Id.* at 1052 (quoting *Kearns*, 567 F.3d at 1125).  Rule 9(b) requires more detailed allegations of falsity before subjecting a defendant to discovery on damaging, scurrilous allegations.

***Third***, Rule 9(b) does not permit Plaintiffs to base their claims on nothing more than the say-so of anonymous "whistleblowers" whose position, access, and knowledge are left to the imagination.  Compl. ¶¶ 2, 36.  The complaint does not describe who these whistleblowers are, how many there are, whether they have ever worked for WhatsApp or one of WhatsApp's contractors, or whether they have the

technical knowledge to assess whether WhatsApp messages are end-to-end encrypted.  Rule 9(b) requires more.

In the related context of litigation under the Private Securities Litigation Reform Act ("PSLRA"), Plaintiffs must identify an anonymous source of information "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Interlink Elecs., Inc., Sec. Litig.*, 2007 WL 9857528, at *4 (C.D. Cal. Sept. 26, 2007) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)).  This requirement from PSLRA caselaw applies equally here because, as the Ninth Circuit has explained, "the inquiry into whether plaintiffs have pled falsity with the requisite particularity under the PSLRA is nearly identical to that under Federal Rule of Civil Procedure 9(b)." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1165 (9th Cir. 2009).  The Third Circuit is in accord, *see Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163 (3d Cir. 2004) (failure to detail why anonymous witnesses would have knowledge regarding fraud failed Rule 9(b)), as are other district courts, *e.g.*, *SEC v. Drake*, 2017 WL 6507766, at *5 (C.D. Cal. Dec. 18, 2017) (analyzing whether plaintiff's identification of confidential sources was sufficient under Rule 9(b)); *In re Royal Dutch/Shell Transp.*, 2006 WL 2355402, at *4 & n.5 (D.N.J. Aug. 14, 2006) ("[T]he *Chubb* Court incorporated its analysis of confidential source information in the context of other fraud-based claims necessitating the application of Rule 9(b).").

These precedents leave little doubt that isolated gestures toward "whistleblowers" are not enough under Rule 9(b).  In *Royal Dutch/Shell*, for example, the court dismissed claims under Rule 9(b) because the complaint failed to explain when the anonymous source "acquired the information that he or she supposedly possesses," whether the source was in a position to acquire the information, and when the source worked for the company at issue. 2006 WL 2355402, at *8.  The case for dismissal is even stronger here: Plaintiffs have not provided ***any*** details about their whistleblowers.  By failing to explain who the whistleblowers are or, at the very least, the factual basis for the whistleblowers' allegations, Plaintiffs fail to plead the "who" and "what" that Rule 9(b) requires.  *Cooper*, 137 F.3d at 627.

For these reasons, the Court should dismiss this complaint pursuant to Rule 9(b).

## II.   THE COMPLAINT'S ALLEGATIONS ARE NOT PLAUSIBLE EVEN UNDER RULE 8.

Plaintiffs' claims do not even clear the lower plausibility threshold set by Rule 8(a)(2). "[C]onclusory statements" and "'naked assertion[s]' devoid of 'further factual enhancement'" are not enough to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, "common sense" must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The complaint must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

Plaintiffs' allegations do not create a "reasonable expectation" that they will find evidence of wrongdoing were the case to move forward. *Id.* Plaintiffs' whole complaint rests on one "conclusory," "naked assertion[]": "WhatsApp and Meta store and have unlimited access to WhatsApp encrypted communications." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); Compl. ¶ 36. And their key peripheral allegations are likewise barebones: Plaintiffs' allegation that WhatsApp "intentionally intercepted" their messages "essentially in real time," for example, is completely unsupported by any factual detail. Compl. ¶¶ 83, 85. Plaintiffs say **nothing** about how WhatsApp supposedly captured their messages or how it did so "in real time." *Id.* Beyond Plaintiffs' *ipse dixit*, the complaint contains only undisputed facts about how WhatsApp advertises its app, irrelevant allegations about unrelated investigations, and a short discussion of a "widget" Meta workers allegedly use to access WhatsApp messages and "messages from unencrypted sources." *Id.* ¶ 37.

Those allegations about worker access to WhatsApp messages do "not make a whole lot of sense." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). In one breath, Plaintiffs suggest that WhatsApp has succeeded in keeping its scheme a secret for years by "heavily siloing workers in different groups and telling them to 'stay in [their] lane.'" Compl. ¶ 39; *see also id.* ¶ 2. In the next breath, they allege that a "Meta worker" could get unlimited access to encrypted WhatsApp communications by simply requesting access, which would be granted "often without any scrutiny at all." *Id.* ¶ 36. These "allegation[s] do[] not resonate in common experience." *Endologix*, 962 F.3d at 415. A company fraudulently misappropriating swaths of sensitive user data—in a way that undermines its entire business model—would not allow rank-and-file "workers" broad access to that data "without any scrutiny at all."

