QUINN EMANUEL URQUHART
& SULLIVAN, LLP
 Adam Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
 Stephen A. Broome (Bar No. 314605)
 stephenbroome@quinnemanuel.com
 Kevin Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
 Valerie Roddy (Bar No. 235163)
 valerieroddy@quinnemanuel.com
 Lauren B. Lindsay (Bar No. 280516)
 laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
 Warren Postman (Bar No. 330869)
 wdp@kellerpostman.com
 Ashley Keller (pro hac vice forthcoming)
 ack@kellerpostman.com
 J.J. Snidow (pro hac vice forthcoming)
 jj.snidow@kellerpostman.com
 1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
 Jay W. Barnett (pro hac vice forthcoming)
 jay@barnettlegal.net
3404 NW 135th Street
Oklahoma City, OK 73120
Telephone: (405) 456-9343

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., and WHATSAPP, LLC,<br><br>Defendants. | Case No. 3:26-cv-0751-RFL<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP, LLC'S MOTION TO DISMISS**<br><br>Complaint Filed Date: January 23, 2026<br><br>Judge: Honorable Rita F. Lin |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED..................................................................................1

PRELIMINARY STATEMENT .....................................................................................................1

SUMMARY OF ALLEGATIONS ..................................................................................................2

ARGUMENT ...................................................................................................................................3

I.      RULE 9(B) DOES NOT APPLY, BUT THE COMPLAINT SATISFIES ITS
        REQUIREMENTS ...............................................................................................................3

        A.      Rule 9(b) Applies Only to Claims that "Entirely" Depend on Fraud.........................3

        B.      None of Plaintiffs' Claims Depends "Entirely" on Fraud..........................................4

        C.      Even if Rule 9(b) Applied, the Complaint Satisfies Its Requirements.......................5

II.     THE COMPLAINT EASILY SATISFIES RULE 8 BY PLAUSIBLY ALLEGING
        DEFENDANTS IMPROPERLY OBTAINED PRIVATE WHATSAPP
        MESSAGES .........................................................................................................................8

III.    DEFENDANTS' OTHER PLEADING CHALLENGES ALSO FAIL ............................10

        A.      Plaintiffs Plausibly Allege Actual Damages for Counts 2, 8, 9, and 10 ..................10

        B.      Defendants' Extraterritoriality Arguments Misstate the Law and Ignore
                Allegations of Conduct Originating in California.....................................................13

IV.     THE COMPLAINT IS NOT A SHOTGUN PLEADING, LET ALONE AN
        IMPERMISSIBLE ONE ....................................................................................................15

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page**

CASES

*Arkansas Pub. Emp. Ret. Sys. v. GT Solar Int'l, Inc.*,
2009 WL 3255225 (D.N.H. Oct. 7, 2009) ...................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................... 7, 8

*Baig v. Meta Platforms, Inc.*,
2026 WL 821002 (N.D. Cal. Mar. 23, 2026) ............................................................................. 10

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) ....................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................................... 8

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016) ........................................................................... 13

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ................................................................................ 4

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........................................................................... 12

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ......................................................................................................... 7

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
2016 WL 4744165 (N.D. Cal. Sept. 12, 2016) ........................................................................... 7

*Citcon USA, LLC v. Miao*,
2021 WL 3402783 (N.D. Cal. Aug. 4, 2021) ............................................................................ 10

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .................................................................................... 13

*Cress v. Nexo Cap. Inc.*,
2026 WL 296728 (N.D. Cal. Feb. 4, 2026) ................................................................................. 6

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ............................................................................ 5

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................................................................................... 14

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

*Doe v. GoodRx Holdings, Inc.*,
  2025 WL 2052302 (N.D. Cal. July 22, 2025) ........................................................................... 11

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................................................... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ....................................................................................................... 12

*Gabrielli v. Motorola Mobility LLC*,
  2025 WL 1939957 (N.D. Cal. July 14, 2025) ............................................................................. 7

*Gibson v. City of Portland*,
  165 F.4th 1265 (9th Cir. 2026) .................................................................................................... 15

*Hudson Bay Master Fund Ltd. v. Centripetal Networks, Inc.*,
  2016 WL 9412455 (E.D. Va. Dec. 20, 2016) ............................................................................ 10

*Huff v. Spaw*,
  794 F.3d 543 (6th Cir. 2015) ....................................................................................................... 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................................................................... 3

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022) ......................................................................................... 8

*Kwikset Corp. v. Superior Ct*,
  51 Cal. 4th 310 (2011) .................................................................................................................. 12

*United States v. Luong*,
  471 F.3d 1107 (9th Cir. 2006) ..................................................................................................... 14

*Lynch v. Express Scripts Holding Co.*,
  2025 WL 2224419 (N.D. Cal. Aug. 5, 2025) .............................................................................. 4

*McIntyre v. Am. Honda Motor Co.*,
  739 F. Supp. 3d 776 (C.D. Cal. 2024) ...................................................................................... 7, 8

