K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.,
and WhatsApp LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., AND WHATSAPP, LLC,<br><br>Defendants. | CASE NO. 26-CV-0751<br><br>**META PLATFORMS, INC., AND WHATSAPP, LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Complaint Filed Date:  January 23, 2026<br><br>Judge:        Honorable Rita F. Lin<br>Hearing Date: June 9, 2026<br>Time:         10:00 AM<br>Courtroom:    15, 18th Floor |

CASE NO. 26-CV-0751

**NOTICE OF MOTION AND MOTION FOR SANCTIONS**

PLEASE TAKE NOTICE that on June 9, 2026, at 10:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, United States District Judge for the Northern District of California, Defendants Meta Platforms, Inc. and WhatsApp LLC (collectively, "WhatsApp") will and hereby do move the Court for an order sanctioning Plaintiffs pursuant to Federal Rule of Civil Procedure 11(b), dismissing the Complaint with prejudice, and awarding WhatsApp the full amount of reasonable attorneys' fees and expenses it has incurred in defending this action.  This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying exhibits attached to this Motion, all other papers filed in this action, and the arguments of counsel.

DATED:  May 4, 2026

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ K. Winn Allen*

K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.,
and WhatsApp LLC*

CASE NO. 26-CV-0751

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................................1

INTRODUCTION ....................................................................................................................................1

BACKGROUND .......................................................................................................................................4

    A.  Plaintiffs Falsely Allege That WhatsApp Has Unlimited Access To Private, End-To-End Encrypted User Messages. ..........................................................................................4

    B.  WhatsApp Protects The Privacy Of Users' Encrypted Messages And Does Not Have Unlimited Access To The Content Of Such Messages. ......................................................5

    C.  Plaintiffs Ignore Evidentiary Proffer And Double Down On Their False Allegations. ....................................................................................................................................7

LEGAL STANDARD................................................................................................................................9

ARGUMENT..........................................................................................................................................10

    A.  Plaintiffs Violated Rule 11 By Filing A Factually Baseless Complaint After Failing To Conduct A Reasonable Pre-Complaint Investigation. ..................................................10

    B.  Plaintiffs Violated Rule 11 By Maintaining The Complaint In The Face Of Contrary Evidence Proving Their Claims False. ........................................................................12

    C.  Plaintiffs' Violations Of Rule 11 Require Dismissal Of Their Claims.................................15

CONCLUSION.......................................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdelhamid v. Altria Grp., Inc.*,
515 F. Supp. 2d 384 (S.D.N.Y. 2007)........................................................................................13, 15

*Buster v. Greisen*,
104 F.3d 1186 (9th Cir. 1997) .............................................................................................................9

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ......................................................................................................9, 10

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) ........................................................................................................9, 15

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990).......................................................................................................................9, 15

*Evans v. Allied Barton Sec. Servs., LLP*,
2010 WL 1644250 (N.D. Cal. Apr. 21, 2010) .......................................................................15

*Fuerst v. Fuerst*,
832 F. Supp. 2d 210 (E.D.N.Y. 2011) .......................................................................................12

*Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*,
2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) .......................................................................11

*Gulisano v. Burlington, Inc.*,
34 F.4th 935 (11th Cir. 2022) ...............................................................................................2, 12

*Havensight Cap. LLC v. Nike, Inc.*,
2015 WL 993344 (C.D. Cal. Feb. 18, 2015)...........................................................................15

*Hunt v. Sunny Delight Bevs. Co.*,
2018 WL 6786265 (C.D. Cal. Dec. 18, 2018) .......................................................................15

*Lake v. Gates*,
130 F.4th 1064 (9th Cir. 2025) ......................................................................................9, 11, 14

*In re Mot. For Sanctions Against Meyers*,
2014 WL 1494099 (N.D. Tex. Apr. 16, 2014) .......................................................................12

*Rattagan v. Uber Techs., Inc.*,
2019 WL 3891714 (N.D. Cal. Aug. 19, 2019) ..............................................................13, 15

*Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*,
--- F. Supp. 3d. ----, 2025 WL 3022882 (N.D. Cal. Oct. 29, 2025)...................................15

*Sec. Farms v. Int'l Bhd. of Teamsters*,
  124 F.3d 999 (9th Cir. 1997) ............................................................................................12

*Segan LLC v. Zynga Inc.*,
  131 F. Supp. 3d 956 (N.D. Cal. 2015) ..............................................................................15

*Song FI, Inc. v. Google, Inc.*,
  2016 WL 4180214 (N.D. Cal. Aug. 8, 2016) ....................................................................14

*In re Star Gas Secs. Litig.*,
  745 F. Supp. 2d 26 (D. Conn. 2010)..................................................................................13

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) (en banc) ..........................................................................12

*Truesdell v. So. Cal. Permanente Med. Grp.*,
  209 F.R.D. 169 (C.D. Cal. 2002) ..................................................................................3, 12

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................ *passim*

CASE NO. 26-CV-0751

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether Plaintiffs violated Rule 11 by filing a complaint premised on false allegations, having not conducted a reasonable investigation into those allegations and having chosen to maintain them in the face of uncontroverted evidence that they are baseless.

2.    Whether Plaintiffs' Rule 11 violation warrants appropriate sanctions, including dismissal and payment of Meta's reasonable attorneys' fees and expenses, to deter similar conduct.

