QUINN EMANUEL URQUHART
& SULLIVAN, LLP
 Adam Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
 Stephen A. Broome (Bar No. 314605)
 stephenbroome@quinnemanuel.com
 Kevin Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
 Valerie Roddy (Bar No. 235163)
 valerieroddy@quinnemanuel.com
 Lauren B. Lindsay (Bar No. 280516)
 laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
 Warren Postman (Bar No. 330869)
 wdp@kellerpostman.com
 Ashley Keller (pro hac vice forthcoming)
 ack@kellerpostman.com
 J.J. Snidow (pro hac vice forthcoming)
 jj.snidow@kellerpostman.com
 1101 Connecticut Avenue, N.W., Suite 1100
 Washington, D.C. 20036
 Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
 Jay W. Barnett (pro hac vice forthcoming)
 jay@barnettlegal.net
 3404 NW 135th Street
 Oklahoma City, OK 73120
 Telephone: (405) 456-9343

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated

Plaintiffs,

v.

META PLATFORMS, INC., and WHATSAPP, LLC,

Defendants.

Case No. 3:26-cv-0751-RFL

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC.'S AND WHATSAPP, LLC'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Complaint Filed Date: January 23, 2026

Judge:  Honorable Rita F. Lin

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

PRELIMINARY STATEMENT ............................................................................................ 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.     DEFENDANTS' MOTION IS AN IMPROPER PRE-DISCOVERY SUMMARY
JUDGMENT MOTION ............................................................................................. 4

II.    DEFENDANTS' FOCUS ON END-TO-END ENCRYPTION DOES NOT
SUPPORT SANCTIONS—IT RAISES INFERENCES SUPPORTING
PLAINTIFFS' CLAIMS ............................................................................................ 6

CONCLUSION ..................................................................................................................... 8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 11 MOTION

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bates v. Rezentes,*
731 F. Supp. 3d 1119 (N.D. Cal. 2024) ................................................................... 6

*Belda v. Bank of Am.*,
2016 WL 7444913 (C.D. Cal. June 20, 2016) .......................................................... 5

*Bell v. Nat'l Credit Servs. Inc.*,
2020 WL 8832899 (W.D. Wash. Oct. 14, 2020), *report and recommendation adopted*, 2021 WL 928161 (W.D. Wash. Mar. 11, 2021) .......................................... 5

*Bighorn Cap., Inc. v. Security Nat'l Guar., Inc.*,
2015 WL 9489897 (N.D. Cal. Dec. 30, 2015) .......................................................... 5

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ................................................................................. 4

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ..................................................................... 2

*GN Resound A/S v. Callpod, Inc.*,
2013 WL 5443046 (N.D. Cal. Sept. 30, 2013) ........................................................ 5

*Golden Gate Way, LLC v. Stewart*,
2011 WL 3667496 (N.D. Cal. Aug. 22, 2011) ........................................................ 5

*Himaka v. Buddhist Churches of Am.*,
917 F. Supp. 698 (N.D. Cal. 1995) .......................................................................... 4

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ............................................................................... 3, 4

*Hudson v. Moore Business Forms, Inc.*,
836 F.2d 1156 (9th Cir. 1987) ................................................................................. 3

*Humphries v. Button*,
2024 WL 5361408 (D. Nev. Mar. 25, 2024), *objections overruled*, 2025 WL 588025 (D. Nev. Feb. 21, 2025) ...................................................................... 5, 7

*In re Keegan Mgmt. Co., Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) ..................................................................................... 4

*MI-94, LLC v. Chemetall US, Inc.*,
2023 WL 8186618 (D. Nev. Nov. 27, 2023) ........................................................... 5

*Mitchel v. City of Santa Rosa*,
    695 F. Supp. 2d 1001 (N.D. Cal. 2010) ...................................................................5

*Operating Eng'rs Pension Trust v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) ...............................................................................3

*Remington v. Mathson*,
    2017 WL 3421966 (N.D. Cal. Aug. 9, 2017) ...........................................................5

