QUINN EMANUEL URQUHART
& SULLIVAN, LLP
 Adam Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
 Stephen A. Broome (Bar No. 314605)
 stephenbroome@quinnemanuel.com
 Kevin Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
 Valerie Roddy (Bar No. 235163)
 valerieroddy@quinnemanuel.com
 Lauren B. Lindsay (Bar No. 280516)
 laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
 Warren Postman (Bar No. 330869)
 wdp@kellerpostman.com
 Ashley Keller (pro hac vice forthcoming)
 ack@kellerpostman.com
 J.J. Snidow (pro hac vice forthcoming)
 jj.snidow@kellerpostman.com
 1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
 Jay W. Barnett (pro hac vice forthcoming)
 jay@barnettlegal.net
3404 NW 135th Street
Oklahoma City, OK 73120
Telephone: (405) 456-9343

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated

　　　　　　Plaintiffs,

v.

META PLATFORMS, INC., and WHATSAPP, LLC,

　　　　　　Defendants.

Case No. 3:26-cv-0751-RFL

**CLASS ACTION**

**DECLARATION OF ADAM WOLFSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

I, Adam Wolfson, declare as follows:

1. I am a Partner at Quinn Emanuel Urquhart & Sullivan, LLP, licensed to practice in the States of California and New York. I represent Plaintiffs Emma Dawson, Michael Dawson, Luiz Filho, Alka Gaur, Damian Reyez Jaquez, Yolisa Mkele, and Fernanda Tatto ("Plaintiffs"). I have personal knowledge of the following facts and, if called to testify, could and would testify completely thereto.

2. I submit this declaration in opposition to Defendants' Rule 11 Motion and in order to provide the Court with additional facts that Mr. Allen elided or omitted in his declaration in support of that motion (*see* Dkt. 38-1) ("Allen Decl.").

**February 2, 2026 Meet and Confer**

3. Although Mr. Allen is correct that he, I, Stephen Broome, and Warren Postman (as well as several others from both sides' teams) met and conferred on February 2, 2026, he misstates or omits several things I and my colleagues said on that call.

4. As an initial matter. Mr. Allen neglects to mention that I suggested the February 2, 2026, call in response to the first letter he sent on behalf of Defendants; specifically, to discuss "a proffer from Meta and WhatsApp about the claims" because "[i]f they are factually incorrect, then we have no interest in wasting your, our, or the Court's time with extended litigation." Allen Decl., Ex. 2. I and my colleagues proposed discussing "actual evidence that Meta has not accessed and cannot access the substance of WhatsApp users' communications outside the narrow exceptions noted in footnote 1 of [his January 28, 2026,] letter [Allen Decl., Ex. 1]." *Id*. When Mr. Allen and his colleagues came to the call, they did not provide any such evidence and instead simply cited a number of quotations from individuals who had commented on the public allegations in this lawsuit.

5. One theme of both those comments and statements from Mr. Allen (both before, during, and since the February 2, 2026, meet and confer) was an exclusive focus on "encrypted" messages and whether WhatsApp's "encryption architecture" could be circumvented. As I explained during the meet and confer, as well as in multiple other letters, focusing solely on *encrypted* messages ignores the allegations in this case and the various vectors by which a party such as Meta or WhatsApp could obtain copies of the messages users send or receive through the WhatsApp

application. I noted several times (*see*, *e.g.*, Allen Decl., Exs. 2, 6) that messages on either side of a WhatsApp conversation are *un*encrypted and therefore potentially subject to surveillance and/or collection by the purveyor of the WhatsApp application. My lay understanding—supported by expert input and public literature—is that end-to-end encryption refers to encryption while a message is in transit. I and my colleagues pointed out that the continuing focus on "encrypted" messages therefore said little about Plaintiffs' allegations because, in addition to while they are in transit, there are ways to obtain messages before or after they are sent; *i.e.*, before they are encrypted or after they are decrypted.

6. I also noted during our call that we had spoken with experts about these issues and been informed that, given the limitations on end-to-end encryption, there absolutely are technical ways for Defendants to collect WhatsApp users' messages. I therefore explained that Mr. Allen simply saying the equivalent of "trust us" was not particularly useful because it is not the same as actual discovery. I reiterated that we were happy to review evidence Defendants supplied regarding the core allegations in the case, but that we would also need adequate discovery to fully explore the technical aspects of our allegations. During the February 2, 2026, meet and confer, Mr. Allen expressed a willingness to provide such information as part of a full proffer—a representation witnessed and heard by my colleagues.

