K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
bethany.lobo@kirkland.com
laura.vartain@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.,
and WhatsApp, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., AND WHATSAPP, LLC,<br><br>Defendants. | CASE NO. 26-CV-0751<br><br>**META PLATFORMS, INC., AND WHATSAPP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Complaint Filed Date:  January 23, 2026<br><br>Judge:        Honorable Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

I.      PLAINTIFFS' CLAIMS ARE GOVERNED BY—AND FLUNK—
        FED. R. CIV. P. 9(b)........................................................................................................1

        A.      Rule 9(b) Governs The Complaint Because It Is Grounded In
                Allegations Of Fraud...........................................................................................1

        B.      The Complaint Does Not Satisfy Rule 9(b)'s Particularity Requirement. ........4

II.     PLAINTIFFS' CLAIMS FAIL UNDER RULE 8(a)(2). ...............................................7

III.    PLAINTIFFS' CLAIMS SUFFER FROM ADDITIONAL, INDEPENDENT
        DEFECTS ........................................................................................................................8

        A.      Many Counts Seek Extraterritorial Application Of U.S. And California Law. ..8

        B.      Counts 9 & 10 And Counts 2 & 8 Fail For Lack Of A Cognizable Harm. ........9

IV.     THE COMPLAINT IS A SHOTGUN PLEADING....................................................10

CONCLUSION.............................................................................................................................10

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arkansas Pub. Emp. Ret. Sys. v. GT Solar Int'l, Inc.*,
    2009 WL 3255225 (D.N.H. Oct. 7, 2009) ................................................................6

*In re Arris Cable Modem Consumer Litig.*,
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...............................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................7

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................7

*Briskin v. Shopify Inc.*,
    2026 WL 161441 (N.D. Cal. Jan. 21, 2026)............................................................4

*Brown v. Google LLC*,
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)..........................................................9

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .................................................................................7

*Cnty. of Santa Clara v. Astra U.S., Inc.*,
    428 F. Supp. 2d 1029 (N.D. Cal. 2006) ..................................................................5

*de Ayora v. Inspire Brands, Inc.*,
    2025 WL 3707561 (N.D. Cal. Dec. 22, 2025).........................................................3

*Dellasala v. Samba TV, Inc.*,
    2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......................................................10

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................................8

*Doe v. Vaidyaji Priyanka*,
    814 F. Supp. 3d 1073 (N.D. Cal. 2026) ..................................................................3

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) ...................................................................................9

*Gibson v. City of Portland*,
    165 F.4th 1265 (9th Cir. 2026) ..............................................................................10

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ....................................................................................... 1, 2

*Lynch v. Express Scripts Holding Co.*,
  2025 WL 2224419 (N.D. Cal. Aug. 5, 2025) ......................................................................... 4

*McIntyre v. Am. Honda Motor Co.*,
  739 F. Supp. 3d 776 (C.D. Cal. 2024) ................................................................................. 6

*Moates v. Facebook, Inc.*,
  2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) ....................................................................... 2, 3

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ............................................................................................... 7

*Pemberton v. Rest. Brands Int'l, Inc.*,
  2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ..................................................................... 5

*Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................................................ 6

*Rieckborn v. Jefferies LLC*,
  81 F. Supp. 3d 902 (N.D. Cal. 2015) .................................................................................. 6

*Robichaud v. Speedy PC Software*,
  2013 WL 818503 (N.D. Cal. Mar. 5, 2013) ........................................................................ 3

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) .............................................................. 2, 3, 4, 5

*In re Royal Dutch/Shell Transp.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ......................................................................... 6

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................................................. 6

*Ryan v. Starco Brands, Inc.*,
  2024 WL 5102651 (N.D. Cal. Apr. 19, 2024) ..................................................................... 5

*Santiago v. Tesla, Inc.*,
  757 F. Supp. 3d 831 (N.D. Ill. 2024) .................................................................................. 6

*Shah v. MyFitness Pal, Inc.*,
  2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................................................................... 4

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) .............................................................................. 4

*Smith v. Rack Room Shoes*,
  2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ...................................................................... 10

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Vess v. Ciba-Geigy Corp., USA,*
  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 1, 2

*Williams v. Facebook, Inc.,*
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................................. 3

**Rules**

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 7, 9

Fed. R. Civ. P. 9(b) ............................................................................ 1, 2, 4, 5, 6, 8, 9

