Dane H. Butswinkas (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
David M. Krinsky (*pro hac vice*)
William B. Snyderwine (*pro hac vice*)
dbutswinkas@wc.com
cwilson@wc.com
dkrinsky@wc.com
wsnyderwine@wc.com
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000

Rebecca Furman (SBN 294082)
Marjon Y. Momand (SBN 327877)
rfurman@lewisllewellyn.com
mmomand@lewisllewellyn.com
Lewis & Llewellyn LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 800-0590

*Counsel for Defendants Meta Platforms, Inc. and WhatsApp, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMA DAWSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 3:26-cv-00751-RFL<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: October 20, 2026<br>Time: 10:00 A.M. Pacific Time<br>Room: Courtroom 4 – 17th Floor<br>Judge: Hon. Rita F. Lin |

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... ii

**NOTICE OF MOTION AND MOTION TO DISMISS** .......... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... 2

**STATEMENT OF ISSUES TO BE DECIDED** .......... 2

**INTRODUCTION** .......... 2

**BACKGROUND** .......... 3

**PLEADING STANDARDS** .......... 5

**ARGUMENT** .......... 5

**I. Plaintiffs' Allegations Do Not Plausibly Establish Access or Use.** .......... 6

**II. Plaintiffs Still Do Not Allege That Defendants Accessed WhatsApp Messages for Any Purpose Beyond What Defendants Publicly Disclose.** .......... 9

**III. Plaintiffs' Benefit-and-Loss Allegations Are Inadequate.** .......... 10

**IV. Plaintiffs' Fraud-Based Allegations Fail Under Rule 9(b).** .......... 12

**CONCLUSION** .......... 15

# TABLE OF AUTHORITIES

## CASES

*Arcell v. Google LLC*, 744 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 11
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 10
*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 10, 11
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5
*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ........ 5, 12
*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal 2018) ........ 10
*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 10, 11
*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ........ 8
*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) ........ 6, 7, 8
*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........ 8, 9
*In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ........ 13
*In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........ 14
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........ 5
*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 11
*Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 12
*Ross v. Abbott Vascular Inc.*, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ........ 7
*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) ........ 14
*Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 11
*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........ 13
*United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) ........ 13
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........ 5, 12, 14
*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 15
*Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972 (N.D. Cal. 2016) ........ 13

## STATUTES

18 U.S.C. § 2510 *et seq.* ........ 3, 9
Cal. Bus. & Prof. Code § 17200 *et seq.* ........ 3, 10, 14

Cal. Penal Code § 502 .......... 3, 10, 11, 12

Cal. Penal Code § 630 *et seq.* .......... 3, 9

Cal. Penal Code §§ 484, 496 .......... 3, 10, 12, 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 .......... *passim*

Federal Rule of Civil Procedure 9 .......... *passim*

Federal Rule of Civil Procedure 12 .......... 1, 5

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I, § 1 .......... 3, 9, 12, 14

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on October 20, 2026, at 10:00 A.M. Pacific Time, or at such time that the Court sets a hearing, in the courtroom of the Honorable Rita F. Lin at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 4 – 17th Floor, or by videoconference or teleconference as the Court may direct, Defendants Meta Platforms, Inc. ("Meta") and WhatsApp, LLC ("WhatsApp") (collectively, "Defendants") will and hereby do move this Court for an order dismissing this case with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b).

This motion is based on this Notice, the Memorandum of Points and Authorities, the pleadings and record in this action, and such evidence and arguments that the Court may consider. Defendants understand that the Court's Standing Order for Civil Cases provides that the Court will only set a hearing if necessary.

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs plausibly allege that Defendants access or use WhatsApp users' encrypted messages;
2. Whether Plaintiffs plausibly allege that Defendants access or use WhatsApp user messages beyond what Defendants publicly disclose to users to operate WhatsApp;
3. Whether Plaintiffs plausibly allege that Defendants benefited and Plaintiffs suffered loss from the alleged misconduct; and
4. Whether Plaintiffs' fraudulent averments are sufficiently pled under Rule 9(b).