Compl. ¶ 36.  Absent some explanation as to why WhatsApp would both mislead its entire user base **and** risk exposing the deception by giving line workers unfettered access to encrypted messages, Plaintiffs' allegations fail to clear Rule 8(a)(2)'s plausibility bar.  *See Endologix*, 962 F.3d at 415 (allegation that defendant defrauded shareholders without any clear benefit to defendants was implausible).

What is more, the whistleblowers' apparent claim that it was possible to use a widget to query **all** of **any** WhatsApp user's messages is too scant on detail to be taken seriously.  Compl. ¶ 36.  At their core, Plaintiffs' factual allegations are that (i) the purported widget does not have to decrypt messages before a worker can read them; (ii) the WhatsApp messages in the widget are "commingled with … messages from unencrypted sources"; (iii) the messages appear to show up "in real-time"; and (iv) there appears to be no time limit on access to the messages.  *Id.* ¶ 37.  Missing from the complaint are any details about who exactly allegedly had access to encrypted WhatsApp messages, how it was technically possible to access those messages, where access occurred, and why WhatsApp allegedly allowed such broad access in contravention of its core privacy commitment.  *See Hudson Bay Master Fund Ltd. v. Centripetal Networks, Inc.*, 2016 WL 9412455, at *6 (E.D. Va. Dec. 20, 2016) (claim that failed to allege "any details about the alleged [tortious] contacts, including who made them, where they were made, or what information was disclosed" was implausible under *Twombly*); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 916–17 (S.D. Cal. 2023) (dismissing claim that "inadequately secure collection, transmission, and storage" of data led to loss where other explanations were equally possible); *Citcon USA, LLC v. Miao*, 2021 WL 3402783, at *5 (N.D. Cal. Aug. 4, 2021) (dismissing claim where there was an "obvious alternative explanation" other than that the defendant had misappropriated plaintiff's data); *see also Baig v. Meta Platforms, Inc.*, No. 25-cv-7604, slip op. at 12 (N.D. Cal. Mar. 19, 2026) (dismissing complaint because, *inter alia*, plaintiff failed to plausibly plead "a scheme to defraud [WhatsApp] users").

Without additional "factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), Plaintiffs fail "to raise a reasonable expectation that discovery will reveal evidence" that WhatsApp has access to **any** encrypted messages, much less **all** such messages, *Cafasso*, 637 F.3d at 1055 (quoting *Twombly*, 550 U.S. at 556).  Plaintiffs accordingly fail to make out a plausible claim for relief under Rule 8(a)(2).

## III.    MANY CLAIMS SUFFER FROM ADDITIONAL DEFECTS.

### A.    Certain Counts Fail For Lack Of A Cognizable Harm.

Plaintiffs' claims under California's civil-theft statute (Count 9) and the UCL (Count 10) fail for lack of an injury.  Relatedly, their CDAFA (Count 2) and unjust enrichment claims (Count 8) fail to plausibly allege that WhatsApp was unjustly enriched.

*Counts 9 and 10.*  Plaintiffs' claims under California's civil-theft statute and UCL both fail because Plaintiffs have not alleged any cognizable harm.  The civil-theft statute's private right of action requires some allegation of "actual damages."  Cal. Penal Code § 496(c); *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1042 (N.D. Cal. 2018) (dismissing civil-theft claim for failure "to allege any actual damages").  Alleged "misappropriation of personal information" alone is not enough.  *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) (quoting *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)) (dismissing civil-theft claim based on online data collection for failure to "allege actual damages").   Similarly, a UCL claim based on data misappropriation requires some allegation as to the value of the Plaintiffs' data, that a market for it existed, and that Plaintiffs "intended to participate in this market, or otherwise to derive economic value from their" information.  *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544, 564-65 (Ct. App. 2022); *see, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1089-91 (N.D. Cal. 2023) (dismissing UCL claim "in light of the inconsistent allegations regarding how plaintiffs could *and* would participate in a legitimate market" for allegedly misappropriated data); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039-40 (N.D. Cal. 2019) (dismissing UCL claim based on plaintiff's failure to plausibly allege data "has economic value *to him*").  "[T]he misappropriation of private information," without more, cannot state a claim under the UCL.  *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *6 (N.D. Cal. Apr. 4, 2025) (Lin, J.) (dismissing UCL claim).  That is true even if Plaintiffs allege a "benefit-of-the-bargain" theory of harm.  *See Bass*, 394 F. Supp. 3d at 1040 (rejecting benefit-of-the-bargain theory based on bargain that personal "information would be secure" because plaintiff failed to plausibly allege "economic harm" flowing from data breach).  The only injury Plaintiffs allege here is that WhatsApp could access their messages; Plaintiffs do not plausibly allege that they could or would have sold those messages themselves.  *See* Compl. ¶¶ 105, 178, 188.  That is not enough to state a claim under the civil-theft statute or the UCL.