*In re Meta Pixel Tax Filing Cases*,
  724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................................ 11, 12, 14, 15

*Oman v. Delta Air Lines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018) ..................................................................................................... 13

*Pemberton v. Rest. Brands Int'l, Inc.*,
  2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ............................................................................ 6

*United States. v. Peterson*,
  812 F.2d 486 (9th Cir. 1987) ....................................................................................................... 14

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021)........................................................................................... 13

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ................................................................................. 11

*Robichaud v. Speedy PC Software*,
2013 WL 818503 (N.D. Cal. Mar. 5, 2013) ............................................................................. 5

*In re Royal Dutch/Shell Transp.*,
2006 WL 2355402 (D.N.J. Aug. 14, 2006)............................................................................... 7

*Rubke v. Capitol Bancorp Ltd*,
551 F.3d 1156 (9th Cir. 2009)................................................................................................... 7

*Santiago v. Tesla, Inc.*,
757 F. Supp. 3d 831 (N.D. Ill. 2024) ........................................................................................ 7

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021)......................................................................... 13

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ............................................................................. 4

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .................................................................................... 4

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ......................................................................... 11

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)..................................................................................................... 6

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996)..................................................................................................... 3

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)....................................................................... 12

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)............................................................................ 11

*Torres v. Prudential Fin., Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024)....................................................................... 14

*Vasquez v. Bank of Am., N.A.*,
2013 WL 6001924 (N.D. Cal. Nov. 12, 2013)......................................................................... 6

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*,
721 F. App'x 662 (9th Cir. 2018)............................................................................................. 6

Case No. 3:26-cv-0751-RFL

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

*Vess v. Ciba-Geigy Corp., USA*,
317 F.3d 1097 (9th Cir. 2003) ....................................................................................... 4

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................................ 5

*Zheng v. Yahoo! Inc.*,
2009 WL 4430297 (N.D. Cal. Dec. 2, 2009) ............................................................. 14

STATUTES AND RULES

California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code
§ 502 et seq. (CDAFA) ....................................................................................... 3, 10, 11

California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. (CIPA) ........................ 3, 13, 14

California Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 (UCL) ..................................................... 3, 5, 10, 11, 12, 13

Fed. R. Civ. P. 8 ............................................................................................ 1, 5, 7, 8, 10, 15

Fed. R. Civ. P. 9(b) ....................................................................................... 1, 3, 4, 5, 6, 7

Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u–4 et seq. (PSLRA) ....................... 7, 9

Wiretap Act, 18 U.S.C. § 2510 et seq. ................................................................................. 3, 14

OTHER AUTHORITIES

THE BUSINESS TIMES, *US has investigated claims that WhatsApp chats aren't
private* (Jan. 30, 2026) ................................................................................................. 8

California Constitution ....................................................................................................... 3

Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 million Facebook
profiles harvest for Cambridge Analytica in major data breach – Whistleblower
describes how firm linked to former Trump adviser Steve Bannon compiled user
data to target American voters*, THE GUARDIAN (Mar. 17, 2018) ................................ 9

Jonathan Vanian, *Meta goes to arbitrator to prevent whistleblower from promoting
tell-all book*, CNBC (Mar. 12, 2025) ........................................................................ 9

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs plausibly allege that Defendants violated various state and federal laws by surreptitiously collecting private messages from WhatsApp users.

**PRELIMINARY STATEMENT**

This case arises from a profound but straightforward allegation. Defendants WhatsApp, LLC and Meta Platforms, Inc. (collectively, "WhatsApp" or "Defendants") built a business of more than three billion users worldwide on the contractual and ubiquitous marketing promise that WhatsApp users' messages were private from everyone—including WhatsApp and Meta. Whistleblower evidence has revealed, however, that Meta workers can access any user's messages in essentially real time through a simple internal request process. Although the exact technical details of how Defendants accomplish this remain solely within their possession, the whistleblower revelations show that Defendants stored, analyzed, and accessed those supposedly private messages for their own commercial benefit. This could be because Defendants broke their end-to-end encryption while messages were en route, or because, as the purveyor of the WhatsApp application, Defendants obtained access to the unencrypted messages on either side of a conversation. No matter the mechanism, it is a massive breach of contract, privacy, and trust.

Defendants seek to evade these allegations primarily by mischaracterizing the Complaint as bringing a "fraud" case requiring heightened particularity under Rule 9(b). They are wrong. Plaintiffs bring contract, privacy, and other non-fraud-based claims grounded in Defendants' unauthorized access to and storage of private messages. The core theory is that Defendants violated specific contractual, common-law, statutory, and constitutional duties by accessing, analyzing, and storing users' private messages. These claims stand independent of any non-contractual representations Defendants made to users. Rule 9(b) does not apply to such claims but, even if it did, Plaintiffs meet its requirements (as Defendants' own dismissal arguments demonstrate).