**INTRODUCTION**

Plaintiffs' core allegation in this case—that Meta Platforms, Inc. and WhatsApp, LLC (collectively, "WhatsApp") "store, analyze, and can access virtually *all* of WhatsApp users' purportedly 'private'" end-to-end encrypted communications—is categorically false. *See* Compl. (ECF No. 1) ¶ 2 (emphasis in original). The moment this lawsuit was filed, WhatsApp immediately, publicly, and unconditionally rejected Plaintiffs' claim that WhatsApp has unlimited access to the content of users' end-to-end-encrypted messages, calling the allegation "false," "absurd," and a "frivolous work of fiction." *See* Ex. 26 (1/24/26 A. Stone X Post). Industry participants and experts followed suit, expressing near universal skepticism of Plaintiffs' allegations and describing them as "unsubstantiated," "a mathematical impossibility," "a nothingburger," "long on accusations and thin on any sort of evidence," "light on factual details about WhatsApp's actual software," and supported by "no tangible proof of any Meta-led bypass." *See* Exs. 19-23 (Public Reporting). WhatsApp does not have—and has never had—a secret ability to access WhatsApp users' end-to-end encrypted messages. Today, as for the past decade, WhatsApp users can trust that their private messages stay private.

In an effort to avoid wasting judicial resources, WhatsApp proactively engaged with Plaintiffs' counsel for months to explain that the complaint's allegations are baseless, and that the so-called "whistleblowers" behind the complaint are confused, deeply misinformed, or acting in bad faith. WhatsApp exchanged at least five letters with Plaintiffs—and had multiple oral conversations with their counsel—in which it explained why Plaintiffs' claims lacked factual support and repeatedly asked them to withdraw the complaint. *See* Ex. 1 (1/28/26 W. Allen Ltr.); Ex. 3 (2/9/26 W. Allen Ltr.); Ex. 5 (2/13/26 W. Allen Ltr.); Ex. 7 (2/25/26 W. Allen Ltr.); Ex. 9 (3/3/26 W. Allen Ltr.);. This included a voluntary evidentiary proffer to Plaintiffs, consisting of sworn declarations from two WhatsApp employees. The employee testimony, provided under penalty of perjury, confirms that WhatsApp "is

built on the open-source Signal Protocol," which ensures end-to-end encryption. Furthermore, the testimony affirms that "WhatsApp did not introduce any cryptographic or kleptographic 'backdoor' that would enable WhatsApp to view users' end-to-end encrypted communications." *See* Ex. 15 (M. Ali Decl.) ¶¶ 4-5. Because "[t]he private decryption keys needed to view the content of a received end-to-end encrypted message are unique to each message and generated and stored solely on the user's own device(s)," "Meta or WhatsApp cannot independently decrypt or access end-to-end encrypted message content," and "Meta and WhatsApp do not insert themselves or any other unauthorized device as recipients" of end-to-end encrypted messages. *Id.* ¶¶ 7-8. Thus, "[c]ontrary to the allegations in the complaint, ***neither Meta nor WhatsApp store or have 'unrestricted' or 'unlimited' access to users' end-to-end encrypted communications***," and no "process," "task," or "widget" exists "through which WhatsApp or Meta can obtain access to the content of a WhatsApp user's end-to-end encrypted communications." *See* Ex. 16 (C. Hempel Decl.) ¶¶ 5-6 (emphasis added). WhatsApp's proffer conclusively refutes Plaintiffs' contention that WhatsApp has unlimited access to the content of users' end-to-end encrypted communications. Yet Plaintiffs refused to withdraw their complaint, well after "it should have been clear that [their] contentions were no longer tenable." *See Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942-43 (11th Cir. 2022).

WhatsApp's engagement did not stop there. WhatsApp answered Plaintiffs' questions, including by explaining why publicly reported claims from a former Meta contractor (who WhatsApp suspects is one of the "whistleblowers" behind the complaint) could not possibly be correct. *See* Ex. 9 (3/3/26 W. Allen Ltr.). WhatsApp also repeatedly pressed Plaintiffs for details about their pre-suit investigation and the evidence they believe supports their claims. WhatsApp asked Plaintiffs to provide the identities of the "whistleblowers" referenced in the complaint, any declarations they may have, and any documentary or other evidence they believe supports the complaint's allegations. *See* Ex. 7 (2/25/26 W. Allen Ltr.) at 4. Plaintiffs refused to do so.

Plaintiffs' response to WhatsApp's outreach confirms that they are maintaining a complaint they do not believe in, contrary to their Rule 11 obligations. Despite shrugging off the sworn testimony from WhatsApp employees, claiming they were not "evidence," Plaintiffs ***admitted*** that their own "whistleblowers" could have simply been confused about what they were seeing: "for lay

2                                                                    CASE NO. 26-CV-0751

whistleblowers or others not trained in cryptography, it would not be obvious what the difference is between somehow breaking an encryption protocol versus obtaining the messages at the endpoints of an encrypted exchange." *See* Ex. 6 (2/18/26 A. Wolfson Ltr.) at 1-2. Conceding that their allegations are consistent with lawful conduct (such as voluntary user-reporting) is a reason to withdraw a complaint, not to press ahead with baseless litigation. That is particularly so given Plaintiffs' pivot away from the central theory in their complaint. In written communications, Plaintiffs have all but abandoned their claim that WhatsApp intercepts and has unlimited access to nearly all of WhatsApp users' end-to-end encrypted messages, recasting the "core point of the case" as whether WhatsApp has access to users' messages "beyond what Meta discloses." *Id.* at 1. But those are not the theories pled in the complaint, and Plaintiffs' effort to reframe their allegations is a quiet admission that their claims are unsupported.