*Rodriguez v. Serv. Emps. Int'l*,
    2010 WL 3464365 (N.D. Cal. Sept. 1, 2010) ...........................................................5

*Safe-Strap Co. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) ......................................................................5

*Scott v. Harris*,
    550 U.S. 372 (2007) ...............................................................................................6

*Tom Growney Equip., Inc. v. Shelly Irrigation Dev., Inc.*,
    834 F.2d 833 (9th Cir. 1987) ...................................................................................3

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
    242 F.3d 1102 (9th Cir. 2001) .................................................................................4

*United Specialty Ins. Co. v. Dorn Homes Inc.*,
    2020 WL 8416010 (D. Ariz. Jan. 9, 2020) ..............................................................5

*W. Coast Theater Corp. v. City of Portland*,
    897 F.2d 1519 (9th Cir. 1990) .................................................................................4

*Waidhofer v. Cloudflare, Inc.*,
    2021 WL 8532943 (C.D. Cal. Sept. 29, 2021) ..........................................................5

*Wingle v. United States*,
    2005 WL 2604184 (E.D. Cal. Oct. 13, 2005) ...........................................................5

### Rules/Statutes

Fed. R. Civ. P. 11.................................................................................................................5

### Other Authorities

Adrian Găitan, *WhatsApp's 'End-to-End Encryption' Is the Biggest Lie in Tech
    History – And I Can Prove It Mathematically* (Apr. 15, 2026).................................7

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs complied with Rule 11 by bringing and maintaining a lawsuit based on whistleblower testimony, public research, expert input, and a close review of materials provided to them by Defendants that did not directly refute the core allegations of the case.

**PRELIMINARY STATEMENT**

Defendants' Rule 11 motion should be denied and the fees of defending it awarded to Plaintiffs for two reasons:

First, there is no question Plaintiffs had (and have) a Rule 11 basis for their claims. Plaintiffs' allegations are supported by carefully vetted, firsthand whistleblower accounts of Meta workers' ability to access WhatsApp messages far beyond the limited amount of messages Defendants say they can see. These layperson accounts are supported by the testimony of a leading cybersecurity and encryption expert who explains why, "from a cryptographer's perspective, there is no obvious technical reason to disbelieve Plaintiffs' claims" and that "there are numerous technical ways Meta and WhatsApp could obtain access to WhatsApp users' private messages." Decl. of Seth James Nielson, filed concurrently herewith ("Nielson Decl.") ¶ 3. And they are further supported by Bloomberg reports regarding a 10-month federal investigation that reached identical preliminary conclusions about Defendants' access to WhatsApp messages before being abruptly shut down by political appointees after the investigation was made known to Defendants. Decl. of Adam B. Wolfson, filed concurrently herewith ("Wolfson Decl.") Exs. A & B. At this pre-discovery stage of the case, Plaintiffs have met Rule 11's requirements several times over. Indeed, Defendants tacitly concede as much by devoting the bulk of their motion to arguing that Plaintiffs (and the Court) should ignore that good faith basis based on essentially nothing more than the vehemence of Defendants' denials.

But Defendants' "trust us, we did not do it" argument for sanctions finds no support in the law. Plaintiffs are not simply required to accept Defendants' denials (whether in Meta's colorfully worded press releases or letters and calls from Defendants' counsel) or forego discovery rights in favor of an improperly curated and unacceptable evidentiary "proffer," consisting of untested, self-serving employee declarations and offers of restricted peeks at source code that would not begin to

address the full merits of Plaintiffs' allegations. Defendants even go so far as to suggest that Plaintiffs (and the Court) should credit cherry-picked reactions from the Internet at large (regardless of competency, access to relevant information, or bias) that speculate Plaintiffs' claims are off base. Rule 11 does not require a plaintiff to blindly trust their opponent's say-so, especially when the defendants in question have a history of "gaslight[ing] their opponents, not to mention the Court" on discovery issues, *see In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 904 (N.D. Cal. 2023), as well as a decades-long history of rampant privacy violations.