7. During our call, it is true I mentioned how a Bloomberg article regarding the same claims Plaintiffs make came out after they filed their complaint. We cited that article in our very first response to Mr. Allen. *See* Allen Decl., Ex. 2 at 1-2. I explained it was hard to credit Mr. Allen's "trust us" statements given the article further supported the whistleblower testimony we had received. Mr. Allen tried to explain away that article by noting a representative from the Bureau of Industry and Security ("BIS") said the claims were "unsubstantiated." However, I noted in response that a political appointee saying an investigation was not complete is very different than saying the facts are wrong—and that an article corroborating testimony we had independently obtained from a whistleblower demonstrated why we believed we had a good faith basis to bring and maintain the lawsuit. It was also why we believed it would help for Defendants to provide straightforward discovery into the claims. I said very plainly that, if Plaintiffs are wrong, then we want to know that

sooner than later.

8.     In his declaration, Mr. Allen then mentions a discussion about what he calls "outside experts" expressing skepticism about Plaintiffs' complaint. Allen Decl. ¶ 6. He suggests I flippantly responded with the statement, "prognosticators gonna prognosticate." *Id.* This not only incorrectly paraphrases what I actually said; it is materially incomplete. In reality, what I said is that prognosticators are going to prognosticate, but that does not inform our specific dispute because the public commenters he cited did not (and do not) have access to WhatsApp's internal code. Because of that, I explained, they literally cannot know how WhatsApp's code operates in practice and that citing them was therefore of little use to resolving this dispute. Because we had (and have, *see* Declaration of Seth Nielson, filed herewith) expert input explaining the technical feasibility of Plaintiffs' allegation, I reiterated it would be productive for us to work together to conduct focused discovery on the technical aspects of this case because, if Defendants are correct, the code and certain other targeted discovery will largely tell that tale.

**Subsequent Calls With Mr. Allen**

9.     Following the February 2, 2026, meet and confer, the parties exchanged multiple other letters, but I spoke with Mr. Allen on a one-on-one basis approximately two to three more times. I do not recall the exact dates of these calls but, in each, I reiterated that Plaintiffs were willing to conduct focused discovery, but I and my colleagues were concerned about undue restrictions Defendants were trying to place on that discovery. I reiterated several points we made in our letters, which is that Defendants continued to focus almost exclusively on "encrypted messages" or WhatsApp's "encryption architecture" while ignoring Plaintiffs' repeated points that there are well-accepted ways to obtain *un*encrypted messages through means other than breaking WhatsApp's encryption protocol—for example, obtaining messages on either side of a WhatsApp conversation at moments before or after they were encrypted and were sitting on a phone or in a backup as *un*encrypted messages. Mr. Allen stated he was not the "technical guy" on his team and would convey these statements internally for next steps. Nevertheless, after each time we spoke, Plaintiffs then received discovery offers from Defendants that focused on the "encryption architecture" or code bearing on that architecture and tried to foreclose all other targeted discovery.

DECLARATION OF ADAM WOLFSON – Case No. 3:26-cv-0751-RFL

**Exhibits**

10.    Attached as **Exhibit A** is a true and correct copy of a January 29, 2026, Bloomberg article, entitled "US Has Investigated Claims That WhatsApp Chats Aren't Private," which both Mr. Allen and I mention in our respective declarations and which we discussed during the parties' February 2, 2026, meet and confer.

11.    Attached as **Exhibit B** is a true and correct copy of an April 28, 2026, Bloomberg article, entitled "US Ends Investigation Into Claims WhatsApp Chats Aren't Private." This article goes into further detail regarding the facts unearthed by the BIS investigation, including that it was based on 10 months' worth of interviews and documents. It also details how, after the BIS investigatory circulated their conclusion that Meta was engaged in surreptitious collection of WhatsApp messages to other federal agencies, the investigation was suddenly shut down for unexplained reasons.

12.    Attached as **Exhibit C** is a true and correct copy of an April 15, 2026, article posted on Medium.com, entitled "WhatsApp's 'End-to-End Encryption' Is The Biggest Lie in Tech History — And I Can Prove It Mathematically." The article explains how and why WhatsApp's claims about end-to-end encryption—*i.e.*, what Mr. Allen and Defendants have focused on near exclusively since Plaintiffs filed this lawsuit—does not address whether WhatsApp messages are actually secure because it only refers to a technology that encrypts messages while "in transit." As the article explains, before or after they are in transit, they are unencrypted and subject to all manner of potential security problems, including access by WhatsApp itself.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on May 6, 2026.


By: */s/ Adam Wolfson*_____
Adam Wolfson