**Other Authorities**

35A C.J.S. Fed. Civ. Proc. § 310 ................................................................................. 10

**INTRODUCTION**

After asserting, on threadbare allegations, that WhatsApp's entire business is a fraud, Plaintiffs now attempt to portray this as a routine lawsuit about "data collection itself." Opp. at 4. But Plaintiffs cannot run away from their own complaint, which is clear that "[t]his lawsuit seeks to expose" the alleged "fraud Meta is perpetrating against the billions of people worldwide who have used WhatsApp believing their communications would be private." Compl. ¶ 2. Because Plaintiffs allege a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim," their entire complaint is subject to Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Unfortunately for Plaintiffs, their complaint does not even survive *Twombly*'s plausibility standard, let alone the rigors of Rule 9(b). The complaint rests on internally inconsistent allegations, buttressed only by so-called whistleblowers who make no representation of personal knowledge. In any event, nearly every claim suffers from at least one additional defect. Most notably, neither California's civil-theft statute nor the California UCL recognizes a cause of action for data misappropriation alone, and Plaintiffs fail to allege any other injury. Other claims fail because Plaintiffs do not allege how WhatsApp has been unjustly enriched, or because they seek extraterritorial application of California and U.S. law. For these reasons and those below, the Court should dismiss the complaint.

**ARGUMENT**

**I.      PLAINTIFFS' CLAIMS ARE GOVERNED BY—AND FLUNK—FED. R. CIV. P. 9(b).**

**A.      Rule 9(b) Governs The Complaint Because It Is Grounded In Allegations Of Fraud.**

Rule 9(b) applies to the complaint because each claim turns on the core allegation that WhatsApp has "unlimited access to WhatsApp encrypted communications" despite promising users that WhatsApp messages are private. *See* Compl. ¶ 36. When a plaintiff's complaint alleges a "unified fraudulent course of conduct," the claims "sound in fraud," requiring that the "***entire complaint*** must ... be pleaded with particularity." *Kearns*, 567 F.3d at 1125, 1127 (emphasis added). Contrary to Plaintiffs' suggestion, even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct" and "rely entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In such cases, "the pleading of that claim as a whole must satisfy the

particularity requirement of Rule 9(b)." *Id.* at 1103-04. It therefore is the conduct underlying a claim, rather than how the claims are labeled or whether fraud is a required element, that determines whether a claim is subject to Rule 9(b), as precedent from the Ninth Circuit and this Court make clear. *See, e.g.*, *id.* at 1103-04; *Kearns*, 567 F.3d at 1126-27; *Moates v. Facebook, Inc.*, 2024 WL 2853976, at *2 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (applying Rule 9(b) to UCL and other claims because the "claims stem from the same factual allegation that an advertisement for Oculus devices was false or misleading").

To sidestep this precedent, Plaintiffs "carefully walk[] back the [complaint's] most sensational accusation[s]," *see Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021), recasting their suit as "primarily" challenging WhatsApp's "data collection itself; not their representations about that collection," Opp. at 4. No credible reading of the complaint supports that gloss. The complaint's opening paragraphs make clear: WhatsApp's representations about the privacy of encrypted messages "***are false***," and "***[t]his lawsuit seeks to expose the*** fundamental privacy violations and ***fraud Meta is perpetrating*** against the billions of people worldwide who have used WhatsApp believing their communications would be private from everyone." *See* Compl. ¶¶ 1-2 (emphasis added). Other allegations likewise leave no doubt that Plaintiffs are challenging a unified scheme of purportedly fraudulent conduct. *See, e.g.*, *id.* ¶ 5 (requesting "relief for the harm WhatsApp and Meta have caused … ***by willfully misrepresenting*** to them that their private communications were just that") (emphasis added); *id.* ¶ 36 ("Meta's and WhatsApp's claim that they do not have access to the substance of WhatsApp users' communications is false."); *id.* ¶ 39 ("Although Meta has kept the circle on ***its fraud*** small, it has not kept it small enough.") (emphasis added); *id.* ¶ 70 (referring to WhatsApp's "brazen ***willingness to mislead*** WhatsApp users regarding … users' encrypted communications") (emphasis added); *id.* ¶ 76 (identifying as a common question of law and fact "[w]hether Defendants' interception and storage of users' WhatsApp communications was contrary to its privacy promises"). Judged against these allegations, it is difficult to understand how Plaintiffs can represent that "none" of their claims "turn on 'averments of fraud'" or "[w]here the misrepresentation ***is*** the wrong itself." *See* Opp. at 5.