## INTRODUCTION

The Court dismissed Plaintiffs' complaint in its entirety due to multiple defects and gave Plaintiffs a limited opportunity to replead. Plaintiffs suggested they could easily do so and assured the Court that their claims were "supported by carefully vetted, firsthand whistleblower accounts of Meta workers' ability to access WhatsApp messages far beyond the limited amount of messages Defendants say they can see." Dkt. No. 40 ("Opp. Mot. Sanctions") at 1. But what Plaintiffs' First Amended Complaint contains instead is allegations from just one witness, a contractor with no insight into WhatsApp's encryption technology. Taking all allegations as true, that sole witness allegedly received access to a "widget" capable of viewing WhatsApp messages, but had no knowledge of the source of messages allegedly available in the widget, let alone how Defendants supposedly accessed WhatsApp users' messages. Plaintiffs even concede as much, alleging their claims have nothing to do with "how" Defendants access the messages. FAC ¶ 49. But without that information, the witness's allegations are fully consistent with receiving access only to messages that Defendants disclose are not end-to-end encrypted because, for example, users choose to report messages or exchange messages with certain businesses. FAC ¶¶ 29–31. Thus, despite their allegations that Defendants access and use virtually all of WhatsApp users' messages, Plaintiffs cannot even plausibly allege that Defendants access any private or encrypted messages.

This failure alone is sufficient to dismiss Plaintiffs' complaint in its entirety with prejudice. The FAC, though, still suffers from multiple other defects the Court previously identified. As

Plaintiffs have failed to remedy their defective complaint after the Court's clear instructions, the Court should dismiss all of Plaintiffs' claims with prejudice.

**BACKGROUND**

Plaintiffs filed their original complaint on January 23, 2026, alleging "[o]n information and belief" that Defendants "store, analyze, and can access virtually ***all*** of WhatsApp users' purportedly 'private' communications." Dkt. No. 1 ("Compl.") ¶ 2. Defendants immediately sent Plaintiffs a series of letters and an evidentiary proffer demonstrating the falsity of the complaint's allegations. After Plaintiffs refused to withdraw their allegations, Defendants moved to dismiss on March 27, 2026. Dkt. No. 29 ("Mot."), and for sanctions on May 4, 2026, Dkt. No. 38. On July 23, 2026, the Court dismissed all of Plaintiffs' claims. Dkt. No. 58 ("Order").

The Court dismissed the claims for four reasons. First, it dismissed all ten causes of action for failure to plausibly allege that Defendants accessed users' WhatsApp communications because Plaintiffs' "only factual allegation on that front" was their "assertion that 'whistleblowers here have explained' as much." Order at 10. Second, the Court dismissed four causes of action—the Wiretap Act (Count 1), the California Invasion of Privacy Act (the "CIPA") (Count 3), invasion of privacy (Count 4), and intrusion upon seclusion (Count 5)—because Plaintiffs failed to allege information "to support an inference that Defendants were accessing users' messages for purposes beyond those necessarily incident to operating WhatsApp or the protection of Meta's rights or property." *Id.* at 10–11, 14. Third, the Court dismissed four causes of action—the California Comprehensive Computer Data Access and Fraud Act (the "CDAFA") (Count 2), unjust enrichment (Count 8), statutory larceny (Count 9), and California Unfair Competition Law (the "UCL") (Count 10)—because Plaintiffs failed to plausibly allege the harms they suffered or the benefits Defendants gained as a result of the alleged conduct. *Id.* at 12–13, 15–18. Fourth, the Court dismissed four causes of action—the CDAFA (§ 502(c)(1) only) (Count 2), California constitutional invasion of privacy (Count 4), California common-law intrusion upon seclusion (Count 5), and California statutory larceny (Count 9)—because Plaintiffs failed to plead their fraudulent averments with particularity. *Id.* at 11–12, 13–14, 16.

In its Order, the Court granted leave to amend solely to correct the deficiencies identified and provided guidance on how Plaintiffs might attempt to do so. Order at 18-19. On August 4, Plaintiffs

filed their FAC. In that pleading, Plaintiffs distanced themselves from prior allegations, replacing allegations of fraud-based conduct with an allegation that the "implication" of Defendants' "contractual privacy promises" "is that Defendants cannot and were never able to see users' WhatsApp messages," which they say is false. FAC ¶¶ 2–3. Plaintiffs also jettisoned their prior allegations referring to "encrypted" WhatsApp communications. Instead, Plaintiffs allege that their "claims are not based on 'how' Meta has access to their messages" nor whether encryption was circumvented; "they are based on [the] fact that Meta *does* have access to their messages notwithstanding their contractual agreements"—but with no explanation as to how or why Defendants allegedly access WhatsApp users' messages. FAC ¶ 49.