***Counts 2 and 8.*** Plaintiffs' CDAFA and unjust enrichment claims fail because Plaintiffs do not explain how WhatsApp has been unjustly enriched. Unjust enrichment requires an allegation "that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017). The same is true of claims under the CDAFA that rely on unjust profits as a theory of injury. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (Lin, J.) (concluding that "unjust profit" "constitutes a 'damage or loss' within the meaning of CDAFA"). Yet Plaintiffs offer only boilerplate allegations that WhatsApp has "retained a benefit at the expense of [the] Plaintiffs" without explaining what that benefit is. Compl. ¶ 169; *see id.* ¶ 105.

The Court should dismiss Counts 2, 8, 9, and 10 for failure to plead a cognizable harm.

### B.    Certain Claims Improperly Seek Extraterritorial Application Of U.S. And California Law To Non-Residents.

The named Plaintiffs are a collection of purported residents of Australia, Brazil, India, Mexico, and South Africa. *See* Compl. ¶¶ 6-12. Their lack of connection to California—and to the United States—dooms their statutory and constitutional claims.

***Count 4.*** Plaintiffs cannot assert a claim based on the California Constitution's right to privacy (Count 4) because they have no connection to California. "The [privacy] right the California Constitution provides does not apply to people lacking a connection to California." *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1285 (C.D. Cal. 2024) (limiting right-to-privacy claims under the California constitution to "California residents or people who were in California when the alleged wrong occurred"); *see Henderson v. Chicago Cubs Baseball Club, LLC*, 2018 WL 3326682, at *1 (C.D. Cal. May 24, 2018) (holding that the Cubs could not withhold personnel records of non-California scouts because the "California Constitution's right of privacy" protects only "California residents"). As far as Plaintiffs allege, none of them has any connection to California. Because none of the Plaintiffs has a connection to California, their constitutional privacy claim cannot proceed.

***Counts 1, 2, 3, 9, and 10.*** None of the statutes Plaintiffs rely on apply to conduct occurring outside California, or, in the Wiretap Act's case, outside the United States. Because Plaintiffs do not plausibly allege a nexus to California or the United States, their statutory claims fail.

All of Plaintiffs' statutory claims require some territorial nexus. The federal Wiretap Act (Count 1) applies only to conduct in the United States. *See United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987); *Zheng v. Yahoo! Inc.*, 2009 WL 4430297, at *2 (N.D. Cal. Dec. 2, 2009). The CDAFA (Count 2) and CIPA (Count 3) apply only to conduct in California. *See* Cal. Penal Code § 630 (CIPA) (stating the legislature "intends to protect the right of privacy of the people *of this state*" (emphasis added)); *see id.* § 502(a) (CDAFA) (declaring the CDAFA "vital to the protection of the privacy of individuals ... *within this state*" (emphasis added)); *see also, e.g.*, *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025) (dismissing CDAFA and CIPA claims on extraterritoriality grounds); *Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025) (same). California's civil-theft statute (Count 9) requires a nexus to California. *See Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, 2024 WL 4003894, at *4 (C.D. Cal. June 5, 2024) (declining to apply § 496 extraterritorially); *Dfinity USA Rsch. LLC v. Bravick*, 2023 WL 2717252, at *4-5 (N.D. Cal. Mar. 29, 2023) (same). So does California's UCL (Count 10). *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force."); *Campbell v. Honey Sci., LLC*, 797 F. Supp. 3d 1080, 1092 (N.D. Cal. 2025) ("[S]omething more than an allegation that the defendant is a California citizen is necessary for non-California residents to assert a UCL claim.") (collecting cases). Plaintiffs must show some nexus to California (or, for the Wiretap Act, the United States) for any of these claims to proceed.