Defendants next argue, under Rule 8, it is "implausible" that a company like Meta with a well-documented, decades-long history of serial privacy violations—reflected in billions of dollars in regulatory fines and class action settlements—could or would obtain access to messages it promised were private. That entire argument asks the Court to disregard well-pled factual allegations

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

and the reasonable inferences they generate. It is not a serious basis for dismissal.

Defendants' remaining arguments for dismissal fare no better. Their contention that certain claims fail for lack of cognizable harm misreads the applicable law. Plaintiffs establish actual damages by alleging Defendants obtained their valuable private communications without compensation, that Defendants monetized that data for commercial gain, and that Plaintiffs lost the benefit of the privacy bargain they struck with Defendants. Defendants' extraterritoriality arguments ignore both that Plaintiffs allege the conduct causing harm originated from Defendants' California headquarters and servers, and that choice-of-law questions are rarely resolved at the pleading stage—a principle courts in this District have applied specifically to Meta, including based on contracts choosing California law (like the one at issue here). Finally, Defendants' shotgun-pleading argument is refuted by their own motion, which demonstrates a thorough understanding of each claim and articulates no actual confusion about the allegations.

This Court should deny Defendants' motion and order the parties to proceed to discovery.

## SUMMARY OF ALLEGATIONS

WhatsApp is the most popular messaging application in the world, relied on by journalists, activists, dissidents, and ordinary users who trust it with their most sensitive communications. Since at least 2016, after Meta acquired it, WhatsApp has consistently advertised that it allows users to "[m]essage privately with everyone" and that no one—including WhatsApp or Meta—can see or store those messages. *E.g.*, Compl. ¶ 1. Among other things, WhatsApp displayed an in-app notice that "[o]nly people in this chat can read, listen to, or share them." *Id.* Ever since Meta acquired WhatsApp, Defendants reinforced this promise across their website, privacy policies, and FAQ pages, stating expressly that "not even WhatsApp" can access users' messages. *Id.* ¶¶ 1, 20-31.

But this supposed privacy is an illusion. *Id.* ¶¶ 32-39. According to whistleblower statements, Meta workers can request access to a user's WhatsApp messages by sending a simple "task" to a Meta engineer—access that is routinely granted "often without any scrutiny at all." *Id.* ¶¶ 36-37. Once granted, a widget on the worker's workstation displays any user's messages based on their User ID, in essentially real time, commingled with data from unencrypted sources—no separate decryption step is required. *Id.* Access is unlimited in time, including messages users

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

believed they had deleted. *Id.* Meta has deliberately siloed employees to prevent them from piecing together the full picture. *Id.* ¶¶ 2, 39.

Plaintiffs—WhatsApp users from Australia, Brazil, India, Mexico, and South Africa who are contractually required to bring suit in this Court—bring this action on behalf of a class of all non-U.S., non-Canadian, non-European, and non-U.K. WhatsApp users since April 5, 2016. *Id.* ¶¶ 4-12, 71. They assert claims under the Wiretap Act, CDAFA, CIPA, the California Constitution, intrusion upon seclusion, breach of contract, breach of the implied covenant, unjust enrichment, statutory larceny, and the UCL. *Id.* ¶¶ 79-190. They do not assert a fraud claim.

## ARGUMENT

### I. RULE 9(B) DOES NOT APPLY, BUT THE COMPLAINT SATISFIES ITS REQUIREMENTS

#### A. Rule 9(b) Applies Only to Claims that "Entirely" Depend on Fraud

"Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

Consistent with these purposes, Rule 9(b) only applies to claims that allege "a unified course of fraudulent conduct and rely ***entirely*** on that course of conduct as the basis for that claim." *Kearns*, 567 F.3d at 1125 (emphasis added). Thus, in *Kearns*, where the plaintiff brought claims under the "fraud" prongs of California's CLRA and UCL—based on Ford's misrepresentations in marketing materials about the safety and reliability of Ford certified pre-owned vehicles—the Ninth Circuit held that Rule 9(b) applied because, "while fraud is not a necessary element of a claim under the CLRA and UCL," the specific claims asserted relied "entirely on [a] course of [fraudulent] conduct as a basis for" the claims. *Id.* In contrast, as the Ninth Circuit has explained, allegations that a defendant failed to disclose certain information or practices do ***not*** need to satisfy Rule 9(b), even

if included in a complaint with specific fraud allegations. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

This is why courts have found that Rule 9(b) does not apply to claims based on contract or privacy breaches arising from unauthorized data collection—even if the breaches and violations also involve aspects of deception. *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *8 n.3 (N.D. Cal. Jan. 27, 2026) (noting Rule 9(b) did not apply to claims that "focus primarily on privacy-related harms," even though "plaintiffs' suit is based in part on MFP's allegedly false promise not to enable third parties to track users"); *Lynch v. Express Scripts Holding Co.*, 2025 WL 2224419, at *6 (N.D. Cal. Aug. 5, 2025) (rejecting argument that allegations of "'secretly deploy[ing]' the Meta Pixel and 'knowingly, actively, affirmatively and/or negligently conceal[ing] the facts alleged' subject [plaintiff's] claims to Rule 9(b)'s heightened pleading standard" because the plaintiff was "directly challenging … data collection" and not "fraudulent or misleading representations") (quoting *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024).