In a final effort to convince Plaintiffs to drop this baseless lawsuit, WhatsApp took the extraordinary step of offering to allow Plaintiffs' experts to conduct a pre-discovery review of WhatsApp's source code. Exs. 11, 13 (3/19/26, 3/30/26 W. Allen Ltrs.). To date, however, Plaintiffs have not committed to conducting the source-code review without imposing unnecessary and meritless conditions, and without seeking broader discovery. Instead, they have continued to press ahead with their baseless allegations. Exs. 12, 14 (3/24/26, 4/2/26 A. Wolfson Ltrs.).

Given all of this, WhatsApp has no choice but to file this motion for sanctions under Rule 11. Plaintiffs have continued to pursue the complaint after receiving uncontroverted evidence that their allegations are false and after effectively admitting, in private communications, that their claims are unsupported. The false allegations in this case are far too damaging to WhatsApp's brand and reputation to let them persist any longer, particularly after WhatsApp has spent months cooperating with Plaintiffs in an effort to persuade them to withdraw this frivolous case to stop wasting WhatsApp's and the Court's time. It was reckless for Plaintiffs to file a lawsuit based on salacious claims from unidentified "lay whistleblowers" without sufficient investigation. Plaintiffs have compounded that recklessness and continue to violate their obligations under Federal Rule of Civil Procedure 11 by ignoring actual evidence of the falsity of their allegations. WhatsApp has given Plaintiffs more than enough chances to make things right by withdrawing their complaint. *See Truesdell v. So. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 176-77 (C.D. Cal. 2002) (imposing sanctions where "counsel

gave Plaintiff's counsel at least three opportunities to withdraw [their] claims," including "in the face of the presentation by" opposing counsel, and where counsel "fail[ed] to take advantage of the 'safe harbor' period"). Because Plaintiffs have chosen to maintain a lawsuit based on allegations that they have effectively admitted—in written communications—are unsupported, WhatsApp has no choice but to seek dismissal and sanctions under Rule 11. Plaintiffs' "ready, shoot, aim" approach to litigation cannot be tolerated.

BACKGROUND

**A.    Plaintiffs Falsely Allege That WhatsApp Has Unlimited Access To Private, End-To-End Encrypted User Messages.**

The premise of this lawsuit is that WhatsApp has "unlimited access to WhatsApp encrypted communications," Compl. ¶ 36—that is, the ability to access "virtually ***all*** of WhatsApp users' purportedly 'private'" end-to-end encrypted communications, *id.* ¶ 2 (emphasis in original); *see also id.* ¶¶ 5, 36-39, 142. Indeed, Plaintiffs have an entire section of their complaint entitled "WhatsApp's and Meta's Unrestricted Access to Users' Encrypted Communications." *Id.* at 12. Specifically, Plaintiffs claim that WhatsApp employees can access private, end-to-end encrypted WhatsApp messages simply by sending a "task" "to a Meta engineer with an explanation that they need access to WhatsApp messages for their job." *Id.* ¶ 36. Plaintiffs allege that, once approved, the requesting employee will "have a new window or widget available that can pull up any WhatsApp user's messages based on the user's User ID number, which is unique to a user but identical across all Meta products." *Id.* (emphasis omitted). This "widget," Plaintiffs say, can query the content of a WhatsApp user's end-to-end encrypted messages "in real-time" and with "unlimited [] temporal scope." *Id.* ¶ 37.

The complaint does not support these assertions with the sort of detail that usually follows a sufficient pre-filing investigation. Although Plaintiffs rely on assertions from unidentified whistleblowers, Plaintiffs do not disclose the identity of the alleged whistleblowers, where they worked, what their job was, what access (if any) they had to WhatsApp tools, or how they came to learn the information supposedly supporting their claims. They also cite no internal documents or communications, and they provide no concrete technical analysis. To the extent Plaintiffs discuss WhatsApp's code at all, they acknowledge that WhatsApp incorporates the Signal Protocol, an end-to-

4

end encryption platform that has no cryptographic or kleptographic backdoor.  *See id.* ¶¶ 33-35.  From that starting point, Plaintiffs nevertheless speculate there is a ***possibility*** that WhatsApp somehow altered the underlying protocol to disrupt the end-to-end encryption of WhatsApp messages—failing to explain how such a feat could even be accomplished without detection.  *See id.* ¶ 35.

**B.    WhatsApp Protects The Privacy Of Users' Encrypted Messages And Does Not Have Unlimited Access To The Content Of Such Messages.**

Plaintiffs' claims could not have been based on a reasonable investigation because they are demonstrably false: WhatsApp cannot access the content of end-to-end encrypted messages sent on WhatsApp unless users affirmatively elect to share those messages with WhatsApp (*e.g.*, to report suspected harassment or abuse).  As the complaint acknowledges, WhatsApp's platform integrated the open-source Signal Protocol for end-to-end encryption, which prevents anyone—including "the platform itself or third parties"—from accessing the content of end-to-end encrypted messages.  *See id.* ¶¶ 33-34; Ex. 17 (WhatsApp Encryption White Paper) at 3.  The source code for the Signal Protocol is public, and independent researchers have validated it.  *See* Compl. ¶ 35; Ex. 15 (M. Ali Decl.) ¶ 4.  WhatsApp "implemented the Signal Protocol without any alterations that would permit the decryption of or access to the content of end-to-end encrypted WhatsApp user messages."  Ex. 15 (M. Ali Decl.) ¶ 5.  "Specifically, WhatsApp did not introduce any cryptographic or kleptographic 'backdoor' that would enable WhatsApp to view users' end-to-end encrypted communications."  *Id.*