Accordingly, Defendants' motion fails on fundamental procedural grounds: It improperly urges the Court to skip discovery; proceed straight to a bench trial based on Defendants' self-serving, untested, and limited record; make every credibility decision in Defendants' favor; and—on that one-sided and incomplete basis—conclude that Plaintiffs are maintaining claims that do not comply with Rule 11. Prejudging facts that should be developed and tested in litigation in the context of a Rule 11 motion would turn civil litigation on its head, and rewarding Defendants' strategy would incentivize Rule 11 motions any time a defendant denies liability. Every day, across the country, defendants deny complaint allegations in and out of court, their employees swear to facts in declarations and depositions, and their attorneys try to convince plaintiffs of the errors in their claims—only for plaintiffs to survive pleading challenges, defeat motions for summary judgment, and win trials. Expanding Rule 11 sanctions to every denial of liability would have precisely the chilling effect on meritorious claims that Defendants hope to impose here.

But procedure is not the only reason Defendants' motion fails; it is also substantively baseless. Even if Plaintiffs or the Court were required to accept Defendants' denials at face value (and they are not), Defendants do not say "we did not do it"; they say "we are not currently doing it in one particular way." Specifically, both in their motion and pre-motion correspondence, Defendants' protestations of innocence focus myopically on the security of "end-to-end encryption" without addressing the multiple other ways Defendants could access WhatsApp communications, even without breaking encryption. WhatsApp's claims of "end-to-end encryption"—along with other messaging—convey to users that WhatsApp is an absolutely private messaging platform. But what most people (other than Defendants) often do not appreciate is that end-to-end encryption

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 11 MOTION

means only that messages are encrypted *while in transit*. On either "end," when messages reside on the sender's and/or receiver's WhatsApp instances, for example, the messages are not encrypted. Thus, even if one were to accept Defendants' claim that they have never breached WhatsApp's end-to-end encryption to access users' private messages (and Plaintiffs do not until they are able to test that assertion in discovery), it would merely rule out one of several ways Defendants could have engaged in the alleged misconduct. *See generally* Nielson Decl. Attacking just one of multiple theories of liability does not render a complaint meritless.

Equally problematic is that Defendants consistently frame their denials in the present tense and have refused to provide access to source code pre-dating December 31, 2025 (*e.g.*, during the period the whistleblowers were working for Meta). Because Defendants have never provided evidence showing they could not have (and never) accessed private messages in the timeframe covered by the complaint, Plaintiffs' claims remain unrefuted in all material aspects.

For these reasons, the Court should deny Defendants' motion and award Plaintiffs their fees for defending it. To be sure, Plaintiffs and their counsel have no interest in expending their time and resources on meritless claims, but Defendants have offered Plaintiffs (and this Court) nothing that would convincingly, much less definitively, refute the core allegations of the complaint. And the harassing invocation of Rule 11 itself is an abuse of process that should be discouraged.

## LEGAL STANDARD

Awarding sanctions under Rule 11 "raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy." *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159-60 (9th Cir. 1987). An award of sanctions is "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). The moving party bears the burden to demonstrate why sanctions are justified. *See Tom Growney Equip., Inc. v. Shelly Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).

Where a complaint is the "primary focus" of a Rule 11 motion, a court must determine that 1) "the complaint is legally or factually baseless from an objective perspective" and 2) the attorney has not "conducted a reasonable and competent inquiry before signing and filing it." *Holgate v.*

*Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). The standard is objective, examined at the time of signing. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990).

A claim is well grounded in fact if an "independent examination reveals some credible evidence in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995) (internal citation and quotation omitted). A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11. *See United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117-18 (9th Cir. 2001). "The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677.