Even if the law did require a tighter nexus between the elements of Plaintiffs' claims and allegations of fraud, however, that standard is easily satisfied here:

- Count 1 alleges that the "ordinary course" exception to the Wiretap Act does not apply because the alleged "interception was directly contrary to Defendants' representations about their treatment of WhatsApp users' messages." Compl. ¶ 92. *See Rodriguez*, 2021 WL 2026726, at *3-4, *6-7.

- Count 2 alleges that WhatsApp violated the CDAFA by "execut[ing] a scheme to deceive or defraud consumers by claiming that [WhatsApp] cannot read and do[es] not store users' WhatsApp messages." Compl. ¶ 98. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1047, 1052 (N.D. Cal. 2018).

- Count 3 alleges that Plaintiffs' WhatsApp messages were "confidential communications" under CIPA because WhatsApp "promised in its Privacy Policy" and "website" that messages are end-to-end encrypted. Compl. ¶ 119. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3-4 (N.D. Cal. Dec. 22, 2025).

- Count 4 alleges that Plaintiffs had a reasonable expectation of privacy under the California Constitution because "WhatsApp affirmatively promised users … that their messages were end-to-end encrypted." Compl. ¶ 129. *See Williams*, 384 F. Supp. 3d at 1047, 1054-55.

- Count 5 alleges that WhatsApp intentionally intruded on Plaintiffs' "private messages and cellular telephones" while "well aware that billions of users rely on their promises that WhatsApp messages are not stored or accessible to anyone[.]" Compl. ¶ 144. *See Williams*, 384 F. Supp. 3d at 1047, 1054, 1057.

- Count 6 alleges that WhatsApp violated its contract with users by intentionally "breach[ing] [its] promises" in the WhatsApp Privacy Policy regarding end-to-end encryption. Compl. ¶¶ 152, 154. *See Robichaud v. Speedy PC Software*, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013).

- Count 7 alleges that WhatsApp violated an implied covenant of good faith and fair dealing because it "purport[s] to respect and protect WhatsApp users' privacy" and made "contractual privacy promises," but intentionally "took actions outside those contractual promises." Compl. ¶¶ 162-63; *see also id.* ¶ 164 (alleging WhatsApp's conduct was "objectively unreasonable" given its "privacy promises"). *See Robichaud*, 2013 WL 818503, at *10.

- Count 8, a quasi-contract claim made in the alternative, alleges that WhatsApp "intentionally and without consent … violated the privacy, property, and statutory rights of Plaintiffs[.]" Compl. ¶ 168. *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *9, 10 (N.D. Cal. Jan. 4, 2018).

- Count 9 alleges that WhatsApp committed statutory larceny because it "intentionally designed a program that would operate in a manner unbeknownst to WhatsApp users … who were thus deceived." Compl. ¶ 176; *see also id.* ¶ 178 (alleging WhatsApp "stole, took, and/or fraudulently appropriated Plaintiffs'" personal information without consent). *See Doe v. Vaidyaji Priyanka*, 814 F. Supp. 3d 1073, 1086-87 (N.D. Cal. 2026).

- Count 10 alleges that WhatsApp violated the UCL because it "promised that … WhatsApp users' messages would be end-to-end encrypted" when it knew that promise was false. Compl. ¶ 187. *See Moates*, 2024 WL 2853976, at *2.

These allegations distinguish this case from the garden variety data-privacy lawsuits on which Plaintiffs rely.  In those cases, Rule 9(b) did not apply to claims about the lawfulness of the data collection, devoid of or incidental to any allegations of fraud.  *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) (plaintiffs were "directly challenging … [the] alleged data collection rather than challenging any potentially fraudulent or misleading representations about this collection"); *Lynch v. Express Scripts Holding Co.*, 2025 WL 2224419, at *6 (N.D. Cal. Aug. 5, 2025) (similar); *Briskin v. Shopify Inc.*, 2026 WL 161441, at *2-3 (N.D. Cal. Jan. 21, 2026) (Rule 9(b) did not apply to claims that plaintiff's private information was collected without authorization); *Shah v. MyFitness Pal, Inc.*, 2026 WL 216334, at *8 n.3 (N.D. Cal. Jan. 27, 2026) (Rule 9(b) did not apply to "privacy-related harms resulting from the information gathering").  Unlike these data-privacy cases, where the mere collection itself was the alleged wrong and Plaintiffs did not rely on allegations of fraud to make that collection actionable, every claim here turns in some way on the allegation that WhatsApp deceived its users about its encryption practices.  *See* Compl. ¶¶ 92-187.  If Plaintiffs wish to retreat from these allegations, they must withdraw the complaint.  Until then, they cannot avoid the strictures of Rule 9(b).