Plaintiffs' core claim, however, remains, and it suffers from the same deficiencies that it always did. "On information and belief," Plaintiffs allege that Defendants "maintain access to and [have] the ability to store and use WhatsApp' three billion users' messages." FAC ¶ 3. Plaintiffs also still allege that such access is granted when a "worker" sends a "task" to a Meta engineer requesting access, which if approved will lead to "a new window or widget available that can pull up any WhatsApp user's messages based on a user's User ID number." FAC ¶ 38.

Plaintiffs attempt to bolster these allegations with supposed "witness evidence." FAC ¶ 41. Yet despite promising multiple whistleblowers, *e.g.*, June 23, 2026 Tr. at 12:10, 29:9, Plaintiffs identify only one: an anonymous former contractor who allegedly worked on Facebook Marketplace—not WhatsApp. FAC ¶¶ 41–43. Plaintiffs further allege that the witness had a "friend," who "mentioned the WhatsApp team's ability to access all of a users' WhatsApp messages." FAC ¶ 42. That purported conversation gave the witness an idea to use "such access to help better monitor the Marketplace frauds . . . ." FAC ¶ 42. The witness then allegedly requested access to WhatsApp messages and received a "WhatsApp message widget." FAC ¶ 42. The FAC fails to allege the witness knew what was provided, as he or she had no role in providing it. Plaintiffs also never explain, through this alleged game of telephone or anywhere else in the FAC, the source of the messages, *i.e.*, how the messages were provided, whether they were encrypted, whether users chose to share them with WhatsApp, whether the messages were exchanged with businesses, or whether the "widget" contained every single message, as Plaintiffs claim. Plaintiffs merely repeat a prior allegation that

"there was no limit to how far back in time the witness could review WhatsApp messages on this widget." FAC ¶ 43.

Plaintiffs also allege that news articles report that an Accenture contractor allegedly told a federal investigator "the Facebook team was able to 'pull whatever they wanted and then send it.'" FAC ¶ 45. Yet Plaintiffs plead no facts establishing that the contractor had personal knowledge of such access, whether it involved encrypted messages, or whether Defendants can access every WhatsApp message. FAC ¶ 45. Plaintiffs further rely on two related Bloomberg articles, which report that a federal agent's email to other agencies asserted the Defendants have access to WhatsApp messages and "current and former high-level executives" knew of this access. FAC ¶ 46. The FAC does not name those executives, allege what they knew, when they learned it, or what actions they took. In any event, the investigation was closed by the federal agent's agency, and the agency's own spokesperson stated that the agent's claims were "unsubstantiated and outside the scope of his authority as an export enforcement agent." Dkt. No. 40-3 at 3; *see also* Dkt. No. 40-2 at 2.

## PLEADING STANDARDS

Under Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" Order at 5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be accepted as true. *See id.* (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018)). Under Rule 9(b), allegations of fraud must be sufficiently specific to "'give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]'" *Id.* at 5 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (cleaned up)). "[A]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 5–6 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up)).

## ARGUMENT

Plaintiffs failed to remedy the defects identified by the Court. Plaintiffs still fail to (1) plausibly allege "access [to]" or use of "users' encrypted WhatsApp communications," Order at 10; (2) plausibly allege access or use beyond what Defendants publicly disclose to operate WhatsApp,

*see id.* at 14; (3) allege "what loss Plaintiffs experienced and what benefit Defendants allegedly received," *id.* at 12; and (4) allege with particularity the who, what, when, where, and how of their fraudulent averments, *id.* at 8–9.

**I. Plaintiffs' Allegations Do Not Plausibly Establish Access or Use.**

Plaintiffs' allegations that Defendants have unlimited (real-time) access to every message that any of WhatsApp's 3 billion users have ever sent, including deleted messages, remains implausible. For that theory to be true, Plaintiffs must allege facts showing (and ultimately prove) a vast, decade-long conspiracy involving hundreds or more of Defendants' employees secretly spying on users as well as some reason why WhatsApp has lied all the while about its privacy and encryption technology. The sole witness Plaintiffs proffer comes nowhere close. The Court should dismiss Plaintiffs' audacious claims with prejudice.