Yet Plaintiffs make only conclusory allegations of in-state conduct, which the Court may disregard, as courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' only references to conduct in California are conclusory recitations of the jurisdictional elements of their CDAFA and CIPA claims. *See* Compl. ¶¶ 104, 114. They point out that WhatsApp has its "principal place of business in California," *id.* ¶ 114, *see id.* ¶ 104, but "something more" than that is necessary to overcome the presumption against extraterritoriality, *Campbell*, 797 F. Supp. 3d at 1092. And their allegations that WhatsApp "used servers" in California "to access and obtain Plaintiffs' and Class Members' data" and "designed and contrived their scheme to deploy computer code to effectuate their interception of Plaintiffs' WhatsApp messages" in

California are mere boilerplate without any supporting details. Compl. ¶ 104; *see id.* ¶ 114. More is required. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) (allegation that "the decision to ... engage in deceptive marketing was made, in part, in California" was insufficient). Tellingly, Plaintiffs do not reference *any conduct*—by either Plaintiffs or WhatsApp—in California relevant to their claims in the factual background section of their complaint. Plaintiffs' vague, "formulaic recitations" are insufficient to establish the California nexus their statutory claims require. *Iqbal*, 556 U.S. at 678.

Nor does WhatsApp's Terms of Service's choice-of-law clause give Plaintiffs the right to sue under California statutes in the face of the presumption against extraterritoriality. The choice-of-law clause provides that California law will be the rule of decision for disputes that arise from or relate to WhatsApp's Terms. *See* WhatsApp, Terms of Service, "Dispute Resolution," https://perma.cc/T8DZ-DR4E; *see also* Compl. ¶ 4 n.8 (citing WhatsApp's Terms). But that clause does not purport to abrogate, by operation of contract law, the territorial requirements for California's statutory actions. Nor could it: "When a law contains geographical limitations on its application … courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003). More, on their face, WhatsApp's Terms incorporate *all* California law—including its presumption against extraterritorial application. *See Bravick*, 2023 WL 2717252, at *4 ("[A] California choice of law clause—without any indication of an exclusion—incorporates California's presumption against extraterritoriality and consequent implicit geographical limitation.") (collecting cases).

Accordingly, the Court should dismiss all Plaintiffs' statutory claims under both California and federal law, as well as Plaintiffs' claim under the California Constitution.

## IV.    THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING.

Plaintiffs' complaint is an impermissible shotgun pleading twice over. **First**, the complaint violates the rule that "each count" may not "adopt[] the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (quoting 35A C.J.S. *Fed. Civ. Proc.* § 310 (2025)) (dismissing complaint on this basis). Each and every count "incorporate[s] *all* other paragraphs" in the complaint. Compl. ¶¶ 79, 96, 109, 122, 138, 149, 159, 167, 172, 182 (emphasis added). This is not simply a technical defect: Plaintiffs'

conclusory California-nexus allegations appear only in their CIPA and CDAFA counts, *see id.* ¶¶ 104, 114, yet they will no doubt argue that those allegations support their Wiretap Act, civil-theft, and UCL counts as well. The Court should not have to guess which allegations support which counts.

   ***Second***, Plaintiffs flout the requirement that a complaint should "separate into a different count each … claim for relief." *Gibson*, 165 F.4th at 1288 (quoting 35A C.J.S. *Fed. Civ. Proc.* § 310) (dismissing complaint on this basis as well). Plaintiffs' CIPA count (Count 3) seeks relief under ***four*** different CIPA provisions: wiretapping, interception, use or communication, and eavesdropping. *See* Compl. ¶¶ 111-12; *see also Tavernetti v. Super. Ct.*, 583 P.2d 737, 741 (Cal. 1978) (explaining that § 631(a) proscribes "three distinct and mutually independent patterns of conduct"); Cal. Penal Code § 632(a) (prohibiting eavesdropping). And Plaintiffs' CDAFA count (Count 2) alleges violations of no less than ***five*** distinct CDAFA provisions. *See* Compl. ¶¶ 98-101, 103. Combining multiple claims for relief in a single count further muddles Plaintiffs' already hard-to-parse complaint.

## CONCLUSION

   Plaintiffs have failed to point to ***any*** evidence supporting their claims. Because none appears to exist, amendment would be futile, and the Court should dismiss Plaintiffs' complaint with prejudice.

DATED:  March 27, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP


/s/ K. Winn Allen
K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice forthcoming*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

**CERTIFICATE OF SERVICE**

On March 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ K. Winn Allen*
K. Winn Allen, P.C.

CERTIFICATE OF SERVICE                                   CASE NO. 26-CV-0751