As the district court explained in *Smith v. Google, LLC*, where "plaintiffs are directly challenging [defendant's] alleged data collection rather than challenging any potentially fraudulent or misleading representations ***about*** this collection," Rule 9(b) does not apply. 735 F. Supp. 3d at 1198 (emphasis added); *see also Briskin v. Shopify Inc.*, 2026 WL 161441, at *3 (N.D. Cal. Jan. 21, 2026) (same, for CIPA, invasion of privacy, CDAFA, and UCL claims).[1]

**B.    <u>None of Plaintiffs' Claims Depends "Entirely" on Fraud</u>**

Like the Plaintiffs in *Shah*, *Lynch*, *Smith*, and *Briskin*, Plaintiffs here primarily challenge Defendants' data collection itself; not their representations about that collection. Indeed, aside from

---

[1]  Most data privacy claims involve some element of deception—*e.g.*, the defendant collected, stored, and/or shared data despite promises or representations to the contrary. But that cannot mean all such claims must meet Rule 9(b). If that were the case, data privacy claims would be routinely dismissed on this basis. Yet Defendants cite no Ninth Circuit authority and only a small handful of district court decisions applying Rule 9(b) to such claims, and even fewer decisions actually dismissing data privacy claims for failing to meet Rule 9(b).

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

the breach of contract claim—which is not properly subject to Rule 9(b)—Plaintiffs' other claims would be viable even if Defendants had said nothing about their data collection. Each premises liability on Defendants' improper collection of users' private WhatsApp messages without their consent. Compl. ¶¶ 79-190. This includes Plaintiffs' UCL claim, which alleges liability under the "unlawful" and "unfair" prongs, but *not* the "fraudulent" prong. *Id.* ¶¶ 182-190. Accordingly, none of Plaintiffs' claims depend "entirely" on Defendants' misrepresentations because none turn on "averments of fraud." Thus, none are subject to Rule 9(b).

Defendants' cited cases are inapposite. Each involved claims that turned entirely on an alleged misrepresentation—a deceptive prompt, *see Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1046-47 (N.D. Cal. 2018); a "decline cookies" button that did not work, *see de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025); or a software program designed to lie about its functionality, *see Robichaud v. Speedy PC Software*, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013). Where the misrepresentation *is* the wrong itself, Rule 9(b) applies. But that is not this case. Plaintiffs challenge Defendants' unauthorized interception of private messages. For the statutory and constitutional claims, Defendants' long-running promises about privacy make that conduct *worse*, but they are not necessary for liability. And Plaintiffs' contract claim proceeds from specifically identified contractual promises, so there is no question about the basis for that breach.

*Rodriguez* confirms this reading of the relevant authority. There, the court applied Rule 9(b) only to a "secret scripts" narrative that the court found sounded in fraud, which plaintiffs effectively abandoned at oral argument. 2021 WL 2026726, *6 (N.D. Cal. May 21, 2021). The court applied Rule 8 to the straightforward data-collection theory—and did not dismiss any claim under Rule 9(b). *Id.* at *6-8.

## C.   Even if Rule 9(b) Applied, the Complaint Satisfies Its Requirements

Even if Rule 9(b) applied, it is no basis for dismissal. The Complaint supplies the "who, what, when, where, and how" of the alleged misconduct. The who is Meta and WhatsApp; the what is their access to and analysis and storage of users' WhatsApp messages without their consent and despite ubiquitous promises and marketing to the contrary, as well as their legal duties; the when is

at all times since April 5, 2016; the where is Defendants' servers and systems operated from California; and the how is a technical mechanism that allowed Meta workers to pull up any user's messages after a simple internal access request. Compl. ¶¶ 2, 4, 33, 36-39, 104, 114.

Defendants demand more granular details about the technical mechanics of how their own internal systems operate—information that is obviously in their own possession. They plainly do not need such details to understand Plaintiffs' claims. Where, as here, the information underlying any portion of fraud allegations is "within the defendant's exclusive possession and control," a more lenient application of Rule 9(b) for the specific fact in question is appropriate. *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018); *see also Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (citation omitted). Thus, when the "more detailed information is uniquely within Defendants' possession, more cannot be expected of Plaintiff[s]" at the pleading stage. *Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924, at *16 (N.D. Cal. Nov. 12, 2013).[2]