WhatsApp users' messages thus are protected by end-to-end encryption.  As a senior software engineer at WhatsApp has explained in sworn testimony, "[f]or all end-to-end encrypted messages, the sender's device encrypts the message, and it then exists only in ciphertext (i.e., scrambled, unreadable text created by applying encryption to the readable information transmitted by the sender) while in transit."  *Id.* ¶ 6.  In other words, each time a WhatsApp user sends a message, that message is secured ***before*** it leaves the user's device, with a cryptographic lock that is unique to each message.  *See id.*  This means "message content cannot be viewed on WhatsApp servers."  *Id.*  "The private decryption keys needed to view the content of a received end-to-end encrypted message are unique to each message and generated and stored solely on the user's own device(s)."  *Id.* ¶ 7.  By designating "the recipient(s) that will receive a WhatsApp message," a user ensures "that only the recipient(s) can decrypt and read the

end-to-end encrypted message." *Id.* "Meta and WhatsApp do not insert themselves or any other unauthorized device as recipients" of end-to-end encrypted messages, and "could not do so without detection." *Id.* "Users' private encryption keys for end-to-end encrypted message content are never transmitted to, stored on, or viewable by Meta or WhatsApp." *Id.* ¶ 8. For this reason, "Meta or WhatsApp cannot independently decrypt or access end-to-end encrypted message content." *Id.*

Of course, users can report messages to WhatsApp for integrity purposes—which WhatsApp clearly discloses and the complaint acknowledges. "When a user reports a message, the reporting ***user's*** device transmits the reported message to WhatsApp for content review, including up to five last-exchanged text messages in the chat (if the reporting user reports another user or group as opposed to a specific single message)." *Id.* ¶ 9. "Users are notified at the time of reporting which message content they are sharing with WhatsApp, and WhatsApp's ability to view messages that users have reported to it is publicly detailed on WhatsApp's website." *Id.*; *see also* Ex. 16 (C. Hempel Decl.) ¶ 4; Ex. 24 (WhatsApp Reporting and Blocking FAQ); Ex. 25 (Staying Safe on WhatsApp). Decryption thus "occurs on the reporting user's device before the user reports content to WhatsApp," such that "the message is no longer considered end-to-end encrypted when the user sends it to Meta or WhatsApp for review." Ex. 15 (M. Ali Decl.) ¶ 9.[1] "Only the content of [] reported messages is accessible to WhatsApp; a user's report does not give Meta or WhatsApp access to the content of any messages other than the messages that are reported by the user to WhatsApp." *Id.* ¶ 9.

Contrary to Plaintiffs' allegations, "***neither Meta nor WhatsApp store or have 'unrestricted' or 'unlimited' access to users' end-to-end encrypted communications***." *See* Ex. 16 (C. Hempel Decl.) ¶ 5 (emphasis added). No "'process, 'task,' or 'widget'" exists "through which WhatsApp or Meta can obtain access to the content of a WhatsApp user's end-to-end encrypted communications." *Id.* ¶ 6. Nor can WhatsApp access "users' end-to-end encrypted messages 'in real-time' or access the content of end-to-end encrypted messages that have been deleted by users." *Id.*; Ex. 15 (M. Ali Decl.) ¶ 9.

---

[1] WhatsApp performs the decryption itself when a user reports "a media message (photo, video, audio, or file)," but cannot "access any other messages besides the media in the specific reported media message." Ex. 15 (M. Ali Decl.) ¶¶ 9-10. Plaintiffs' claims are not based on user-reported messages.

6                                CASE NO. 26-CV-0751

**C.    Plaintiffs Ignore Evidentiary Proffer And Double Down On Their False Allegations.**

WhatsApp immediately asked Plaintiffs to withdraw the complaint, explaining that it "is based on egregious factual inaccuracies and lacks any legitimate basis." Ex. 1 (1/28/26 W. Allen Ltr.) at 1. At first, Plaintiffs appeared to stand behind their allegations, claiming they were supported by "direct whistleblower testimony," which Plaintiffs did not attach, and pointing to an article published in *Bloomberg* after the complaint was filed. Ex. 2 (1/29/26 A. Wolfson Ltr.) at 1-2. That article, however, called allegations similar to Plaintiffs' "unsubstantiated." *See id.*, Ex. A at 3. By the end of the correspondence, Plaintiffs retreated from their complaint, recasting the "core issue" in the case as whether WhatsApp "has access to WhatsApp users' messages regardless of end-to-end encryption." *Id.* at 2. The parties then conferred, and WhatsApp again asked for additional information about Plaintiffs' allegations, identifying public reporting describing the allegations as a "mathematical impossibility." *See* Ex. 22 (1/31/26 Guardian Article). In response, Plaintiffs relied only on the complaint and dismissed the reporting, saying "prognosticators gonna prognosticate." Allen Decl. ¶ 6.