## ARGUMENT

There are two core reasons the Court should deny Defendants' Motion. The first is that it is really a pre-discovery summary judgment motion in disguise. Even if such a motion did not squarely violate Rule 56, it is improper under Rule 11 both as a matter of process and timing. If Defendants believe they can seek Rule 11 sanctions due to a baseless complaint, case law holds that the time to do so is after the case concludes on the merits.

The second reason to deny the Motion is that it proceeds from a false premise. Defendants argue that no reasonable plaintiff would or could believe Defendants can access users' WhatsApp messages, relying entirely on the concept of "end-to-end encryption." But this is, quite simply, wrong. From a technical standpoint, and regardless of end-to-end encryption, there are many reasons to believe that the parties who control the WhatsApp application can access unencrypted messages residing on users' phones and/or in transit. Thus, even ignoring the Motion's procedural problems, the motion also fails on the substance.

## I.    DEFENDANTS' MOTION IS AN IMPROPER PRE-DISCOVERY SUMMARY JUDGMENT MOTION

"The time when sanctions are to be imposed rests in the discretion of the trial judge.

4                                                                   Case No. 3:26-cv-0751-RFL

However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation." Fed. R. Civ. P. 11, Advisory Committee Notes (1983). "Such deferral is especially appropriate where the Rule 11 motion is targeting factual disputes regarding allegations in a pleading that go to the core of the case because 'a Rule 11 motion is not a proper substitute for a motion for summary judgment.'" *MI-94, LLC v. Chemetall US, Inc.*, 2023 WL 8186618, at *5 (D. Nev. Nov. 27, 2023) (quoting *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003)). Accordingly, courts within the Ninth Circuit routinely defer Rule 11 motions regarding the pleadings until the case is resolved on its merits. *See, e.g., Waidhofer v. Cloudflare, Inc.*, 2021 WL 8532943, at *8 (C.D. Cal. Sept. 29, 2021); *United Specialty Ins. Co. v. Dorn Homes Inc.*, 2020 WL 8416010, at *3 (D. Ariz. Jan. 9, 2020); *Remington v. Mathson*, 2017 WL 3421966, at *5-6 (N.D. Cal. Aug. 9, 2017); *Belda v. Bank of Am.*, 2016 WL 7444913, at *10 (C.D. Cal. June 20, 2016); *Bighorn Cap., Inc. v. Security Nat'l Guar., Inc.*, 2015 WL 9489897, at *4-5 (N.D. Cal. Dec. 30, 2015); *GN Resound A/S v. Callpod, Inc.*, 2013 WL 5443046, at *4 (N.D. Cal. Sept. 30, 2013); *Golden Gate Way, LLC v. Stewart*, 2011 WL 3667496, at *5 (N.D. Cal. Aug. 22, 2011); *Rodriguez v. Serv. Emps. Int'l*, 2010 WL 3464365, at *2 (N.D. Cal. Sept. 1, 2010); *Mitchel v. City of Santa Rosa*, 695 F. Supp. 2d 1001, 1013 (N.D. Cal. 2010); *Wingle v. United States*, 2005 WL 2604184, at *5 (E.D. Cal. Oct. 13, 2005).

"Disagreement, even vehement, heartfelt, intense disagreement with the other side's presentation of facts is not a basis for Rule 11 sanctions… ultimately, it is either the judge or the jury who decides whose set of facts are right." *Humphries v. Button*, 2024 WL 5361408, at *3 (D. Nev. Mar. 25, 2024), *objections overruled*, 2025 WL 588025 (D. Nev. Feb. 21, 2025) (denying Rule 11 motion on this basis); *see also Bell v. Nat'l Credit Servs. Inc.*, 2020 WL 8832899, at *5 (W.D. Wash. Oct. 14, 2020), *report and recommendation adopted*, 2021 WL 928161 (W.D. Wash. Mar. 11, 2021) (similar). This is because Rule 11 motions should not be used "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11, Advisory Committee Notes (1993).