**B.    The Complaint Does Not Satisfy Rule 9(b)'s Particularity Requirement.**

Plaintiffs fail to "state with particularity the circumstances constituting fraud" underlying the complaint.  *See* Fed. R. Civ. P. 9(b).  Nothing in Plaintiffs' opposition shows otherwise, and their plea for "a more lenient application of Rule 9(b)" confirms their allegations are deficient.  Opp. at 6.

***First***, the complaint contains no concrete detail about the "who," "what," "where," "when," and "how" of WhatsApp's supposed interception of users' end-to-end encrypted messages.  As to the "who," Plaintiffs weakly identify "Meta and WhatsApp," *see* Opp. at 5, but Rule 9(b) requires more than simply alleging that a fraud was committed by the corporate entities named as defendants.  In *Rodriguez*, for instance, the complaint failed Rule 9(b) because it did not identify "which Google departments (let alone employees) were involved" in collecting user data with "secret scripts."  *Rodriguez*, 2021 WL 2026726, at *6.  Plaintiffs similarly never say "when" WhatsApp allegedly began intercepting encrypted messages.  Plaintiffs' opposition points to April 5, 2016, *see* Opp. at 5-6, but that is merely a reference to when WhatsApp integrated the Signal Protocol, *see* Compl. ¶ 33 n.30—not when WhatsApp's scheme purportedly started.  *Compare Rodriguez*, 2021 WL 2026726, at *6 ("Canvassing the FAC, one

searches in vain for when the 'secret scripts' plot was hatched") *with Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *7 (N.D. Cal. Nov. 24, 2025) (finding sufficient "when" based on allegation that "in March 2023" the "Cookie Window" included a toggle opt-out switch).  Nor do Plaintiffs say "how" encrypted messages were allegedly accessed by WhatsApp's employees, let alone why WhatsApp employees would seek access to these "messages for their job[s]," which Plaintiffs do not specify.  Compl. ¶ 36; *see Rodriguez*, 2021 WL 2026726, at *3, 6 (finding plaintiffs' allegations regarding "secret lines of code" that purportedly allowed the collection of user data were "woefully underdeveloped").  Although Plaintiffs' ***actual*** allegations suggest that WhatsApp used a "widget" to "br[eak] [] end-to-end encryption while messages were en route," *see* Opp. at 1, 2; Compl. ¶¶ 36-37, 118, they now suggest that WhatsApp may have "obtained access to the unencrypted messages on either side of a conversation" ***after*** decryption occurred, *see* Opp. at 1.

These omissions are hardly accidental.  If Plaintiffs' so-called whistleblowers actually know about a process by which "workers" could ask "engineer[s]" for a "widget" that offers unrestricted access to user messages, Compl. ¶ 36, then they should be able to say who the workers are (even in general terms), who the engineers are, and for what purpose those workers reviewed user messages.  Plaintiffs have not done so and thus have not met their "burden to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Ryan v. Starco Brands, Inc.*, 2024 WL 5102651, at *5 (N.D. Cal. Apr. 19, 2024) (internal quotation marks and emphasis omitted).  Indeed, Plaintiffs' request for "a more lenient application of Rule 9(b)" confirms that the complaint cannot satisfy the rule's particularity requirement.  Opp. at 6.  Although Rule 9(b)'s standard "may be relaxed … in a ***limited*** class of corporate fraud cases where the evidence of fraud is within a defendant's ***exclusive*** possession," *see Cnty. of Santa Clara v. Astra U.S., Inc.*, 428 F. Supp. 2d 1029, 1037 (N.D. Cal. 2006) (emphasis added), that line of cases has no force here, where Plaintiffs claim "through the assistance of courageous whistleblowers" the purported "truth" and details about WhatsApp's conduct has been brought "to light."  *See* Compl. ¶ 2.  That Plaintiffs now say they cannot describe WhatsApp's actions with the specificity ordinarily required by Rule 9(b) is a clear basis for dismissal.