Plaintiffs' FAC hinges on the allegation that Defendants "store, analyze, and can access virtually ***all*** of WhatsApp users' purportedly 'private' communications," FAC ¶ 3, and "have ***unlimited*** access to WhatsApp communications," FAC ¶ 38 (emphasis added). Plaintiffs also repeat their allegations as to how Defendants purportedly access WhatsApp users' communications, alleging "employees can access users' messages by sending a 'task' and receiving a 'widget.'" *See* Order at 10. Plaintiffs attempt to add more detail from a single alleged witness to shore up these sweeping claims, but Plaintiffs' allegations still lack "facts supporting an inference that the whistleblower[] ha[s] firsthand knowledge or some other reliable basis for [his or her] accusations." *Id.* at 1.

Even accepting the FAC's factual statements as true, Plaintiffs and the witness's allegations are merely consistent with alternative explanations. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("[P]laintiff must do more than allege facts that are merely consistent with both their explanation and [the] defendants' competing explanation."). Because Defendants publicly disclose limited circumstances in which users can choose to share with Defendants (unencrypted) messages, such as user reporting or exchanges with certain businesses, FAC ¶¶ 29–32, Plaintiffs' factual allegations must plausibly show access to messages beyond those disclosed situations, *see In re Century Aluminum Co.*, 729 F.3d at 1108 ("When faced with two possible explanations . . . [s]omething more is needed, such as facts tending to exclude the possibility that the

alternative explanation is true[.]"). But while the witness purportedly received a WhatsApp message widget, he or she lacks knowledge of ***the source for the messages*** allegedly available in the widget. *See Ross v. Abbott Vascular Inc.*, 2022 WL 20275185, at *9 (N.D. Cal. Mar. 3, 2022) (granting a motion to dismiss when the allegations failed to establish the source *knew* whether the materials seen gave rise to liability). No alleged facts reveal whether the witness knew or could tell that the messages were encrypted communications, as opposed to user reported or exchanged with businesses.[1] *See* FAC ¶¶ 29–31. Plaintiffs merely allege, "[T]here was no limit to how far back in time the witness could review WhatsApp messages on this widget," FAC ¶ 43, but this was already alleged—without support—in the original complaint, Compl. ¶ 37 ("[A]ccess is unlimited in temporal scope . . . ."), and lends no more credence now than it did then. Temporal duration does not distinguish between the type of message or whether the messages fit within a disclosure. Indeed, given that the witness was investigating fraud on Facebook Marketplace, it is entirely possible that users reported multiple communications throughout time.

Plaintiffs' claims also fail because the FAC reveals that the sole whistleblower does not, and would not, have knowledge to support Plaintiffs' allegations that Defendants have unlimited access to users' communications "in the manner described." Order at 6. The FAC still alleges a worker may send a "'task' . . . to a Meta engineer with an explanation that they need access to WhatsApp messages for their job." *Compare* Compl. ¶ 36, *with* FAC ¶ 38. Plaintiffs' additional allegations simply attempt to provide more detail about the mechanics of that process from one person's point of view. But more detail about the same mechanics does not make Plaintiffs' allegations any more plausible. The purported witness was not an engineer, a Meta or WhatsApp employee, or in any position to have firsthand knowledge of how the alleged widget works or whether the widget contained encrypted or unencrypted messages. Indeed, Plaintiffs fail to allege the witness had access to, or knowledge of, how the messages allegedly seen were provided, the development, architecture, or mechanics of the alleged widget, the technical inner-workings of WhatsApp messages, or how Plaintiffs know the widget provided access to encrypted messages, much less every message for every user. In fact,

[1] Plaintiffs also give no reason why the witness would know the disclosed circumstances when Defendants have the ability to access certain user messages.

Plaintiffs expressly concede their sole witness's "claims are not based on 'how' Meta has access to [WhatsApp] messages." FAC ¶ 49. Absent allegations of how or why Defendants accessed WhatsApp users' messages, the witness's allegation that Defendants can access any—let alone all—WhatsApp users' messages through a widget remains based on nothing more than the witness's baseless say-so.