---

[2] Courts have found sufficient under Rule 9(b) allegations that describe the "how" of a fraud claim with equivalent or less specificity than exists here. *See, e.g.*, *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *7 (N.D. Cal. Nov. 24, 2025) ("[p]laintiff sufficiently alleges the factual circumstances of his fraud claim" where "he alleges Defendants (who), on their website's Cookie Window (where) in March 2023 (when), represented Plaintiff could use the toggle switch to 'opt out of the sale of personal information' (what), but 'nonetheless caused cookies' and user data to be transmitted third parties (how).'"); *Cress v. Nexo Cap. Inc.*, 2026 WL 296728, at *11 (N.D. Cal. Feb. 4, 2026) (finding sufficiency under Rule 9(b) where the Plaintiff alleged that "Nexo (the 'who') induced Cress to take out loans and engage in OTC transactions (the 'what') on the dates Nexo publicly advertised (the 'when') through Nexo's website, marketing materials, and CEO (the 'where') 'that it did not charge any fees for any services on its platforms, including transactions'

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

Defendants further contend—based on arguments stemming from securities fraud cases governed by the Private Securities Litigation Reform Act ("PSLRA")—that Plaintiffs cannot rely on anonymous whistleblower accounts for their allegations. But this is not a securities case and the PSLRA's uniquely heightened pleading standards simply do not apply. *See McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 800 n.5 (C.D. Cal. 2024) ("the PSLRA does not apply" to non-securities claims); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2016 WL 4744165, at *8 (N.D. Cal. Sept. 12, 2016) ("To hold the PSLRA pleading standard applicable in all other cases involving a scienter element … would disregard the statute's limitation of the standard to 'private actions arising under this chapter.'"). Indeed, "the PSLRA standard is stricter than Rule 9." *Cave Consulting*, 2016 WL 4744165, at *8. Under Rule 9(b), the "'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), and the usual Rule 8 standard of plausibility applies to such allegations." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009)).

Each of Defendants' cited PSLRA cases—*Rubke*, *Chubb*, and *Royal Dutch/Shell*—involved securities fraud claims; not contract, data privacy, or other non-securities claims. *See Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1158 (9th Cir. 2009); *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir. 2004); *In re Royal Dutch/Shell Transp.,* 2006 WL 2355402, at *1 (D.N.J. Aug. 14, 2006). In non-PSLRA cases, courts have sustained whistleblower-based allegations at the pleading stage where the whistleblower claims personal knowledge of the events at issue. *See*, *e.g.*, *McIntyre*, 739 F. Supp. 3d at 800 (relying on whistleblower testimony at the pleading stage, despite fact that "Defendant disputes this whistleblower's credibility"); *Arkansas Pub. Emp. Ret. Sys. v. GT Solar Int'l, Inc.*, 2009 WL 3255225, at *7 (D.N.H. Oct. 7, 2009) (denying motion to dismiss where complaint relied upon "confidential witnesses" who used to work for the defendant and "professed personal knowledge of [alleged] events"); *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842-44 (N.D. Ill. 2024) (relying on "whistleblower article" in denying motion to

(the 'how').")); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *14 (N.D. Cal. July 14, 2025) (allegation that fraud was perpetrated "through the storage of cookies on users' devices that transmit personal information about the users" sufficient to allege the "how" under Rule 9(b)).

dismiss). The whistleblower statements here provide exactly that sort of information: a firsthand explanation of how Meta workers can and do obtain access to WhatsApp messages, including a widget on the worker's workstation obtained via a "task" sent to Meta engineers. Compl. ¶¶ 36-37. This testimony further explains special handling for certain types of Meta product users—an allegation Defendants notably do not dispute and therefore reveals substantial reasons to believe the whistleblower evidence does, in fact, stem from firsthand knowledge. *Id.* ¶ 38. At the pleading stage, courts do not make credibility determinations about such testimony, particularly when it provides such levels of detail. *McIntyre*, 739 F. Supp. 3d at 800.[3]

## II.     THE COMPLAINT EASILY SATISFIES RULE 8 BY PLAUSIBLY ALLEGING DEFENDANTS IMPROPERLY OBTAINED PRIVATE WHATSAPP MESSAGES

Under Rule 8's permissive standard, a complaint need only allege facts sufficient to state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "is not akin to a probability requirement." *Iqbal*, 556 U.S. at 678 (quotations omitted). Rather, it merely asks if the complaint's allegations establish "more than a sheer possibility that a defendant has acted unlawfully." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 762 (N.D. Cal. 2022) (citation omitted). Plaintiffs' allegations easily clear this bar.

Defendants call the Complaint's central allegation "implausible," feigning outrage at the accusation that Meta would make such bold privacy promises and fail to keep them. That ignores Meta's thoroughly documented history of serial, willful privacy violations—including violations that lead to an historic $5 billion FTC fine, a €1.2 billion GDPR fine, hundreds of millions of dollars in additional European penalties, an SEC fine, and ongoing regulatory proceedings—arising from

---

[3] Although not necessary to deny Defendants' motion, it is nevertheless notable that, after Plaintiffs filed their complaint, similar whistleblower statements—and reports of a federal investigation— regarding Defendants' access to WhatsApp messages emerged. *See US has investigated claims that WhatsApp chats aren't private*, THE BUSINESS TIMES (Jan. 30, 2026), https://www.businesstimes.com.sg/companies-markets/telcos-media-tech/us-has-investigated-claims-whatsapp-chats-arent-private.

its repeated practice of secretly accessing and exploiting user data in ways directly contrary to its promises and legal duties. Compl. ¶¶ 47-70. Against this backdrop, an allegation that Meta accessed private WhatsApp messages is not implausible; it is consistent with a well-established pattern.