As a show of good faith, WhatsApp made an evidentiary proffer to address Plaintiffs' claims, providing sworn declarations from a senior software engineer at WhatsApp and a manager on the operations team with oversight of user safety and reports; documents describing WhatsApp's end-to-end encryption protocol; and public reporting expressing profound disbelief at Plaintiffs' allegations. *See* Exs. 15-23. This proffer conclusively refutes Plaintiffs' claim that WhatsApp can access the content of encrypted messages, including the articles described below:

- **"'Not Secure' – Do You Suddenly Need To Stop Using WhatsApp?"**: The article notes: "Spurious claims about WhatsApp's encryption turn up most years. None have yet been substantiated. There is no technical detail available as yet to suggest any different. Users can send content to WhatsApp when reporting issues, but that's user-led. ***There is no tangible proof of any Meta-led bypass***." Ex. 19 at 4 (emphasis added).

- **"WhatsApp Lawsuit Draws Skepticism From Cryptographers, Privacy Lawyers"**: The article explains that "[t]echnologists" contacted by the publication about Plaintiffs' allegations "said they ***see no clear technical path*** for Meta to routinely access the plaintext of WhatsApp messages, as the lawsuit alleges." Ex. 20 at 2 (emphasis added).

- **"Lawsuit Claims WhatsApp Has A Gaping Security Hole. Experts Doubt it."**: The article states that "[t]he allegations" in the complaint "baffled security experts." Ex. 21 at 2. Professor Green is quoted as saying the complaint is "***pretty long on accusations and thin on any sort of evidence***" and describing the lawsuit as a "nothingburger." *Id.* at 6 (emphasis added). Another researcher who holds a Ph.D. in computer science from U.C. Berkeley—Nicholas Weaver—"call[ed] the suit '***ludicrous***.'" *Id.* (emphasis added).

- **"US Authorities Reportedly Investigate Claims That Meta Can Read Encrypted WhatsApp Messages"**: Steven Murdoch—a professor of security engineering at University College London—is quoted in response to Plaintiffs' lawsuit: "*I would be very surprised if what they are claiming is actually true*." Ex. 22 at 2 (emphasis added). A "senior executive in the technology sector" also explained that the "idea that WhatsApp can selectively and retroactively access the content" of users' encrypted end-to-end messages "is a *mathematical impossibility*." *Id.* (emphasis added).

Plaintiffs dismissed WhatsApp's proffer out of hand. While refusing to provide information about their alleged "whistleblowers," Plaintiffs again dismissed the widespread skepticism of industry participants and experts, and they suggested that WhatsApp's declarations did not qualify as "evidence," instead amounting to a request for Plaintiffs to "trust us." Ex. 6 (2/18/26 A. Wolfson Ltr.) at 2. Plaintiffs continued to reframe the "core point of the case" as whether "Meta has access to users' WhatsApp messages beyond what Meta discloses." *Id.* at 1. Contrary to the theory advanced in the complaint, Plaintiffs now admit that "for lay whistleblowers or others not trained in cryptography, it would not be obvious what the difference is between somehow breaking an encryption protocol versus obtaining the messages at the endpoints of an encrypted exchange." *Id.* Yet, instead of withdrawing the complaint, Plaintiffs asked WhatsApp to provide still more information. *See id.* at 2-3.

WhatsApp further addressed Plaintiffs' reliance on the *Bloomberg* article, which attributes to former Meta contractor Larkin Fordyce claims that WhatsApp had access to private user communications. WhatsApp explained that Mr. Fordyce's claims could not possibly be true. *See* Ex. 9 (3/3/26 W. Allen Ltr.) at 2. No tool ever existed that would have given Mr. Fordyce or anyone else access to encrypted WhatsApp messages. *See id.*; Ex. 16 (C. Hempel Decl.) ¶¶ 5-6. And Mr. Fordyce does not have a technical background to speak to encryption technology; he did not work on WhatsApp encryption; and he did not have visibility into WhatsApp's code. *See id.* Plaintiffs' response continued their retreat from the allegations in the complaint, maintaining that WhatsApp "had access to at least *some*" user messages. *See* Ex. 10 (3/5/26 A. Wolfson Ltr.) at 1. Plaintiffs offered no details suggesting that such access involved encrypted messages or was inconsistent with WhatsApp's disclosures. The parties had further correspondence during the safe-harbor period, after *Bloomberg* released a second article with unverified claims about WhatsApp. *See* Exs. 27-28 (4/29-5/1/26 Ltrs.).

Even though Plaintiffs have all but abandoned their claim that WhatsApp intercepts and has unlimited access to nearly all of WhatsApp users' end-to-end encrypted messages, Plaintiffs are still

refusing to dismiss their complaint. In a final effort to persuade Plaintiffs to do so, WhatsApp even offered them the opportunity to access and review WhatsApp's source code to confirm the lack of merit to their allegations at a technical level. Exs. 11, 13 (3/19/26, 3/30/26 W. Allen Ltrs.). Plaintiffs refused to agree to the reasonable terms WhatsApp proposed without attaching a litany of baseless conditions—including demanding to review each historical version of the code and the ability to proceed to conduct broader discovery into meritless claims. Exs. 12, 14 (3/24/26, 4/2/26 A. Wolfson Ltrs.).

Because Plaintiffs have refused to withdraw their complaint after multiple requests, including during Rule 11(c)(2)'s safe harbor period, WhatsApp is forced to bring this motion.