Despite this law, Defendants essentially ask the Court to: dispense with its decision on the pending motion to dismiss; dispense with discovery; draw every factual inference in Defendants'

favor based on an incomplete presentation of the facts stemming from self-serving declarations from Meta employees, a limited white paper on end-to-end encryption, and some commentary from people who have no access to Defendants' source code or internal materials; ignore Plaintiffs' whistleblower evidence; ignore expert evidence demonstrating there is every reason to believe the whistleblower evidence, Nielson Decl.; ignore public commentary making the same observations, Wolfson Decl., Ex. C; and ignore public reporting on a government investigation where the investigator concluded after 10 months that Defendants have access to private WhatsApp messages. *Id.*, Exs. A, B. This not only violates Rule 11 by acting as a summary judgment request in disguise, *see supra*, but also violates the Rule 56 summary judgment standard in general. *See Bates v. Rezentes*, 731 F. Supp. 3d 1119, 1128 (N.D. Cal. 2024) (Lin, J.) ("Courts must 'view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.'") (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

On this basis alone, the Court should deny Defendants' Motion. If discovery supports their defenses, Defendants can either discuss that directly with Plaintiffs or move for summary judgment at the appropriate time. But, with the current record and in the current procedural posture, now is not that time.

## II.     DEFENDANTS' FOCUS ON END-TO-END ENCRYPTION DOES NOT SUPPORT SANCTIONS—IT RAISES INFERENCES SUPPORTING PLAINTIFFS' CLAIMS

Throughout Defendants' motion, they attack the idea that they have access to "end-to-end *encrypted* messages" or "users' *encrypted* messages." *See*, *e.g.*, Mot. at 4 (heading A), 5 (heading B). Their employees' declarations focus studiously on "encrypted" messages and widgets for accessing "encrypted" messages. Allen Decl., Exs. 15, 16. Their white paper also focuses on a "WhatsApp *Encryption* Overview." *Id.*, Ex. 17. And the public commentary they cite also talks almost exclusively about *encrypted* messages. *See id.*, Exs. 19, 20, 21, 22, 23. In short, Defendants claim they could not possibly access *encrypted* messages.

If true, that is all well and good (and as it should be). But, even if proven, Defendants' supposed inability to access "encrypted" messages in transit says nothing about the viability or reasonableness of Plaintiffs' claims. This lawsuit alleges that Defendants can access users'

WhatsApp messages despite their contractual promise that those messages are "private," "meaning not even WhatsApp can see them." Dkt. 1 ¶ 1-2. The only type of encryption Defendants claim they apply is end-to-end encryption. The limitations on that type of encryption are literally in the name: encryption only applies while the message is sent from one end (*i.e.*, one user's device) to the other end (*i.e.*, the other user's device). Thus, a message that is "end-to-end encrypted" is only encrypted while **in transit** or while **stored in encrypted form** on a server. On either side of the transmission, the message is **un**encrypted so that users can read them. This means that the purveyor of, say, a messaging app that uses end-to-end encryption could surreptitiously collect and store messages in their **un**encrypted state either before they are sent, after, or both. To cryptographers, this point is obvious; but it is not as obvious to the average layperson. Plaintiffs' cryptography and cybersecurity expert explains this in detail in his attached Declaration. *See generally* Nielson Decl. Others have explained the same concept in public articles. *See*, *e.g.*, Adrian Găitan, *WhatsApp's 'End-to-End Encryption' Is the Biggest Lie in Tech History – And I Can Prove It Mathematically*, MEDIUM.COM (Apr. 15, 2026), https://medium.com/@0xaxgb/whatsapps-e2e-encryption-is-the-biggest-lie-in-tech-history-and-i-can-prove-it-mathematically-46ebdffeb319 (also included as Wolfson Decl., Ex. C). And Defendants themselves admit they can obtain such messages in certain, disclosed circumstances. *See* Dkt. 1 ¶ 28; Allen Decl., Ex. 6 at 2.