*Second*, Rule 9(b) does not allow Plaintiffs to rely solely on anonymous whistleblowers as the basis for the complaint without providing at least some information about their position, access, and knowledge.  Contrary to Plaintiffs' suggestion, "[w]hatever differences exist between pleading falsity under Rule 9(b) and doing so under the PSLRA, plaintiffs offer no explanation as to why such differences are material here."  *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 922 n.6 (N.D. Cal. 2015).  In fact, the Ninth Circuit has been clear that "the inquiry into whether plaintiffs have pled falsity with the requisite particularity under the PSLRA *is nearly identical to that under Federal Rule of Civil Procedure 9(b)*."  *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1165 (9th Cir. 2009) (emphasis added); *see also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163 (3d Cir. 2004); *In re Royal Dutch/Shell Transp.*, 2006 WL 2355402, at *4 n.5 (D.N.J. Aug. 14, 2006).  *Rubke* further confirmed that the two standards are "nearly identical" by applying the court's Rule 9(b) analysis of the section 11 claims to the falsity analysis of the PSLRA claims, finding them likewise deficient.  551 F.3d at 1165 ("Because the inquiry into whether plaintiffs have pled falsity … under the PSLRA is nearly identical to … [Rule] 9(b), the foregoing analysis of Rubke's section 11 claims also demonstrates … that Rubke's First Amended Complaint fails to allege a material misrepresentation or omission[.]").  Plaintiffs do not meaningfully engage with this binding precedent, instead dismissing it as inapplicable to "non-securities claims."  Opp. at 7.  But Plaintiffs offer no reason why this distinction makes any legal difference, and even their articulation of the standard would require Plaintiffs' whistleblowers to have "personal knowledge of the events at issue."  *Id.*  Plaintiffs' cited authorities therefore underscore just how deficient their own complaint is by comparison.  *See McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 800 (C.D. Cal. 2024) ("Plaintiffs' claim of pre-sale knowledge" was sufficient for purposes of the motion to dismiss because, "[m]ost importantly," the complaint "contain[ed] allegations" from an anonymous whistleblower that "claim[ed] to have *personal knowledge* of events" and provided explicit allegations based on this personal knowledge) (emphasis added); *Arkansas Pub. Emp. Ret. Sys. v. GT Solar Int'l, Inc.*, 2009 WL 3255225, at *7 (D.N.H. Oct. 7, 2009) (confidential sources "*professed personal knowledge of [the] events*") (emphasis added); *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842 (N.D. Ill. 2024) (whistleblower article—which included a leak of *100 gigabytes of Tesla's internal files*—"permit[ted] the reasonable inference that Tesla knew about the alleged [product]

defects"). Plaintiffs offer nothing that is comparable, and the only reasonable inference is that their whistleblowers lack direct knowledge of the facts in the complaint.

## II.    PLAINTIFFS' CLAIMS FAIL UNDER RULE 8(a)(2).

Even if Plaintiffs' claims were governed by Rule 8(a)(2), the complaint must be dismissed under the plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under the plausibility standard, a complaint only survives if the Court, drawing on "its judicial experience and common sense," can "infer more than the mere possibility of misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It is not enough to identify allegations that are "merely consistent with" a viable legal claim. *Twombly*, 550 U.S. at 557.

Nothing in the complaint creates a "reasonable expectation" that Plaintiffs will be able to find evidence of wrongdoing in discovery. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Plaintiffs' new theory that WhatsApp may have obtained users' messages *following* decryption on the users' devices, *compare* Opp. at 1 *with* Compl. ¶ 118 (alleging interception "in transit"), is consistent with lawful conduct that WhatsApp discloses to the world—the collection and review of messages that users themselves report. *See* Compl. ¶ 28. Plaintiffs say nothing about how WhatsApp supposedly captured users' encrypted messages, beyond *ipse dixit* that WhatsApp has a "widget" that allows it to accomplish an impossible task (interception of end-to-end encrypted messages). To the extent Plaintiffs now (baselessly) claim that this "widget" enables WhatsApp to review messages that already have been decrypted, they do not grapple with the fact that such an assertion is consistent with review of user-reported messages, which Plaintiffs do not challenge (and would have no basis for challenging) in this lawsuit.