The remainder of Plaintiffs' allegations fail to cure the defects. The single allegation that Defendants can access all WhatsApp messages comes not from this alleged witness, but the witness's supposed "friend." FAC ¶ 42. No facts are pleaded in support of that friend's speculation. And what *is* pleaded is nothing more than hearsay, gossip, or speculation, which cannot show plausibility. Order at 1 ("Plaintiffs . . . need to provide some facts supporting an inference that the whistleblowers have firsthand knowledge or some other reliable basis for their accusations.").

Plaintiffs also claim they have a supposed expert who theorized two ways Defendants "could" access users' encrypted WhatsApp messages. FAC ¶ 49. But Plaintiffs expressly disclaim that their claims are based on "how" messages are accessed. And their retained expert is in no position to say whether Plaintiffs' lone witness viewed anything more than messages falling within Defendants' disclosures. *See, e.g.*, *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) ("declin[ing] to accept the conclusory assertions . . . as facts" where the complaint did not "explain the methodology by which [they were] derived"). This speculation cannot supply the missing facts of whether *Defendants* allegedly accessed users' encrypted WhatsApp messages, not least because the FAC identifies no mechanism by which the alleged access occurred. *See In re Century Aluminum Co.*, 729 F.3d at 1108.

The FAC also relies on two related Bloomberg articles published after Plaintiffs filed this case. The articles must meet the same standards of reliability as standard allegations. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000). But those articles do no more than vaguely describe an "unsubstantiated" and closed investigation, conducted by an unspecified "special agent," who claimed in an email that he had spent "10 months gathering documents" (also unspecified) and "conducting interviews" of (unspecified) individuals. FAC ¶¶ 45–47, 45–46 nn.35–36 (citing Dkt. Nos. 40-2 & 40-3). Plaintiffs do not supply any of the missing

details, and thus the allegations about the articles fail "to describe some basic facts about how each [source] knows about what they have described." Order at 10. It is not alleged whether the supposed source(s) are the same as Plaintiffs' purported whistleblower or whether they ever worked on WhatsApp or for Meta, saw WhatsApp messages, had insight into the systems allegedly displaying messages, or had the technical background to understand the limited, disclosed circumstances in which Defendants have the ability to view certain messages. Plaintiffs' threadbare allegations reveal their failure to investigate the reporting, *McKesson*, 126 F. Supp. 2d at 1272, and thus the articles do not meet the plausibility standard. Order at 10.

## II. Plaintiffs Still Do Not Allege That Defendants Accessed WhatsApp Messages for Any Purpose Beyond What Defendants Publicly Disclose.

As mentioned, Defendants disclose the circumstances in which they have the ability to access users' messages. FAC ¶¶ 29–32; *see also* Compl. ¶¶ 28–31. After previously considering those disclosures, *see* Order at 2–3, the Court concluded that Plaintiffs' allegations suggested access "incident to [the] operation of WhatsApp" and "routine behavior"—not the type of use, access, or "secret or deceptive data collection" that could show Plaintiffs are entitled to relief, *id.* at 10–11, 14. To avoid the Court reaching the same conclusion again, Plaintiffs now repeat a paragraph in each claim the Court dismissed on this basis. FAC ¶¶ 102, 131, 149, 162. But the FAC fails to remedy the deficiency, providing an additional basis to dismiss claims under the Wiretap Act (Count 1), the CIPA (Count 3), invasion of privacy (Count 4), and intrusion upon seclusion (Count 5) again, this time with prejudice. *See* Order at 10–11, 13–14.

Primarily, Plaintiffs allege Defendants "had no legitimate business purpose for accessing *all* of users' purportedly private communications (including deleted) communications." *E.g.*, FAC ¶ 102. Plaintiffs' conclusory argument does not supply the missing facts, and the FAC remains completely devoid of any facts showing WhatsApp's motives for allegedly lying about privacy and encryption (because it didn't). *See supra* at 4, 6–8. Plaintiffs also allege—without any facts or even support from their own purported witness—that investigators only "needed access to messages occurring contemporaneously" with investigated events or investigating complaints "should not require access to that user's deleted messages." *E.g.*, FAC ¶ 102. These are not factual allegations;

they are Plaintiffs' conjecture, "threadbare recitals," and "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). As Plaintiffs have failed to allege any facts addressing the defect identified by the Court, the Court should dismiss these claims with prejudice.