Defendants' internal inconsistency argument also fails. They argue it is implausible that a company could simultaneously keep a scheme "under wraps" while granting rank-and-file workers "unfettered access." Mot. at 1, 9-10. But the Complaint explains exactly how Meta achieved this: by siloing different teams and directing workers to "stay in their own lane[s]" when they asked questions. Compl. ¶ 39. Further, it is well-documented that Meta requires employees to sign non-disclosure agreements and enforces those agreements vigorously.[4] Indeed, this would not be the first time that a large organization misused consumer data in violation of its contractual and privacy promises and was able to keep its misconduct "under wraps" until brave whistleblowers came forward—Meta itself is one of the prime examples of that in action.[5] How Meta and WhatsApp were able to keep their misconduct "under wraps" for so long in this case is a matter for discovery, not a basis for dismissal.

The cases Defendants cite are easily distinguished. In *Nguyen v. Endologix*, Inc., 962 F.3d 405, 415 (9th Cir. 2020), a securities case governed by the PSLRA, the court found implausible plaintiff's theory that the defendants promised FDA approval for a device application that defendants themselves knew was unprovable, and which did not generate any plausible benefit to defendants based on the factual allegations in the complaint. Here, Meta's motive and benefit are

---

[4]   *See* Jonathan Vanian, *Meta goes to arbitrator to prevent whistleblower from promoting tell-all book*, CNBC (Mar. 12, 2025), https://www.cnbc.com/2025/03/12/arbitrator-prohibits-meta-whistleblower-from-promoting-tell-all-book.html.

[5]   *See* Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 million Facebook profiles harvest for Cambridge Analytica in major data breach – Whistleblower describes how firm linked to former Trump adviser Steve Bannon compiled user data to target American voters*, THE GUARDIAN (Mar. 17, 2018) https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

obvious—as its previous run-ins with the law demonstrate, it has repeatedly accessed users' private data to enable improved ad targeting, share information with third parties, train AI models, and generally grow its data advantage. Compl. ¶¶ 47-51. That Meta would have a similar motive with respect to utilizing its users' immensely revealing private communications clearly "resonate[s] in common experience" (and is just as clearly a reasonable inference to draw from the well-pled factual allegations). *Nguyen*, 962 F.3d at 415. In *Citcon USA, LLC v. Miao*, 2021 WL 3402783, at *5 (N.D. Cal. Aug. 4, 2021), there was a specific, identified alternative explanation for the alleged data theft—a third party that the plaintiff itself had acknowledged in related litigation was the likely culprit. No such alternative explanation exists here.[6]

## III.    DEFENDANTS' OTHER PLEADING CHALLENGES ALSO FAIL

### A.    Plaintiffs Plausibly Allege Actual Damages for Counts 2, 8, 9, and 10

Defendants challenge the adequacy of alleged damages for Plaintiffs' CDAFA (Count 2), unjust enrichment (Count 8), civil-theft (Count 9), and UCL (Count 10) claims. Each challenge fails.

***Counts 2 and 8 (CDAFA and unjust enrichment)***. This Court previously recognized that "Plaintiffs are damaged by not having received a share of the allegedly unjust profits generated from

---

[6] Defendants cite to several other inapposite cases that do not support their Rule 8 arguments. *See Hudson Bay Master Fund Ltd. v. Centripetal Networks, Inc.*, 2016 WL 9412455, at *6 (E.D. Va. Dec. 20, 2016) (finding a tortious interference with business expectancy claim implausible where the Defendant "admitted it ha[d] no information to support" its theory of harm at a hearing); *In re Bank of Am. Cal. Unemployment Benefits Litig.,* 674 F. Supp. 3d 884, 916-17 (S.D. Cal. 2023) (finding that plaintiffs' "bare allegations" that defendant bank had treated plaintiff's data in an inadequately secure manner were insufficient to support California Consumer Privacy Act (CCPA) claim, but sustaining CCPA claim where plaintiffs specifically alleged that defendant failed to ensure that subcontractors were subject to background checks); *Baig v. Meta Platforms, Inc.*, 2026 WL 821002, at *7 (N.D. Cal. Mar. 23, 2026) (dismissing claim for wire fraud where complaint did not plead the "basic elements of wire fraud," and only stated that Meta committed "wire fraud" and "engaged in systemic sabotage.").