## LEGAL STANDARD

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). To that end, Rule 11 obligates attorneys to certify that factual claims in a pleading have "evidentiary support" to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b)(3); *Cooter & Gell*, 496 U.S. at 393 ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"). "Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law.'" *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). This warranty extends to continued support and advocacy for factual contentions in a pleading after a party learns they lack evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). An attorney breaches Rule 11 if (1) "the complaint is legally or factually 'baseless' from an objective perspective" and (2) the signatory failed to conduct "'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127 (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). A complaint is baseless when "unsupported factual allegations are present." *See Lake v. Gates*, 130 F.4th 1064, 1068-69 (9th Cir. 2025). A pre-filing inquiry is unreasonable when the complaint's allegations are "based on 'speculation and conjecture,'" particularly in the face of "widely available" contrary facts about the complaint's subject matter. *See id.* at 1069. Faced with a violation of Rule 11, a federal district court "may impose an appropriate sanction" "to deter repetition of the conduct or comparable

9                                                          CASE NO. 26-CV-0751

conduct by others." Fed. R. Civ. P. 11(c)(1), (4). Sanctions may include dismissal, attorneys' fees, or both. *See* Fed. R. Civ. P. 11(c)(4); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991).

## ARGUMENT

Plaintiffs' complaint violates Rule 11. Their claims are "factually 'baseless' from an objective perspective," and they failed to conduct a reasonable investigation before filing a complaint featuring sensational and false allegations. *See Christian*, 286 F.3d at 1127. Worse, Plaintiffs further violated Rule 11 by maintaining a meritless complaint, while acknowledging in written communications that their "whistleblower" allegations are consistent with what WhatsApp tells users and the world. Plaintiffs' refusal to withdraw the complaint is improper and requires case-dispositive sanctions.

**A.    Plaintiffs Violated Rule 11 By Filing A Factually Baseless Complaint After Failing To Conduct A Reasonable Pre-Complaint Investigation.**

Plaintiffs' core contention—that WhatsApp intercepts and has unlimited "access to **all** WhatsApp users' encrypted communications in their entirety"—is false. *See* Compl. ¶¶ 2, 5, 36. WhatsApp's end-to-end encryption integrates the open-source Signal Protocol, which is designed without any backdoors enabling access to private message content. *See id.* ¶¶ 33-35; Ex. 15 (M. Ali Decl.) ¶¶ 4-5; Ex. 17 (WhatsApp Encryption White Paper) at 3. WhatsApp implemented this protocol without alterations that would allow WhatsApp to decrypt or access the content of end-to-end encrypted user messages. Ex. 15 (M. Ali Decl.) ¶ 5. Each time a WhatsApp user sends a message, the message is encrypted and secured before leaving the user's device, with a lock that is unique to each message. *Id.* By selecting "the recipient(s) that will receive a WhatsApp message," a user ensures "that only the recipient(s) can decrypt and read the end-to-end encrypted message." *Id.* This means "message content cannot be viewed on WhatsApp's servers," *id.* ¶ 6, unless a user affirmatively reports content to WhatsApp, which happens after users receive an on-screen disclosure informing them that message content will be sent to WhatsApp. *See id.* Contrary to Plaintiffs' allegations, no tool or "widget" exists that allows WhatsApp employees to call up and read the content of end-to-end encrypted messages. *See* Ex. 16 (C. Hempel Decl.) ¶¶ 5-6.

Given the falsity of the factual claims and the correspondence between the parties since the complaint was filed, it is apparent that Plaintiffs failed to conduct "a reasonable and competent inquiry"

before signing and filing" the complaint. *Christian*, 286 F.3d at 1127 (quotations omitted). Despite WhatsApp's repeated requests, Plaintiffs have provided no meaningful information about the investigation they conducted before publicly filing sensational and false allegations. Nor have Plaintiffs produced any of the evidence that they believe supports their claims, such as internal documents or sworn statements from the purported "whistleblowers." In contrast, WhatsApp has provided plaintiffs with sworn declarations from company employees clearly and indisputably refuting the allegations and explained in detail how Plaintiffs' claims could not possibly be true. Had Plaintiffs conducted a reasonable investigation, or concerned themselves with factual support for their claims, "no reasonable attorney 'would have found the complaint to be well-founded.'" *See Lake*, 130 F.4th at 1069. The record thus confirms that Plaintiffs did not conduct the reasonable inquiry that Rule 11 requires.

It is no answer for Plaintiffs to point to the unsubstantiated say-so of unidentified "whistleblowers." *See* Compl. ¶¶ 2, 36. Plaintiffs have provided no details about those whistleblowers—not their identities, their relationships with Meta or WhatsApp (if any), their exposure to tools involving WhatsApp, nor how they came by the information alleged in the complaint. This leads to one conclusion: Plaintiffs did not take any steps to meaningfully investigate the whistleblower claims before filing suit. Otherwise, it is hard to understand Plaintiffs' decision to bring patently false claims and steadfastly refuse to reveal anything meaningful about the basis for their claims. To the extent Plaintiffs have said anything, it is that their "lay whistleblowers" cannot tell the difference between (i) breaking encryption and intercepting messages in transit and (ii) obtaining messages after they have been decrypted on a user's device and voluntarily provided to WhatsApp. *See* Ex. 6 (2/18/26 A. Wolfson Ltr.) at 1. But if the untrained observations of "lay whistleblowers" could not bear the weight of Plaintiffs' allegations, then it was incumbent on Plaintiffs to continue investigating to ensure there was an adequate factual foundation before leveling sensational allegations in a federal-court complaint. For example, public reporting on Plaintiffs' allegations confirms there are many cryptography experts and industry executives that Plaintiffs could have consulted before (or after) filing the complaint to gut-check their claims. *See Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, 2019 WL 8017806, at *2 (C.D. Cal. Dec. 20, 2019) (rejecting argument that "'complex medical and legal issues'" excused failure to investigate). What Plaintiffs could not do is apparently what they did here:

"blindly rely[]" on unsubstantiated, unsworn, and anonymous whistleblower claims without independent, reasonable investigation from counsel to ensure the claims had a reasonable basis. *See Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1016-17 (9th Cir. 1997).