Plaintiffs' claims turn on **whether** Defendants accessed WhatsApp messages, not **how**. Yet, Defendants' entire Motion hangs on the how. Their (still unproven) assertion is that they never broke WhatsApp's end-to-end encryption protocol to access WhatsApp messages while they were in transit. But that singular focus ignores all the other ways they could have accessed users' supposedly private messages and therefore would not be a basis to even obtain summary judgment, let alone sanctions due to a supposed lack of good faith basis to bring this lawsuit. *See Humphries*, 2024 WL 5361408 at *3 ("Disagreement, even vehement, heartfelt, intense disagreement with the other side's presentation of facts is not a basis for Rule 11 sanctions… ultimately, it is either the judge or the jury who decides whose set of facts are right.").

As Plaintiffs explained repeatedly in the parties' correspondence, *see* Allen Decl., Exs. 2, 4, 6, 27, Defendants' hyper-focus on end-to-end encryption raised many questions in Plaintiffs' minds

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 11 MOTION

about the seriousness with which Defendants approached their supposed proffer. Plaintiffs therefore proposed targeted discovery that would encompass encryption, but *also* the other ways Defendants might access WhatsApp messages; most notably, when they are in their unencrypted state. *Id.* Plaintiffs also proposed targeted discovery into their whistleblower evidence, including widgets that collected or displayed WhatsApp messages and certain other key information. *Id.*, Exs. 4, 6. Defendants refused and stated they would only allow Plaintiffs to review their "encryption architecture." *Id.*, Exs. 11, 13. Shortly before serving this motion, Defendants finally stated they would allow Plaintiffs to review the full WhatsApp application source code, but then only the version existing as of December 31, 2025, not any earlier versions (*e.g.*, the versions in place during the whistleblowers' work for Meta). *Id.*, Exs. 13, 14, 28. Thus, even Defendants' efforts to disclaim any ability to access end-to-end encrypted data leave open the likelihood that WhatsApp's end-to-end encryption was not properly implemented and Defendants have—or, just as importantly, had—unfettered access to encrypted messages in transit. *See, e.g.*, Nielson Decl. ¶ 14.

Put simply, Defendants' carefully worded denials and carefully circumscribed offers of "proof" are suspicious and raise more questions than they answer. It should thus come as no surprise that Plaintiffs were not agreeable to simply dropping their claims based on the exceedingly limited and self-servingly curated set of evidence that Defendants offered to provide. Ironically, Defendants' Rule 11 motion has only reinforced Plaintiffs' belief that Defendants do, in fact, have something to hide. After months of correspondence pointing out that focusing solely on end-to-end encryption does not adequately address Plaintiffs' claims, Defendants try the same trick with their filing. That is a bright red flag worthy of deeper inquiry.

### CONCLUSION

Plaintiffs come to this Court in good faith, with serious allegations. They do not make them lightly and have complied with all pre-suit and ongoing obligations. As the record shows, there is every reason to believe, from a technical perspective, that whistleblowers who have stood up and said they could access WhatsApp messages from within Defendants' halls are telling the truth. If that is incorrect, then discovery will show it. In the meantime, Defendants' improper and misleading efforts to bully Plaintiffs out of court should be denied.

DATED: May 6, 2026

By: */s/ Adam Wolfson*
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
 Adam Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
 Stephen A. Broome (Bar No. 314605)
 stephenbroome@quinnemanuel.com
 Kevin Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
 Valerie Roddy (Bar No. 235163)
 valerieroddy@quinnemanuel.com
 Lauren B. Lindsay (Bar No. 280516)
 laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
 Warren Postman (Bar No. 330869)
 wdp@kellerpostman.com
 Ashley Keller (pro hac vice forthcoming)
 ack@kellerpostman.com
 J.J. Snidow (pro hac vice forthcoming)
 jj.snidow@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
 Jay W. Barnett (pro hac vice forthcoming)
 jay@barnettlegal.net
3404 NW 135th Street
Oklahoma City, OK 73120
Telephone: (405) 456-9343

*Attorneys for Plaintiffs*