Nor do Plaintiffs adequately explain basic inconsistencies that show their theory does "not make a whole lot of sense." *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). Despite saying that WhatsApp's "[s]enior leadership" successfully concealed a decade-long fraud "by siloing different teams" and "directing them to 'stay in [their] own lane[s],'" that same leadership purportedly granted rank-and-file workers "real-time" access to users' encrypted messages "***without any scrutiny at all***." *See* Compl. ¶¶ 2, 36-37 (emphasis added). These "allegation[s] do[] not resonate in common experience" because no rational company would act this way, *Endologix*, 962 F.3d at 415, and Plaintiffs

provide no factual enhancement suggesting why WhatsApp would be an exception. Plaintiffs' only substantive response is to point to Meta's general use of non-disclosure agreements ("NDAs"). *See* Opp. at 9. But here too, Plaintiffs do not actually allege any employees, much less identified ones, are subject to such agreements, and more importantly, the existence of hypothetical NDAs cannot reconcile Plaintiffs' allegation of "heavily silo[ed]" teams with unrestricted access. *See* Compl. ¶¶ 36, 39.[1]

## III.    PLAINTIFFS' CLAIMS SUFFER FROM ADDITIONAL, INDEPENDENT DEFECTS.

### A.    Many Counts Seek Extraterritorial Application Of U.S. And California Law.

None of the named Plaintiffs live in the United States, let alone California. Counts 1, 2, 3, 4, 9, and 10 seek extraterritorial application of U.S. and California law to the foreign named Plaintiffs, and nothing in Plaintiffs' opposition—or lone cited case, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079-81 (N.D. Cal. 2023)—shows otherwise. Opp. at 13. There, the court held that non-California residents could assert CIPA and California constitutional privacy claims where "the conduct causing them harm," was "the ***design and marketing*** of the Pixel technology and ***development and implementation*** of its Terms of Service, [which] occurred in California" and "emanated from California." 690 F. Supp. 3d at 1079-81 (emphasis added). Here, Plaintiffs do not allege their purported sources of harm, *i.e.*, the purported storage of, and access to, encrypted messages, occurred in or flowed from California. Nor do they allege how user messages are used by WhatsApp for commercial gain in California. *See* Compl. ¶¶ 93, 105, 179. Instead, Plaintiffs claim that the "interception scheme" was "designed and operated [from] … California" and that WhatsApp "accessed users' messages through California-based servers." Opp. at 13. The first statement is all conclusion, no factual allegations. If Plaintiffs knew that the purported scheme was "designed and operated [from] … California," presumably they could answer the "who" question under Rule 9(b) with more specificity than simply "Meta and WhatsApp." *See supra* p. 4. The second statement is even more conclusory, as Plaintiffs

---

[1] Plaintiffs' reliance on separate, unrelated cases involving the FTC and European regulators, *see* Opp. at 8-9, has nothing to do with WhatsApp or encryption. Plaintiffs cannot support this case with unrelated allegations of past wrongdoing.

provide no reason at all to believe that any specific Meta data center—let alone one in California[2]—would have been used to store Plaintiffs' messages.

**B.    Counts 9 & 10 And Counts 2 & 8 Fail For Lack Of A Cognizable Harm.**

***Counts 9 and 10 (Statutory Larceny and UCL).***    Although "sensitive communications ***may*** constitute property for purposes of a statutory larceny and/or UCL claim," the complaint does not plausibly allege a harm—"that [Plaintiffs] provided such data 'without being paid its fair value in return.'"  Opp. at 11 (citation omitted) (emphasis added).