**III. Plaintiffs' Benefit-and-Loss Allegations Are Inadequate.**

The FAC fails to identify an economic loss or a benefit retained by Defendants. Thus, the Court should dismiss Plaintiffs' claims under the CDAFA (Count 2), unjust enrichment (Count 8), statutory larceny (Count 9), and the UCL (Count 10) with prejudice. Order at 12–17.

The original pleading failed to provide "*any explanation* of what loss Plaintiffs experienced and what benefit Defendants allegedly received." *Id.* (emphasis added). The Court further held that the alleged "misappropriation of users' messages" was "insufficient to support a plausible inference of actual damages." *Id.* at 16. Finally, vague references of "harm" and loss of the "benefit of the[] bargain" did not plausibly allege (1) the existence of a market for Plaintiffs' WhatsApp messages; (2) Plaintiffs' intention to participate in such a market; or (3) that Plaintiffs provided something of value to Defendants in exchange for using WhatsApp. *Id.* at 16–17.

In an effort to fix these issues, Plaintiffs repeat one identical paragraph, combining the alleged benefits to Defendants and harms they have suffered. FAC ¶¶ 117, 184, 196, 204. But as explained below, these new allegations are vague, conclusory, and remain insufficient to support the four causes of action.

***Counts 9 and 10***. As to the statutory larceny and UCL claims, Plaintiffs again fail to allege harm or damages. *See* FAC ¶¶ 196, 204. A claim for statutory larceny requires "actual damages." Cal. Penal Code § 496(c); *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1042 (N.D. Cal 2018) (citation omitted). Similarly, a UCL claim requires Plaintiffs to "demonstrate some form of economic injury." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1089 (N.D. Cal. 2023) (citation omitted). The claims fail for multiple reasons. First, Plaintiffs again fail to allege any hypothetical market for their messages, or their intent to participate in such a market. *See* Order at 16 ("[M]ere misappropriation of users' messages is insufficient to support a plausible inference of actual damages."); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (dismissing a UCL

claim where the plaintiff failed to show "how this information has economic value *to him*" (emphasis in original)). Second, Plaintiffs appear to rely on a benefit-of-the-bargain theory, alleging that Defendants' conduct "forced Plaintiffs to surrender in a transaction more, or acquire in a transaction less, than they otherwise would have." FAC ¶¶ 196, 204. That conclusory recitation does not identify *any* economic injury because Plaintiffs did not pay money to Defendants. *See Doe*, 690 F. Supp. 3d at 1089 ("Courts in this district have dismissed cases where, like here, . . . it was undisputed that plaintiffs paid no money to the defendant."). Third, Plaintiffs' allege a property interest, *e.g.*, FAC ¶ 196, but that allegation cannot support alleged harm. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) ("[T]he weight of authority holds that a plaintiff's 'personal information' does not constitute property." (citation omitted)).

***Counts 2 and 8***. The CDAFA and unjust enrichment claims fail because Plaintiffs have again failed to allege any plausible benefit to Defendants. CDAFA requires pleading standing by alleging the individuals have "suffer[ed] damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1). A claim for unjust enrichment requires "that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (citation omitted).

Plaintiffs allege that the Defendants benefited by (1) using WhatsApp messages as part of its efforts to combat fraud on Facebook Marketplace and (2) because WhatsApp messages "provide the same type" of information as other data that Meta uses in its advertising system or to train AI models. FAC ¶¶ 117, 184. But these allegations are not supported by facts. *See Arcell v. Google LLC*, 744 F. Supp. 3d 924, 933–34 (N.D. Cal. 2024) (granting a motion to dismiss where "the allegations . . . are too conclusory, and [the complaint's] proffered inferences too speculative, to plausibly support the asserted theories of . . . injury"). The Facebook Marketplace allegation is based "on information and belief" that is devoid of any factual allegations. FAC ¶¶ 117, 184. As to the "same type" of data allegations, those fail to allege any facts showing Defendants benefit from WhatsApp messages. Plaintiffs do not even allege *any* metrics, data, or numbers as to how Defendants used messages in their advertising system or to train AI models, much less that such use generates revenue or another concrete benefit. That is because Defendants did no such thing. As in the original complaint, "any

explanation" of "what benefit Defendants allegedly received" is "absent." Order at 12.