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

their data" and that a defendant's "unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to [defendant], plausibly constitutes a 'damage or loss' within the meaning of CDAFA." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) (Lin, J.); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *19 (N.D. Ill. Oct. 1, 2024) (denying motion to dismiss unjust enrichment claims where plaintiffs "plausibly alleged 'an actionable wrong' in the collection of their data, and have alleged that Defendants monetized this data for their own benefit."). Plaintiffs allege both the actionable wrong and that Defendants monetized the data for commercial benefit. Compl. ¶¶ 104-05, 169-70. That is sufficient for both their CDAFA and unjust enrichment claims. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025) (finding that plaintiffs sufficiently stated a claim for unjust enrichment upon allegation of defendant's profit from plaintiffs' internet activity "without [their] knowledge or consent, conferring benefits at the expense of their privacy rights") (quotations omitted); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1008 (N.D. Cal. 2024) (finding that plaintiffs adequately pleaded their unjust enrichment claim when they claimed that Meta "received, used, and/or sold [their]… confidential tax and financial information without their consent and to Meta's financial benefit).[7]

***Counts 9 and 10 (Statutory Larceny and UCL)***. Courts in this District have held that certain sensitive communications may constitute property for purposes of a statutory larceny and/or UCL claim, and that a plaintiff plausibly establishes damages for such claims by alleging that they provided such data "without being paid its fair value in return." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1013, 1023-24 (plaintiffs' "unlawful" and "unfair" UCL claims were adequately pleaded within the context of their actual damages theory); *see also Brown v. Google LLC*, 2021

---

[7] *See also Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *16 (N.D. Cal. July 22, 2025) (finding adequate facts to support an unjust enrichment claim where Plaintiffs "allege[d] that the Moving Defendants unlawfully intercepted their sensitive health data, that the Moving Defendants did so without Plaintiffs' consent, and that the Moving Defendants have unjustly retained the proceeds of monetizing the illegal obtained data.").

WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) ("[A] party who has provided goods or services in a transaction and has not been paid the fair value of those goods or services has suffered an economic injury .... The same logic would apply to parties ... who have provided valuable data ... and have received no money in return."). Plaintiffs allege exactly this: Defendants took their private WhatsApp messages—without permission and contrary to express promises—and used them for Defendants' commercial benefit. Compl. ¶¶ 178-79, 187. That is not "mere misappropriation" (Mot. at 11); Plaintiffs allege it is the extraction of valuable property without compensation. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-601 (9th Cir. 2020) (finding sufficient "economic injury" for standing to bring statutory larceny and CDAFA claims where plaintiffs alleged Facebook acquired their personal information without authorization and used it for commercial gain).

Plaintiffs also allege injury under the "benefit of the bargain" theory (Compl. ¶¶187-88), which posits that injury occurs when "a user shares information with the expectation that it will be protected but the recipient does not actually protect it," causing the user to "surrender[] in that transaction more than she otherwise would have." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024. To the extent Defendants cite cases (Mot. at 11) that dismiss UCL claims, several only addressed claims that depended on a "diminution in value" or "loss of value" theory, or inadequately described how the defendants deprived the plaintiffs of the "benefit of the bargain." That logic and those deficiencies do not apply here. "Economic injury" includes "surrender[ing]" more than anticipated in a transaction due to unfair conduct. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). Given Defendants literally market WhatsApp on their supposed ***in***ability to see or access private messages, Plaintiffs clearly were deprived of the benefit of ***that*** bargain because they "surrender[ed] more" in their transactions with Defendants than they believed was the case. That is economic injury.

Defendants' citations (Mot. at 11) do not hold otherwise. *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *1 (C.D. Cal. Nov. 20, 2023), involved passive mouse clicks and keystrokes—not private communications with significant personal and commercial value that a third party accessed without authorization (and in contravention of its public statements about those exact messages).

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

Similarly, neither *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1042 (N.D. Cal. 2018), nor *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021), addressed valuable private communications that a defendant specifically enticed users to send via its product by indicating it would not access those communications.  In *Cline*, the court dismissed a civil-theft claim for failure to plead actual damages upon the alleged theft of written works, 329 F. Supp. 3d at 1042, while *Pruchnicki* was a data-breach case against a healthcare corporation that did not include a civil-theft or UCL claim, 845 F. App'x at 615.

**B.    Defendants' Extraterritoriality Arguments Misstate the Law and Ignore Allegations of Conduct Originating in California**

The governing rule for all California statutory claims is straightforward: "If the conduct that 'creates liability' occurs in California, California law properly governs that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018). Courts have consistently held that non-resident plaintiffs may invoke California law where the defendant's liability-creating conduct originates there. *See Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (data-breach allegations against California defendant "sufficient to allow out-of-state plaintiffs to seek recovery under California law") (collecting cases); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *5-6 (S.D. Cal. June 29, 2016) (out-of-state corporation has right of action under CIPA against California defendant for unlawful recording where violations occurred in California). The Complaint squarely alleges that Defendants designed and operated their interception scheme from their California headquarters, accessed users' messages through California-based servers, and contrived the access system in California. Compl. ¶¶ 104, 114.