## B.    Plaintiffs Violated Rule 11 By Maintaining The Complaint In The Face Of Contrary Evidence Proving Their Claims False.

Plaintiffs separately violated Rule 11 by choosing to press forward with their complaint despite WhatsApp providing evidence post-filing showing that their allegations were objectively incorrect. "[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court." *Gulisano*, 34 F.4th at 942. So, even if Plaintiffs had some initial basis for filing their complaint (which they did not), any such basis evaporated when WhatsApp provided them with sworn evidence refuting their claims and engaged in multiple rounds of communications explaining why the claims had no basis. Plaintiffs are "responsible for continuing to advocate the false allegations even after they should have known the game was over when they received" WhatsApp's evidentiary proffer. *See In re Mot. For Sanctions Against Meyers*, 2014 WL 1494099, at *9 (N.D. Tex. Apr. 16, 2014); *see also, e.g.*, *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc) (affirming sanctions where attorney filed "baseless" complaint and conducted "absolutely no inquiry" in the face of two affidavits contradicting the complaint's allegations); *Truesdell*, 209 F.R.D. at 176 (imposing sanctions where party "refus[ed] to withdraw the Complaint in the face of" opposing "counsel's subsequent efforts to demonstrate the frivolousness of Plaintiff's claims, and finally failing to take advantage of the 'safe harbor'"); *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 220 (E.D.N.Y. 2011) ("[I]t was incumbent on the Plaintiff to withdraw the complaint upon receipt of the Defendant's demand … because there was no longer any viable basis for asserting the claims.").

Plaintiffs' decision to push forward with this lawsuit is particularly indefensible given that they have all but abandoned their allegations in post-complaint correspondence. Rather than defend their allegations or offer evidence in support of them, Plaintiffs have tried to recast their claims as alleging that WhatsApp has access to users' messages "regardless of end-to-end encryption" or "beyond what

Meta discloses." *See* Ex. 2 (1/29/26 A. Wolfson Ltr.) at 2; Ex. 6 (2/18/26 A. Wolfson Ltr.) at 1. That is ***not*** the theory advanced in the complaint. The entire premise of the complaint is that WhatsApp "store[s], analyze[s], and can access virtually ***all*** of WhatsApp users' purportedly 'private' communications." *See* Compl. ¶ 2; *see id.* ¶ 36 ("WhatsApp and Meta store and have unlimited access to WhatsApp encrypted communications … ."). Indeed, Plaintiffs go so far as to allege that WhatsApp "***intercepted substantially all*** of WhatsApp users' private messages such that they were available for" "review in real time." *Id.* ¶ 141 (emphasis added). The complaint even uses a header titled "WhatsApp's and Meta's ***Unrestricted Access*** to Users' Encrypted Communications" to frame Plaintiffs' core allegations. *Id.* at 12 (emphasis added). It is impossible to read the complaint as accusing WhatsApp of having only the ability to read "some" undefined universe of messages beyond what WhatsApp discloses. Plaintiffs cannot retreat from the theory put forward in the complaint by advancing new (and equally baseless) theories outside of a pleading subject to the Federal Rules. Plaintiffs' attempts to recast their claims in post-complaint correspondence confirms that Plaintiffs have no good-faith basis for pushing ahead with allegations they have effectively abandoned.[2]

Plaintiffs' dismissiveness towards the skepticism of industry executives and cryptographic experts underscores their irresponsible handling of this case. As explained above, Plaintiffs' allegations have been described in the press as "a nothingburger," "a mathematical impossibility," "long on accusations and thin on any sort of evidence," "light on factual details about WhatsApp's actual software," and unsupported by any "tangible proof of a Meta-led bypass." *See* Exs. 19-23 (Public Reporting). Commentators are quoted as saying, "I would be very surprised if what they are claiming is actually true," "I would be very surprised if the claims are accurate," and "I have a lot of questions that I would want answered before I would want this lawsuit to proceed." *See* Exs. 19-23 (Public Reporting). This reporting was available to Plaintiffs during the safe-harbor period, and they ignored all of it in

---

[2] Falsity aside, WhatsApp should not be forced to shadowbox against new, unpled theories, and the law is clear that Plaintiffs' assertions must be considered under the theories they have advanced, not vague alternatives that do not appear in a pleading. *See Rattagan v. Uber Techs., Inc.*, 2019 WL 3891714, at *4 (N.D. Cal. Aug. 19, 2019) ("While Mr. Rattagan could have advanced a theory that Uber Technologies was somehow legally responsible based on its indirect control …, Mr. Rattagan deleted that allegation and worded the FAC so as to imply a direct relationship with Uber Technologies.");; *In re Star Gas Secs. Litig.*, 745 F. Supp. 2d 26, 35 (D. Conn. 2010) ("Plaintiffs' fraud claims … are predicated on the failures of the Canadian call center and resulting attrition; Plaintiffs did not allege that any elements of the BIP that began in 2002 failed or caused attrition.").

refusing to withdraw the complaint. *See Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007) (imposing Rule 11 sanctions where party "did not seek to amend his pleading to retract these allegations within the twenty-one day 'safe harbor' period"); *Song FI, Inc. v. Google, Inc.*, 2016 WL 4180214, at *2-3 (N.D. Cal. Aug. 8, 2016) (finding Rule 11 violation as to allegation that YouTube allowed view-count manipulation in light of YouTube's public actions and contrary reporting); *Lake*, 130 F.4th at 1069 (affirming sanctions when facts regarding complaint were "widely available").