***First***, Plaintiffs' claim under California's civil-theft statute amounts at most to "mere misappropriation," and Plaintiffs' opposition does not show otherwise.  Plaintiffs rely on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), which held that a claim for statutory larceny presented a cognizable injury (unjust enrichment) "sufficient to confer ***Article III standing***."  *Id.* at 599, 600 (emphasis added).  But that case does not establish that the plaintiffs adequately pleaded actual damages to survive Rule 9(b) or Rule 8(a)(2).  The plaintiffs in that case also alleged specific factual bases for an injury—"their browsing histories carry financial value" and "point[ed] to the existence of a study that values users' browsing histories at $52 per year … [and] research panels that pay participants for access to their browsing histories"—***and*** a specific revenue stream traceable to the wrong:  "Facebook sold user data to advertisers in order to generate revenue … [and] Facebook's ad sales constituted over 90% of the social media platform's revenue during the relevant period[.]"  *Id.* at 600.  Plaintiffs' claim here, by contrast, rests on bare misappropriation, alleging only that WhatsApp "concealed, aided in the concealing, and/or utilized … personal information … for [WhatsApp's] commercial purposes and the financial benefit of Defendants."  Compl. ¶ 179.  Without comparable factual allegations of value, market, or traceable revenue, Plaintiffs' statutory larceny claim falls short.

***Second***, Plaintiffs' UCL claim fails because, unlike in *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021), Plaintiffs have not alleged the value of their data or that a market for that data existed.  *Id.* at *3, 15 (plaintiffs alleged a quantifiable "'cash value'" of the allegedly misappropriated

---

[2] Indeed, Meta's data centers are spread throughout the world.  *See* Meta, *Our Data Center Fleet*, https://datacenters.atmeta.com/all-locations/.

data and "an active market for such data.") (citation omitted); *see also Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) ("Plaintiffs' reliance on *Brown* … is unpersuasive as the plaintiff there alleged a specific cash value was attached to the allegedly misappropriated data and identified a market for the data."). Plaintiffs also conspicuously avoid rebutting *Bass v. Facebook, Inc.*, under which their benefit-of-the-bargain theory fails. *See* 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (rejecting benefit-of-the-bargain theory where plaintiff alleged that his personal information "was not secure and therefore he lost the benefit of the bargain" because it was "***unclear whether or how the data ha[d] been devalued by the breach***.") (emphasis added).

   ***Counts 2 and 8 (CDAFA and Unjust Enrichment).*** Plaintiffs' unjust enrichment theory underlying Counts 2 and 8 fails because the complaint summarily alleges that WhatsApp "caused loss … and ha[s] been unjustly enriched in an amount to be proven at trial" (Count 2) and "unjustly retained a benefit" (Count 8). Compl. ¶¶ 105, 169. These formulaic allegations do not identify what benefit WhatsApp unjustly retained or how that benefit was derived from the alleged misconduct. More than such blanket assertions is required. *See Smith v. Rack Room Shoes*, 2025 WL 2210002, at *2 (N.D. Cal. Aug. 4, 2025) (Lin, J.) (crediting allegations that data had financial value where plaintiffs "cit[ed] various news and academic articles that discuss the valuation of browser history data").

## IV.   THE COMPLAINT IS A SHOTGUN PLEADING.

   Plaintiffs' only defense to the shotgun-pleading charge is to say that WhatsApp's motion demonstrates that it "understand[s] Plaintiffs' claims." Opp. at 15. This is no response at all. Plaintiffs do not address, for instance, the fact that their CIPA claim (Count 3) seeks relief under four different CIPA provisions, or the fact that their CDAFA count (Count 2) alleges violations of at least five distinct provisions—both violations of the principle, recently elaborated by the Ninth Circuit, that a complaint should "separate into a different count each … claim for relief." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (quoting 35A C.J.S. Fed. Civ. Proc. § 310). This defect at the very least requires repleading.

### CONCLUSION

   For the foregoing reasons and those discussed in Meta's Motion to Dismiss (Doc. 29), the Court should dismiss Plaintiffs' complaint with prejudice.

DATED: May 15, 2026

Respectfully submitted,
KIRKLAND & ELLIS LLP

*/s/ K. Winn Allen*

K. Winn Allen, P.C. (*pro hac vice*)
T.J. McCarrick (*pro hac vice*)
Jordan L. Greene (*pro hac vice*)
Saunders McElroy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
tj.mccarrick@kirkland.com
jordan.greene@kirkland.com
saunders.mcelroy@kirkland.com

Laura Vartain Horn (SBN 258485)
Bethany Lobo (SBN 248109)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
laura.vartain@kirkland.com
bethany.lobo@kirkland.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*and WhatsApp, LLC*

**CERTIFICATE OF SERVICE**

On May 15, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ K. Winn Allen*
K. Winn Allen, P.C.