**IV. Plaintiffs' Fraud-Based Allegations Fail Under Rule 9(b).**

The Court should again dismiss all of Plaintiffs' fraud-based claims—§ 502(c)(1) of the CDAFA (Count 2), invasion of privacy (Count 4), intrusion upon seclusion (Count 5), and statutory larceny (Count 9)—because Plaintiffs fail to allege facts with the specificity required under Rule 9(b). Order at 8–9 (quoting *Vess*, 317 F.3d at 1106–07); *id.* at 11–14, 16.

In the FAC, Plaintiffs attempt to remove many of their original fraud allegations. *Compare, e.g.*, Compl. ¶¶ 122–48, *with* FAC ¶¶ 134–63. Plaintiffs also add paragraphs labeled "Who," "What," "When," "Where," and "How." FAC ¶¶ 108, 193. Despite these surface-level efforts, Plaintiffs' averments of fraud are substantively identical across both complaints: Plaintiffs claim that unidentified individuals at Meta and WhatsApp committed a massive, decade-long scheme to defraud all of WhatsApp's users through "[e]very single statement" regarding WhatsApp privacy. *See* FAC ¶¶ 108, 193; Mot. at 6–7 (citing *Rodriguez v. Google LLC*, 2021 WL 2026726, at *2–4, *6 (N.D. Cal. May 21, 2021)). This does not "give [D]efendants notice" "so that [Defendants] can defend against the charge and not just deny that they have done anything wrong." Order at 5 (quoting *Bly-Magee*, 236 F.3d at 1019 (citation omitted)). Because Plaintiffs fail to cure the deficiencies that this Court identified, and because their amended averments are conclusory, generic, and lack any of the particularity required by Rule 9(b), Plaintiffs' amended averments are still insufficient, and their fraud-based claims still fail.

***Who.*** The Court held that Plaintiffs' original fraudulent averments insufficiently pled "who" at Meta or WhatsApp committed the alleged fraud, such as "which 'senior leadership' engaged in this fraud" and "details such as who made those statements [telling workers to 'stay in their lane.']" Order at 8. In response, Plaintiffs reiterate that "Meta" "tried to prevent the truth from coming out," *compare* Compl. ¶ 39, *with* FAC ¶ 45, and delete altogether their allegation that "[s]enior leadership at Meta" tried to conceal fraud by "siloing different teams" and "directing them to 'stay in their own lanes,'" *compare* Compl. ¶ 2, *with* FAC ¶ 3. Plaintiffs now make the even more general allegation that "***Meta and WhatsApp*** are the perpetrators of this scheme to deceive or defraud." FAC ¶¶ 108, 193 (emphases in original). But "where fraud has allegedly been perpetrated by a corporation, . . .

plaintiffs must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) (citing *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001)) (collecting cases). Just pointing to "Meta and WhatsApp" is insufficient. *See* FAC ¶¶ 108, 193.

***What.*** Plaintiffs also fail to specify *what* statements or omissions are allegedly fraudulent. Plaintiffs instead allege that "[e]very single statement promising or implying that WhatsApp messages are 'private'" is fraudulent and point to "examples of these statements." FAC ¶¶ 108, 193; *see also* FAC ¶¶ 21–28. But merely alleging that a defendant "conducted an advertising campaign that had a 'common message'"—here, privacy and encryption—"and identif[ying] representative advertisements and statements" is not enough. *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014); *see also Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016) (collecting cases). Plaintiffs also fail to specify "which material, deceptive marketing claims they saw," which means that they have not provided "notice of 'what' misrepresentation" they are challenging. *See id.* (cleaned up).

***Where.*** As to where, Plaintiffs allege that misrepresentations or omissions were made "[o]n the WhatsApp platform itself, in its marketing materials, in the operative contracts between WhatsApp and its users, and in public statements[.]" FAC ¶¶ 108, 193 (paragraphs labeled "Where"). That is insufficient. It captures virtually every avenue through which Meta or WhatsApp may disseminate information and "is not sufficiently particular to put [Defendants] on notice of 'where' [P]laintiffs saw the alleged misrepresentations." *In re NJOY*, 2014 WL 12586074, at *11 (citation omitted) (rejecting argument that allegations satisfied Rule 9(b) by "includ[ing] representative images of the misrepresentations in the complaint" and describing where "the misleading statements appear").