This Court has already applied this principle to reject the same extraterritoriality argument from Meta. In *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079-81 (N.D. Cal. 2023), the Court held that non-California residents could assert CIPA and California constitutional privacy claims where "the conduct causing them harm occurred in and emanated from California," rejecting Meta's extraterritoriality challenge at the pleading stage. The Court further noted that the Facebook Terms of Service choice-of-law clause, while not "dispositive," "support[ed] allowing these non-resident plaintiffs to assert a claim against a California resident under CIPA." *Id*. at 1079. The same

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

analysis applies here. It would be an odd result indeed for Defendants to contractually require Plaintiffs to file in this Court and to apply California law to their claims but then obtain dismissal on the basis that the law Defendants chose to govern disputes between the parties purportedly does not apply. In any event, complex choice-of-law questions "are seldom properly resolved on a motion to dismiss." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1005; *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024).

CIPA's territorial scope is also broader than Defendants suggest. As the court explained in *Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *9 (N.D. Cal. Nov. 26, 2024), "CIPA is not just concerned with whether communications were sent from a place in California; it also covers communications intercepted while 'in transit or passing over any wire, line, or cable' in California or 'received at any place' in California." Because Defendants' interception systems and servers are located in California, the alleged interceptions fall within CIPA's reach regardless of where Plaintiffs physically sent their messages.

Defendants' Wiretap Act argument fares no better. They cite *United States. v. Peterson*, 812 F.2d 486 (9th Cir. 1987) and *Zheng v. Yahoo! Incorporated*, 2009 WL 4430297 (N.D. Cal. Dec. 2, 2009) for the proposition that the Act has no extraterritorial reach—but in both those cases the interceptions were expressly alleged to have occurred wholly outside the United States (Thailand and China, respectively). *See Peterson*, 812 F.2d at 488; *Zheng*, 2009 WL 4430297, at *1. Plaintiffs here allege the opposite: the interceptions occurred in the United States, where Defendants' servers and systems are located. Compl. ¶ 90. Moreover, under the Wiretap Act, the relevant location of an interception is where the defendant used its device to acquire the communication—not where the plaintiff was when sending the message. *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) ("an interception occurs where the tapped phone is located *and* where law enforcement officers first overhear the call"); *Huff v. Spaw*, 794 F.3d 543, 547 (6th Cir. 2015). Plaintiffs' Wiretap Act claim is domestic, not extraterritorial.

PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS

## IV. THE COMPLAINT IS NOT A SHOTGUN PLEADING, LET ALONE AN IMPERMISSIBLE ONE

A shotgun pleading is one where "a party indiscriminately incorporates assertions from one count to another" in a way that "prevent[s] the opposing party from reasonably being able to prepare a response or simply mak[es] the burden of doing so more difficult." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (quoting 5A Wright & Miller's Federal Practice and Procedure § 1326 (4th ed. 2024)). "'Shotgun pleading' describes a class of defects in complaints; it does not supply a brightline rule. It will require judgment on the part of the district courts to determine those complaints that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis." *Id.* at 1289-90. When Meta has tried this sort of dismissal argument before, courts within this District have denied it where "the allegations are not so indecipherable as to violate Rule 8." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024).

Here, Defendants' Motion demonstrates they understand Plaintiffs' claims. They devote an entire section of their motion to arguing that ***all*** of the claims are implausible. *See* Mot. at 9-10. As part of that (incorrect) argument, Defendants express no confusion about what they are accused of doing. *See generally id.* Nor do they argue any actual confusion in their shotgun pleading section. *Id.* at 14-15. Without any explanation of a real inability to understand the claims, the shotgun pleading argument fails. In any event, Plaintiffs summarize the specific facts supporting each claim, thereby belying Defendants' shotgun pleading argument entirely. Compl. ¶¶ 79-190.

DATED: April 24, 2026

By: */s/ Adam Wolfson*
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
 Adam Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
 Stephen A. Broome (Bar No. 314605)
 stephenbroome@quinnemanuel.com
 Kevin Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
 Valerie Roddy (Bar No. 235163)
 valerieroddy@quinnemanuel.com
 Lauren B. Lindsay (Bar No. 280516)
 laurenlindsay@quinnemanuel.com
 865 South Figueroa Street, 10th Floor

Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
 Warren Postman (Bar No. 330869)
 wdp@kellerpostman.com
 Ashley Keller (pro hac vice forthcoming)
 ack@kellerpostman.com
 J.J. Snidow (pro hac vice forthcoming)
 jj.snidow@kellerpostman.com
 1101 Connecticut Avenue, N.W., Suite 1100
 Washington, D.C. 20036
 Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
 Jay W. Barnett (pro hac vice forthcoming)
 jay@barnettlegal.net
 3404 NW 135th Street
 Oklahoma City, OK 73120
 Telephone: (405) 456-9343

*Attorneys for Plaintiffs*