It is hardly credible for Plaintiffs to wave off those publicly expressing disbelief at their allegations as "prognosticators." These "prognosticators" include a professor of security engineering (and Royal Society Research Fellow) at University College London, and a researcher at the International Computer Science Institute with a Ph.D. in computer science from University of California, Berkeley. Nor is it persuasive for Plaintiffs to point out that these experts and industry participants "have no access to Meta's internal code." *See* Ex. 6 (2/18/26 A. Wolfson Ltr.) at 2. ***Neither did Plaintiffs' lay whistleblowers***. Plaintiffs' effort to dismiss public reporting about their allegations thus backfires and only highlights the failures in their own investigation and their error in doubling down on their claims.

Against all of this, Plaintiffs have referred WhatsApp to a *Bloomberg* article referencing statements from a former Accenture vendor worker named Larkin Fordyce, who was assigned to Meta as a contingent worker. Mr. Fordyce reportedly claims that content moderators "were granted their own access to WhatsApp" and "could request access to communications," with teams being "able to 'pull whatever they wanted.'" *See* Ex. 2 (*Bloomberg* Article) at 4. Those statements are thin, to say the least, and a law enforcement spokesperson went on record in the same article to say as much, calling the "assertions about WhatsApp encryption practices" "unsubstantiated." *Id.* at 3. WhatsApp nevertheless investigated Mr. Fordyce's claims, determined they were entirely baseless and unsupported, and communicated the same to Plaintiffs. *See* Ex. 9 (3/3/26 W. Allen Ltr.). As WhatsApp explained, Mr. Fordyce worked as an Accenture vendor worker supporting a ***different*** Meta feature (Facebook Marketplace). There is no evidence that Mr. Fordyce's responsibilities would have required access to WhatsApp messages, encrypted or otherwise, nor is Mr. Fordyce an encryption expert, he never worked on WhatsApp's encryption protocol, and he lacked any visibility into WhatsApp's code. WhatsApp has explained to Plaintiffs why the sensational, unconfirmed claims attributed to Mr. Fordyce cannot be true.

### C.     Plaintiffs' Violations Of Rule 11 Require Dismissal Of Their Claims.

Case-dispositive sanctions are warranted because Plaintiffs' untrue factual claim that WhatsApp can access the content of ***any*** message contaminates their entire lawsuit.  Because all of Plaintiffs' claims are based on the false allegation that WhatsApp has unlimited access to users' private, end-to-end encrypted communications, the Rule 11 violation here "taint[s] the entire pleading," supporting dismissal. *See Hunt v. Sunny Delight Bevs. Co.*, 2018 WL 6786265, at *4 (C.D. Cal. Dec. 18, 2018) (striking pleading because it "would be manifestly unjust to allow this case to proceed on the First Amended Complaint"); *Combs*, 927 F.2d at 488 (dismissal proper for efforts "to deceive the district court on material matters"); *Rattagan*, 2019 WL 3891714, at *4-5 (dismissing complaint where attorneys "should have been aware that the evidence did not support [the] claims"); *Abdelhamid*, 515 F. Supp. 2d at 400 (similar).  Having made spurious accusations, Plaintiffs should not be permitted to go back to the drawing board and dream up new theories to prop up their lawsuit.  *See Hunt*, 2018 WL 6786265, at *5 ("[A] 'do-over' may provide little disincentive to the filing of dishonest pleadings."); *Havensight Cap. LLC v. Nike, Inc.*, 2015 WL 993344, at *3 (C.D. Cal. Feb. 18, 2015) (describing as "[p]articularly egregious" a baseless claim that "threatens" the defendant's "reputation").  Consistent with Rule 11's goal of preventing "baseless filings," *see Cooter & Gell*, 496 U.S. at 393, only dismissal with prejudice will "deter repetition of the conduct" at issue, *see* Fed. R. Civ. P. 11(c)(4).

WhatsApp also seeks the full amount of reasonable attorneys' fees and expenses it has incurred in defending this action, following future briefing enumerating those fees and expenses.  *See, e.g.*, *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, --- F. Supp. 3d. ----, 2025 WL 3022882, at *11 (N.D. Cal. Oct. 29, 2025) (awarding $1.4 million in attorneys' fees under Rule 11); *Segan LLC v. Zynga Inc.*, 131 F. Supp. 3d 956, 960 (N.D. Cal. 2015) (awarding $1.18 million in fees "because the lawsuit was objectively baseless from the start"); *Evans v. Allied Barton Sec. Servs., LLP*, 2010 WL 1644250, at *2-3 (N.D. Cal. Apr. 21, 2010) (attorneys' fees awarded because filings not grounded in fact).

### CONCLUSION

WhatsApp requests that the Court find that Plaintiffs violated Rule 11 by signing and filing the complaint, dismiss the complaint with prejudice, and award reasonable attorneys' fees and expenses.

DATED:  May 4, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP


*/s/ K. Winn Allen*

K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc., and WhatsApp LLC*

CASE NO. 26-CV-0751

**CERTIFICATE OF SERVICE**

On May 4, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ K. Winn Allen*
K. Winn Allen, P.C.