***When.*** The Court held that Plaintiffs' original averments insufficiently pled "facts show[ing] when the decisions to engage in this fraud occurred" or "when" fraudulent actions were taken. Order at 8. In response, Plaintiffs claim that fraud occurred "[f]rom April 5, 2016 through the present." FAC ¶¶ 108, 193. This timeframe was already alleged in the original complaint, *e.g.*, Compl. ¶¶ 4,

71, and fails to remedy the deficiencies identified by the Court. Further, gesturing at the last decade "fails to provide [Defendants] with notice of the misconduct alleged." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 921 (N.D. Cal. 2026) (granting motion to dismiss because plaintiffs "inadequately pleaded the 'when'" because they "allege[d] only that they visited [the defendant's] website at some unspecific point in the last four years") (citation omitted); *cf. In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1045–46 (N.D. Cal. 2021) (dismissing fraud-based claims for "fail[ing] to allege '*who* actually saw *what* misrepresentations/omissions and *when* and *where* they saw' the misrepresentations or omissions" (citing *Vess*, 317 F.3d at 1106)).

***How.*** The Court held that Plaintiffs' original averments insufficiently pled how the alleged fraud was perpetrated, including "how senior leadership knew the messages could in fact be accessed." Order at 8–9. Given Plaintiffs' failure to plausibly allege the Defendants used or accessed WhatsApp users' messages under Rule 8, they certainly fail to satisfy Rule 9(b)'s heightened standard. Further, Plaintiffs attempt to add allegations that an external investigation "concluded" that unnamed "'current and former high-level executives' did in fact know of and condone this fraud." FAC ¶¶ 108, 193 (quoting Dkt. No. 40-3). But these allegations are based solely on two conclusory, vague, and uninvestigated Bloomberg articles that, as explained above, cannot support the allegations. *See supra* at 5, 8–9. Plaintiffs also still say nothing about *how* executives managed to carry out a decade-long fraudulent scheme on billions of people, nor why anyone at Meta or WhatsApp would do so.[2]

* * *

Plaintiffs try to save their invasion of privacy (Count 4) and intrusion upon seclusion (Count 5) claims by reframing fraud as contractual misrepresentation and by alleging that these claims do not depend on fraud. FAC ¶¶ 141, 143–46, 154, 156–59. These efforts fail. Plaintiffs already argued that these privacy-based claims did not depend entirely on fraud. Dkt. No. 37 ("Opp. Mot.") at 4–5. The Court rejected that argument, and Plaintiffs give no reason to revisit that decision. *See* Order at

[2] Because Plaintiffs still fail to "plausibly allege that Defendants improperly accessed users' messages" "in any manner constituting theft," Plaintiffs' claims under the UCL's unfair prong should be dismissed again, now with prejudice. Order at 16–17 (dismissing "unfair prong claim" "after disregarding the allegations described above as to the statutory larceny claim").

13–14; *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1046–47, 1052 (N.D. Cal. 2018) (dismissing invasion of privacy and intrusion upon seclusion claims under Rule 9(b)). In fact, Plaintiffs' core allegations are no different post-amendment, as explained above. *See supra* at 12; *compare, e.g.*, FAC ¶ 146 ("Defendants' intentional intrusion into . . . private messages and cellular telephones was highly offensive[.]"), *with, e.g.*, Compl. ¶ 133 (same). Thus, these claims still must meet the particularity requirements of Rule 9(b), and fail to do so.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the First Amended Complaint with prejudice.

Dated: August 25, 2026

*/s/ C. Bryan Wilson*

Dane H. Butswinkas (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
David M. Krinsky (*pro hac vice*)
William B. Snyderwine (*pro hac vice*)
dbutswinkas@wc.com
cwilson@wc.com
dkrinsky@wc.com
wsnyderwine@wc.com
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000

Rebecca Furman (SBN 294082)
rfurman@lewisllewellyn.com
Marjon Y. Momand (SBN 327877)
mmomand@lewisllewellyn.com
Lewis & Llewellyn LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 800-0590

*Counsel for Defendants*

**CERTIFICATIONS**

On August 25, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Federal Rule of Civil Procedure 5(a) and Civil Local Rule 5-1 have been so served.

*/s/ C. Bryan Wilson*
C. Bryan Wilson