QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Adam Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Kevin Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com
Lauren B. Lindsay (Bar No. 280516)
laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
Warren Postman (Bar No. 330869)
wdp@kellerpostman.com
Ashley Keller (pro hac vice forthcoming)
ack@kellerpostman.com
J.J. Snidow (pro hac vice forthcoming)
jj.snidow@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
Jay W. Barnett (pro hac vice forthcoming)
jay@barnettlegal.net
3404 NW 135th Street
Oklahoma City, OK 73120
Telephone: (405) 456-9343

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

EMMA DAWSON, MICHAEL DAWSON, LUIZ FILHO, ALKA GAUR, DAMIAN REYEZ JAQUEZ, YOLISA MKELE, and FERNANDA TATTO, on behalf of themselves and all others similarly situated

Plaintiffs,

v.

META PLATFORMS, INC., and WHATSAPP, LLC,

Defendants.

Case No. 3:26-cv-00751-RFL

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO META PLATFORMS, INC., AND WHATSAPP LLC'S MOTION TO DISMISS**

Complaint Filed Date: January 23, 2026

Judge: Honorable Rita F. Lin

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED....1

PRELIMINARY STATEMENT....1

BACKGROUND....1

ARGUMENT....3

I. DEFENDANTS' PLAUSIBILITY ARGUMENTS ASK THE COURT TO IGNORE THE FAC AND TO VIOLATE THE RULE 12(B)(6) STANDARD....3

II. DEFENDANTS' ARGUMENT THAT THEY ONLY ACCESSED MESSAGES FOR DISCLOSED PURPOSES SIMILARLY IGNORES THE FAC AND RULE 12(B)(6) STANDARD....7

III. PLAINTIFFS' BENEFIT AND LOSS ALLEGATIONS EASILY SATISFY RULE 8....8

IV. THE PARTICULARIZED ALLEGATIONS IN THE AMENDED COMPLAINT FULLY SATISFY RULE 9(B)....11

A. Plaintiffs' Reasonable Expectation of Privacy Does Not Depend on Fraud....11

B. Defendants' Particularity Arguments Fail....12

V. CONCLUSION....15

# TABLE OF AUTHORITIES

Page

## Cases

*Ang v. Bimbo Bakeries USA, Inc.*,
2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ... 13

*Arcell v. Google LLC*,
744 F. Supp. 3d 924 (N.D. Cal. 2024) ... 9

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2011 WL 2111796 (N.D. Cal. May 26, 2011) ... 15

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 4

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ... 12

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ... 10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 10, 11

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ... 5

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ... 14, 15

*Clancy v. Bromley Tea Co.*,
308 F.R.D. 564 (N.D. Cal. 2013) ... 13

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ... 10

*In re ConAgra Foods Inc.*,
908 F. Supp. 2d 1090 (C.D. Cal. 2012) ... 14, 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ... 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ... 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 9, 11, 12

*Hall v. Marriott Int'l, Inc.*,
2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) .......... 14

*JustM2J LLC v. Brewer*,
2025 WL 2402708 (E.D. Cal. Aug. 19, 2025) .......... 5

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) .......... 4

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 8

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001) .......... 13

*Lewis v. CoreCivic of Tenn., LLC*,
2024 WL 4728897 (S.D. Cal. Nov. 8, 2024) .......... 13

*Lorenz v. Safeway, Inc.*,
241 F. Supp. 3d 1005 (N.D. Cal. 2017) .......... 5

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10, 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) .......... 6

*In re Meta Pixel Tax Filing Cases,*
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 10

*In re NJOY Inc. Consumer Class Action Litigation*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) .......... 14, 15

*O'Melveny & Myers v. FDIC*,
512 U.S. 79 (1994) .......... 13

*People v. Forest E. Olson, Inc.*,
137 Cal. App. 3d 137 (1982) .......... 13

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 9

*Rodriguez v. ByteDance, Inc.*,
2025 WL 672951 (N.D. Ill. Mar. 3, 2025) .......... 11

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 12

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 9

*Rollins v. Dignity Health*,
338 F. Supp. 3d 1025 (N.D. Cal. 2018) ........ 5

*Ross v. Abbott Vascular Inc.*,
2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ........ 5

*Sanders v. Magill*,
9 Cal. 2d 145 (1937) ........ 13

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ........ 15

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 9

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 14

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 4

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ........ 9

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 9

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........ 13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........ 4, 12, 13

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*,
721 F. App'x 662 (9th Cir. 2018) ........ 14

*Yastrab v. Apple Inc.*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) ........ 14, 15

*In re Zoom Video Commc'ns Inc. Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........ 15

**Statutes**

Cal. Civ. Code § 2332 ........ 13

**Rules**

Rule 8 .......... 1, 4, 5, 6, 8

Rule 9(b) .......... 1, 11, 12, 13, 14, 15

Rule 12(b)(6) .......... 4, 7, 11

## STATEMENT OF ISSUES TO BE DECIDED

Whether the First Amended Complaint ("FAC"), which supplies the additional detail the Court identified as missing from the original pleading, plausibly alleges that Defendants accessed, stored, and/or used WhatsApp users' private messages in violation of federal and California law.

## PRELIMINARY STATEMENT

For years, Defendants have contractually promised ***every*** WhatsApp user that "your personal messages, photos, calls and more stay between you and the people you choose, meaning not even WhatsApp can see them." FAC ¶ 25. They similarly begin every WhatsApp conversation with the representation that "Messages and calls are end-to-end encrypted. Only people in this chat can read, listen to, or share them." *Id.* ¶ 1 (screenshotting this promise). And yet, several independent corroborating sources have attested that Defendants can and do access users' WhatsApp messages, including messages sent years earlier and messages users believed they had deleted.

This Court dismissed the original complaint under Rule 8 for one reason: it did not "describe some basic facts about how each whistleblower knows about what they have described." Dkt. 58 at 10. Relying on multiple mutually reaffirming witnesses, the FAC now provides exactly that information, at a level of detail that would satisfy even the PSLRA standard Defendants previously cited and now tellingly do not mention in their brief. The FAC also adds detail on a named contractor who described the same access to a federal investigator, a group of roughly ten colleagues who obtained access the same way, and a federal agent's ten-month investigation concluding that "Meta stores and can view WhatsApp messages." FAC ¶¶ 41–49. And the FAC provides extensive details on the who, what, when, where, and how of Defendants' actions, meaning that even those portions of the allegations the Court held must satisfy Rule 9(b) easily do so (and then some).

The Court should reject Defendants' challenges to the FAC and allow the case to proceed to discovery. The allegations are not only plausible and straightforward under the Court's (and law's) guidance, but Defendants' own admissions that they literally built WhatsApp's business on the expectation of privacy show they are on clear notice of the violations for which they stand accused.

## BACKGROUND

Plaintiffs filed their first complaint on January 23, 2026, alleging that Defendants, despite

public and contractual promises that users' messages would remain private and that Defendants could not access them, in fact accessed users' WhatsApp messages routinely. Dkt. 1. In granting the motion to dismiss with leave to amend, the Court noted "Plaintiffs could potentially cure the deficiencies identified with a more detailed pleading." Dkt. 58 at 18. That is what the FAC does.

The FAC explains that Defendants have promised "respect for [users'] privacy" and that "your personal messages, photos, calls and more stay between you and the people you choose, meaning not even WhatsApp can see them." FAC ¶¶ 22, 25. But secretly, Defendants maintained access to the content of users' messages. *Id.* ¶ 38. While Defendants disclosed certain limited circumstances where they and third parties can access WhatsApp message content—*e.g.*, when a user reports another user—and certain use cases where WhatsApp messages are not encrypted—*e.g.*, business messaging—whistleblowers have revealed Defendants in fact had unfettered access to users' message content dating back to the first time a user activated their account. *Id.* ¶ 39.

Defendants' contractual privacy promises and privacy-based marketing are not in dispute. *Id.* ¶ 2. The FAC details WhatsApp's longstanding, public commitment to "privacy" for WhatsApp messages, as well as Defendants' repeated public promises over many years that they did not store or access users' messages. *Id.* ¶¶ 21–23. Defendants began WhatsApp conversations with this express promise, meaning ***every WhatsApp user received Defendants' privacy promise when they began a WhatsApp conversation***. *Id.* ¶¶ 1, 28, 143. Defendants also ***contractually promise every WhatsApp user*** that users can "Message privately" and that their messages will stay between the sender and the intended recipient, with no access or viewing by Defendants. *Id.* ¶ 25.

In line with the Court's order, Plaintiffs provided significant additional facts supporting whistleblower accounts of Defendants' unlawful access. One whistleblower worked as a contractor for Meta, monitoring fraudulent schemes on Facebook Marketplace, and described their "direct, personal experience with these facts—including, specifically, ***personal access*** to users' WhatsApp messages—over a period of several years." *Id.* ¶¶ 41–42 (emphasis added). They started in 2019 by requesting access from Facebook engineers and then using a widget that allowed them unfettered access to users' WhatsApp message content. *Id.* ¶ 42. The FAC describes the widget's appearance and functionality, *id.* ¶ 43, and how the whistleblower ***personally*** used it to access users' WhatsApp

messages for their job. *Id.* ¶ 44. But after the whistleblower formed an internal group to determine how best to incorporate the WhatsApp message access into their jobs, more senior employees shut down the project, instructing them to "stay in [their] lane." *Id.* ¶ 44. The whistleblower nevertheless ***personally*** retained access to users' WhatsApp messages until 2023. *Id.* ¶ 44.

Another whistleblower, an Accenture contractor who worked on Facebook projects, corroborated Plaintiffs' original allegations in a Bloomberg article published shortly after Plaintiffs' original complaint. *Id.* ¶ 45. And a second Bloomberg news article reported on a federal agent's ten-month investigation into Defendants, at the end of which the investigator concluded that "Meta stores and can view WhatsApp messages" and that "***[t]he misconduct of Meta and its officers, including current and former high-level executives, involve civil and criminal violations that span several federal jurisdictions***." *Id.* ¶ 46. Shortly after Plaintiffs filed their original complaint, the investigation was abruptly shut down. *Id.* ¶ 47. Plaintiffs explain in their FAC that, on information and belief, Meta used individuals with connections to the current federal administration to successfully lobby the federal government not to continue with the investigation. *Id.* ¶ 47.

Plaintiffs also explain, from a technical perspective, that either the closed-source WhatsApp software gives Meta access to decrypted content on the user's device, or end-to-end encryption is not correctly implemented. *Id.* ¶ 49; Dkt. 40-5 ¶¶ 7–14. Indeed, Defendants' own public responses have been carefully limited to denying access to "encrypted" messages, which says nothing about messages at rest on a device, where they are not encrypted at all. FAC ¶ 48. Defendants have never denied this allegation, yet now ask this Court to dismiss before anyone can test the difference.

## ARGUMENT

### I. DEFENDANTS' PLAUSIBILITY ARGUMENTS ASK THE COURT TO IGNORE THE FAC AND TO VIOLATE THE RULE 12(B)(6) STANDARD

The FAC provides extensive information on the personal access and use underlying whistleblower evidence Plaintiffs received. FAC ¶¶ 41–44. There are so many details that Defendants abandon their previous PSLRA pleading standard argument and now argue that Plaintiffs' claims are too "audacious," and that Plaintiffs must therefore allege "some reason ***why***" Defendants lied about their treatment of WhatsApp users' privacy. Mot. at 6 (emphasis added). That

is not the law. Rule 8 requires only facts sufficient to state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which merely asks if the complaint's allegations establish "more than a sheer possibility that a defendant has acted unlawfully." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 762 (N.D. Cal. 2022) (citation omitted). Plaintiffs have done considerably more.

***First***, the FAC supplies precisely the detail the Court requested, providing "facts [to] support[] an inference that the whistleblowers have firsthand knowledge or some other reliable basis for their accusations." Dkt. 58 at 1. Defendants claim that providing precisely what the Court asked for is somehow deficient, while attacking strawmen. For example, they wrongly state that Plaintiffs rely on "a single alleged witness," Mot. at 2, 6, 8, when Plaintiffs cite multiple, independent, mutually corroborating sources, including testimony to a federal investigator that would expose the statement-giver to criminal liability if false. FAC ¶¶ 38–46. Furthermore, Defendants try to attack these sources one-by-one and never together. That is not the standard. The question is whether "[t]hese allegations, in the context of the complaint as a whole," support a reasonable inference of access. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1181 (9th Cir. 2016). They clearly do. ***How*** exactly Defendants carry out their scheme will be unearthed during discovery. At the pleading stage, Plaintiffs have more than cleared the low bar set by Rule 8. Dkt. 58 at 1.

***Second***, Defendants argue that Plaintiffs' allegations "are merely consistent with alternative explanations," improperly attempting to argue the merits of Plaintiffs' claims before they have the opportunity to conduct discovery. Mot. at 6. Defendants' own authorities cite the controlling case, *Starr v. Baca*, where the Ninth Circuit explained: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed ***only*** when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is ***implausible***." 652 F.3d 1202, 1216 (9th Cir. 2011); *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014) (establishing that "when there are multiple plausible theories at the pleadings stage," "a tie goes to the plaintiffs.") (citation omitted).

At most, then, Defendants' argument boils down to demonstrating that their reading is

***plausible*** alongside Plaintiffs' allegations. And "Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (citation omitted), *abrogated on other grounds by Rollins v. Dignity Health*, 338 F. Supp. 3d 1025 (N.D. Cal. 2018); *see also JustM2J LLC v. Brewer*, 2025 WL 2402708, at *5 (E.D. Cal. Aug. 19, 2025) ("[P]leadings need not refute other, potentially innocent explanations for alleged wrongful acts to be deemed plausible at the motion to dismiss stage—otherwise the requirement that reasonable inferences be drawn in a plaintiff's favor would be a dead letter."). Defendants' cases do not hold otherwise.[1]

To the extent Defendants argue the whistleblowers must be mistaken, and they only saw that Defendants accessed limited user messages consistent with Defendants' disclosures, that flies in the face of the FAC, which alleges the opposite. To reiterate, Defendants' disclosures state that, when a user reports another for misconduct, Defendants can view up to ***<u>five</u>*** of the ***<u>reported user's</u>*** previous messages to the reporting user. FAC ¶ 29. The FAC specifically alleges that Defendants can and do have ***unlimited*** access to WhatsApp users' messages ***regardless*** of whether they reported others for misconduct (or were reported themselves). FAC ¶¶ 38–39, 43, 46, 49. Defendants' reading cannot account for that: it would require ***every user*** to have reported ***every person*** they message, ***every five messages***, continuously, from the day they joined WhatsApp—and still would not reach the deleted messages the widget displayed. FAC ¶ 43.

***Third***, Defendants insist the whistleblower could not know "***how the alleged widget works***." Mot. at 7 (emphasis added), and they fault Plaintiffs for not alleging the widget's history and inner-workings. *See id.* Rule 8 does not require such detail, particularly given this case is not about how the widget worked. The case is about what the widget (and any similar Defendant systems) ***could***

[1] *In re Century Aluminum Co. Sec. Litig.* applied the well-understood plausibility standard to a traceability allegation the court found "devoid of factual content" and that, even accepted as true, provided no inference the plaintiff's shares were traceable to the relevant stock offering. 729 F.3d 1104, 1107-08 (9th Cir. 2013). In contrast, here, Plaintiffs allege various whistleblower accounts of ***personal*** access to WhatsApp messages far beyond what Defendants state they can access. Those are objective factual allegations that, if true, validate Plaintiffs' claims. *Ross v. Abbott Vascular Inc.*, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022), is no better for Defendants. There, the court dismissed a digital copyright claim because knowledge was a necessary element of the claim. *Id.* at *9. Unlike the *Ross* plaintiffs, who alleged only that someone "could view" material, Plaintiffs allege multiple whistleblowers ***did*** view users' full WhatsApp messages. FAC ¶¶ 38-46; *see also id.* ¶¶ 102, 117.

***access***. The Court asked whether any whistleblowers had firsthand knowledge of access to users' full WhatsApp messages. Dkt. 58 at 1, 10. They did, using the widget. FAC ¶¶ 38–39, 42–44.[2] Indeed, even Defendants acknowledge that Plaintiffs' additional allegations "provide more detail about the mechanics of [the] process" by which the whistleblower could access users' WhatsApp messages. Mot. at 7. Nothing more is required at the pleading stage.

***Fourth***, while Defendants quibble with Plaintiffs' allegations about how Defendants might have obtained WhatsApp messages from a technical perspective, FAC ¶ 49; Dkt. 40-5 ¶¶ 7-11—once again, focusing solely on ***encryption*** (Mot. at 6-8)—this Court has already held those exact explanations plausible. Dkt. 58 at 18. For the same reason, Plaintiffs' candor that "[t]he exact mechanics of how Defendants get access . . . is best and potentially exclusively known to Defendants," FAC ¶ 49, is not the concession Defendants argue. Mot. at 2, 8. A plaintiff need not plead technical facts locked inside the defendant's own systems. That is what discovery is for.

***Fifth***, Defendants attack the two Bloomberg articles cited in the FAC as unreliable, invoking *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1271–72 (N.D. Cal. 2000). Mot. at 8. *McKesson* is a PSLRA case applying the Reform Act's heightened scienter standard—the exact standard this Court declined to apply. Dkt. 58 at 10. Even so, *McKesson* held that an article which "corroborates plaintiff's own investigation and provides detailed factual allegations . . . can—at least in combination with plaintiff's investigative efforts—be a reasonable source" for pleading. 126 F. Supp. 2d at 1272. It likewise rejected the same demand Defendants press here for named sources, so long as sources are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* at 1271 (citation omitted). These articles satisfy that description. One of the articles relied on firsthand testimony from a named source describing his position and personal access. FAC ¶ 45. Similarly, the second article relies on a firsthand review of a federal agent's report who

[2] Defendants' argument that the FAC only alleges a whistleblower's friend had access (Mot. at 8) is simply incorrect. The FAC alleges ***the witness*** had access, as did others with whom the witness worked. FAC ¶¶ 42, 44. And the federal investigator concluded that many others did, too. *Id.* ¶¶ 45–46. Defendants' repeated references to a "single allegation" and "sole whistleblower" are similarly disingenuous. As explained above, the FAC makes clear, repeatedly, that the testimony of multiple independently corroborating witnesses supports Plaintiffs' allegations.

investigated Defendants for ten months. *See id.* ¶ 46. Defendants' only answer is a bureau spokesperson's statement that the agent's conclusions were "unsubstantiated and outside the scope of his authority as an export enforcement agent." Mot. at 5. At most, Defendants have identified a factual dispute—*i.e.*, a reason to deny their motion; indeed, Plaintiffs intend to conduct discovery into Defendants' conduct surrounding the closure of that investigation.

## II. DEFENDANTS' ARGUMENT THAT THEY ONLY ACCESSED MESSAGES FOR DISCLOSED PURPOSES SIMILARLY IGNORES THE FAC AND RULE 12(B)(6) STANDARD

Defendants argue in the alternative that, even if they accessed users' messages, their access falls within the limited exceptions in which Defendants disclose they may access users' messages. But, as explained above, this argument contradicts the FAC's allegations—which the Court must accept as true—and so raises a factual dispute that cannot be resolved on a motion to dismiss.

To be clear, the Court asked whether the original complaint supported an inference of access "for purposes beyond those necessarily incident to operating WhatsApp or to the protection of Meta's rights or property." Dkt. 58 at 11. For the privacy claims, it further asked whether the access was "routine behavior" or instead "secret or deceptive data collection." *Id.* at 14 (citation omitted). The FAC answers both questions: accessing all of a user's WhatsApp messages is ***not*** disclosed, ***not*** necessary to operate WhatsApp or protect Defendants' rights or property, and is ***not*** routine behavior—indeed, Defendants concede doing so would be antithetical to the entire premise of WhatsApp's business. FAC ¶¶ 1–4, 23, 29–33, 44, 46, 49, 102–104, 131, 141, 144–145, 149.

Whistleblower testimony exemplifies this in action. They were investigating frauds on Facebook Marketplace and wanted to review WhatsApp messages "occurring contemporaneously with or after the events on Marketplace being investigated." FAC ¶ 102. What they received instead was "all of requested users' communications," without temporal limit, reaching back to account activation. *Id.* ¶¶ 43, 102. This included deleted messages. *Id.* ¶ 43. A deleted message is, by definition, ***not*** one the user reported or forwarded to customer support. *Id.* ¶ 102. And at least one witness continued to review WhatsApp messages until as late as 2023. *Id.* ¶ 44. Access retained for years after the business purpose was terminated is not "necessarily incident" to anything.

Even if Plaintiffs had not included such support, Defendants' argument would still fail, as

Defendants themselves represent that they do not and cannot access WhatsApp users' messages except in very limited circumstances. FAC ¶¶ 29–33, 102; *see also id.* ¶¶1, 3, 25–28, 48. Defendants cannot have it both ways. Conduct antithetical to a company's core business is not conduct "necessarily incident" to operating that business, nor is it "routine behavior" the Court contrasted with "secret or deceptive data collection." Dkt. 58 at 14.

## III. PLAINTIFFS' BENEFIT AND LOSS ALLEGATIONS EASILY SATISFY RULE 8

Defendants argue Plaintiffs do not satisfy the Court's directive to explain "what loss Plaintiffs experienced and what benefit Defendants allegedly received" for their CDAFA (Count 2), unjust enrichment (Count 8), civil-theft (Count 9), and UCL (Count 10) claims. Mot. at 10–12. In so doing, Defendants attempt to recast the Court's order as requiring Plaintiffs to plead a market for WhatsApp messages, an intent to participate in it, ***and*** money paid to Defendants. The order, however, was disjunctive, asking whether Plaintiffs "paid money ***or*** gave something else of value to Defendants to use WhatsApp." Dkt. 58 at 18 (emphasis added). After all, "[t]here are innumerable ways in which economic injury from unfair competition may be shown," and the California Supreme Court expressly declined to "supply an exhaustive list." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). A plaintiff may "surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have," or may "have a present or future property interest diminished." *Id.* Here, the FAC alleges Defendants secretly took data for their own profit, establishing both Plaintiffs' harm and Defendants' benefit: the profits Defendants earned satisfy the CDAFA, unjust-enrichment, and civil-theft claims; the unexpected data Plaintiffs surrendered in their transaction satisfies the UCL claim, and neither turns on Plaintiffs' intent to sell.

Starting with the benefit to Defendants: Defendants at the very least used the content of WhatsApp messages to investigate and resolve allegations of fraud on Facebook Marketplace. FAC ¶¶ 42–44. This was meant to increase Meta's profits by improving the customer experience on Facebook Marketplace. *Id.* ¶¶ 117, 184, 196, 204. Users' WhatsApp messages also provided value to Defendants as a large source of data regarding users' preferences and interests, which is valuable for Defendants' advertising network, and as a source of training materials for Defendants' AI models. *Id.* ¶¶ 117, 184, 196, 204. Defendants' demand for "metrics, data, or numbers," Mot. at 11,

seeks proof of the ***amount*** of the benefit, not whether one exists. *Cf. Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087, 1094 (N.D. Cal. 2025). Neither of Defendants' cases requires more. *See Arcell v. Google LLC*, 744 F. Supp. 3d 924, 930-31 (N.D. Cal. 2024) (discussing antitrust injury—a unique requirement for antitrust cases); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) ("Because [plaintiffs] 'have not stated a claim against [Meta] for any unlawful conduct, they have also failed to state an unjust enrichment claim.").

Plaintiffs' damages follow on independent theories, none of which turn on an intent to sell. ***First***, for the CDAFA, unjust enrichment, and civil-theft claims, Plaintiffs retain a stake in the profits Meta earned from their messages. FAC ¶ 196. The Ninth Circuit has held that allegations that Facebook acquired and sold users' personal information for profit were "sufficient at the pleading stage to demonstrate that these profits were unjustly earned," adding that "[u]nder California law, this stake in unjustly earned profits exists ***regardless of whether an individual planned to sell his or her data*** or whether the individual's data is made less valuable." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600–01 (9th Cir. 2020) (emphasis added). This Court applied that same reasoning in *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). So, too, in *Rodriguez v. Google LLC*, where the court denied summary judgment on a CDAFA claim because "a reasonable juror could find that Plaintiffs suffered damage or loss" from Google's profiting "from the misappropriation of their data." 772 F. Supp. 3d 1093, 1109–10 (N.D. Cal. 2025). The same allegations establish an unjust enrichment claim too. *See, e.g.*, *Riganian*, 791 F. Supp. 3d at 1095 (unjust enrichment adequately pleaded where the defendant profited from plaintiffs' data without their knowledge or consent); *see also In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *19 (N.D. Ill. Oct. 1, 2024) (similar). And *In re Facebook* held these same allegations establish standing on CDAFA, common-law, and statutory-larceny claims alike. 956 F.3d at 601. Here, Plaintiffs allege unjustly retained profits across each of these claims. FAC ¶¶ 117, 184, 196, 204. That is more than sufficient at the pleading stage.

***Second***, Plaintiffs' UCL claim stems from the fact that Plaintiffs contracted with Defendants for private messaging and gave "valuable consideration in the form of their use of the WhatsApp app," which has "ascertainable value" to Defendants, including growth of their user network. FAC

¶¶ 172, 181. In return, they received a service stripped of the privacy that was its defining promise, meaning Defendants "effectively charged" them by taking the messages. *Id.* ¶ 116. Defendants' illicit use of that property thus "forced Plaintiffs to surrender in a transaction more, or acquire in a transaction less, than they otherwise would have," and cost them their "property right to control the dissemination and use of their personal information." *Id.* ¶¶ 196, 203–205. Courts in this District have repeatedly held that showing is sufficient, including on materially identical allegations against Meta. For instance, *In re Meta Pixel Tax Filing Cases* held that a user who shares data expecting it to be protected, and does not receive that protection, "has surrendered in that transaction more than she otherwise would have." 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024). This constitutes money or property under *Kwikset.* That "logic applies with equal force to free services," and reaches data the user understood "will not be collected or shared." *Id.*; *see also Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (sustaining UCL claim where plaintiffs alleged Google collected their data while in "private browsing mode," even though plaintiffs did not pay to use private browsing). The allegations sustained in *Meta Pixel* track Plaintiffs' own. *Compare* 724 F. Supp. 3d at 1025 *with* FAC ¶¶ 203, 205. Defendants' rejoinder that Plaintiffs "did not pay money to Defendants," Mot. at 11, is therefore no answer.

Defendants' cited authorities are inapposite because they involved complaints that simply lacked the requisite level of factual detail. *Bass v. Facebook, Inc.* involved a third-party data breach in which Facebook neither took nor profited from the information, and the plaintiff identified no "economic value to him." 394 F. Supp. 3d 1024, 1039–40 (N.D. Cal. 2019). *Doe v. Meta Platforms, Inc.* involved health information the plaintiffs did not want monetized by anyone, yielding "inconsistent allegations regarding how plaintiffs could and would participate in a legitimate market," and no benefit-of-the-bargain basis pleaded for the UCL claim at all. 690 F. Supp. 3d 1064, 1089–91 (N.D. Cal. 2023). And in *Cline v. Reetz-Laiolo*, the counterclaimant alleged no damages at all. 329 F. Supp. 3d 1000, 1042 (N.D. Cal. 2018). Defendants quote *Low v. LinkedIn Corp.* for the proposition that "the weight of authority holds that a plaintiff's 'personal information' does not constitute property." Mot. at 11 (quoting 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012)). Google made an identical argument in 2021, quoting the identical sentence to the court that decided *Low.*

*See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635–36 (N.D. Cal. 2021). The court rejected that argument, explaining that Google "ignores this Court's other rulings, both before and after *Low v. LinkedIn*," and citing the "growing trend across courts . . . to recognize the lost property value of personal information." *Id.* at 635 (collecting cases); *see also Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *14–15 (N.D. Ill. Mar. 3, 2025) (declining to dismiss a California civil-theft claim due to this same trend). Defendants' arguments ignore this clear line of cases post-dating *Low.*

## IV. THE PARTICULARIZED ALLEGATIONS IN THE AMENDED COMPLAINT FULLY SATISFY RULE 9(B)

Defendants' final argument is that Plaintiffs have not pled fraud with particularity as to their CDAFA § 502(c)(1) (subset of Count 2), invasion of privacy (Count 4), intrusion upon seclusion (Count 5), and civil-theft (Count 9) claims. Mot. at 12–15. That argument ignores the FAC.

### A. Plaintiffs' Reasonable Expectation of Privacy Does Not Depend on Fraud

Defendants shoehorn an argument at the end of their brief contending Plaintiffs' invasion of privacy and intrusion upon seclusion claims depend on fraud, even though fraud is an element of neither claim. Mot. at 14–15. Defendants do so based on the Court's ruling in its motion to dismiss decision that Plaintiffs did not satisfy Rule 9(b) with respect to their allegations about their reasonable expectation of privacy and that Defendants' intrusion was highly offensive or seriously egregious. *Id.* (citing Dkt. 58 at 13). Defendants clearly prefer this ruling because it attaches a higher pleading standard to these two claims. Plaintiffs respectfully submit, however, that such a ruling in light of the FAC's allegations would be legal error.

As the Ninth Circuit has explained (in a case about ***Meta***), the "critical fact" for the expectation and intrusion of privacy/seclusion in circumstances like these is whether "the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." *Facebook*, 956 F.3d at 603. In reversing dismissal of invasion of privacy and intrusion upon seclusion claims under Rule 12(b)(6), the Ninth Circuit never once mentioned Rule 9(b) and relied on, *inter alia*, statements from Facebook's policies and website to find it was clearly plausible such an expectation existed. *See id.* at 606. On that basis, the Ninth Circuit reinstated those claims. *Id.* at 611. And such claims survive even where a fraud theory does not. *See Rodriguez v.*

*Google LLC*, 2021 WL 2026726, at *6, *9 (N.D. Cal. May 21, 2021). Plaintiffs allege that Defendants ***concede*** WhatsApp's business is built on the expectation of privacy, as confirmed by Defendants' public statements and contractual language—*i.e.*, just like those found decisive on this issue in *Facebook*. *See, e.g.,* FAC ¶¶21–28, 131, 141, 143, 144, 154, 156, 193. Moreover (and worse than in *Facebook*), every WhatsApp conversation begins with statements confirming the expectation of privacy. *Id.* ¶¶ 1, 28 (excerpting a screenshot of that message); *see also id*. ¶¶ 143, 156.

Plaintiffs submit that a collection of statements literally conveying the promise of privacy plausibly create the reasonable expectation of one, irrespective of any allegations of fraud or Rule 9(b). But, even if a variety of publicly available, contractually binding, and direct, repeated representations did not exist, the broader context is that users sending and receiving private messages can and should reasonably expect the company facilitating those messages would not access them, ***unless*** it specifically disclosed that access. This was another reason the Ninth Circuit reinstated the invasion of privacy and seclusion claims in *Facebook*: Facebook did not disclose its "surreptitious and unseen data collection." *Facebook*, 956 F.3d at 603. Here, Plaintiffs allege Defendants similarly made no such disclosure, demonstrating highly offensive, serious, and egregious privacy invasions.

### B. <u>Defendants' Particularity Arguments Fail</u>

Even if Rule 9(b) applied to certain claims, the FAC satisfies it. The Court asked Plaintiffs to provide more details on who, what, when, where, and how, which they did. FAC ¶¶ 108, 193; *see generally id.* ¶¶ 106–117, 134–163, 187–196. Rule 9(b) exists to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). It does not demand "absolute particularity," "a precise time frame," or the "precise method" of the fraud. *United Healthcare Ins.*, 848 F.3d at 1180. Defendants are clearly on notice.

***Who.*** The "who" is Meta and WhatsApp. FAC ¶ 193; *see generally id.* ¶¶ 108, 143-45, 153. Defendants insist that Plaintiffs must identify "the employees or agents who purportedly made" any relevant statements (Mot. at 13), but where, as here, a corporation ***itself*** makes misrepresentations—*e.g.*, in the app itself, in a contract, or on the corporate website—there is no single employee or agent

to identify; the company is the speaker. The Ninth Circuit has held that identifying it satisfies Rule 9(b). *See United Healthcare Ins.*, 848 F.3d at 1181. Courts in this District are in accord. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *3 (N.D. Cal. Sept. 25, 2013) ("the who" was "defendant" corporation, pleaded with "the precise representations" and where they appeared); *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (same). Defendants' citations, *UMG* and *Lee*, are not to the contrary; in both, the alleged misrepresentation was described only in general terms and could not be tied to any identified speaker or occasion, let alone to corporate statements. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1107–09 (C.D. Cal. 2015); *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051–52 (9th Cir. 2001). Here, the statements are written, public, quoted verbatim, and made by the companies in their own name. *See, e.g.,* FAC ¶¶ 1–3, 23–28.

To the extent Defendants argue Plaintiffs must allege who within Defendants knew the statements were false, Rule 9(b) itself states "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs satisfy this requirement. Under California law, which governs imputation for these state-law claims, *see O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83–85 (1994), "[k]nowledge of an officer of a corporation within the scope of his duties is imputable to the corporation." *Sanders v. Magill*, 9 Cal. 2d 145, 153 (1937); *see* Cal. Civ. Code § 2332. California courts have rejected the argument that imputation is unavailable because "no one employee has all the information necessary to realize the advertisements are wrong"; such a rule "would permit a corporation, by not letting its right hand know what is in its left hand, to mislead and deceive those who are dealing with it in perfectly good faith." *People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 140 (1982); *accord Lewis v. CoreCivic of Tenn., LLC*, 2024 WL 4728897, at *6 (S.D. Cal. Nov. 8, 2024) (contrary rule "would allow corporations to avoid liability by employing multiple agents"). Plaintiffs allege exactly that; *i.e.*, that officers and high-level employees knew Defendants' representations were false. FAC ¶¶ 108, 193. Only discovery will identify these individuals, as that information is "within the defendant's exclusive possession and control." Accordingly, Plaintiffs' inability to identify such individuals now does not violate Rule 9(b), even if its particularity requirements could apply to allegations about knowledge of fraud, when the Rule on its face states otherwise. *U.S. ex rel. Vatan*

*v. QTC Med. Servs., Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018); *see also Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (*Twombly* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.") (citation omitted).

***What and Where.*** Courts have recognized that, where plaintiffs identify "the particular statements they allege are misleading" and "where those statements appear on the product packaging," "they have satisfied the requisite 'who, what, when, where, and how.'" *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010); *see also In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099 (C.D. Cal. 2012) (similar). Additionally, courts routinely find Rule 9(b) satisfied where, as here, the alleged misrepresentations appear in printed or online materials the complaint identifies. *See, e.g.*, *Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069, at *11–12 (S.D. Cal. Aug. 14, 2020). Here, Plaintiffs have done exactly that. *See* FAC ¶¶ 1–2, 24–28.

For example, the header to every WhatsApp chat—which, by definition, every WhatsApp user, including the named plaintiffs, viewed—states "Messages and calls are end-to-end encrypted. Only people in this chat can read, listen to, or share them." *Id.* ¶ 28. This is exactly the sort of digital product packaging mentioned above, as every WhatsApp user must view the header to utilize the product. Another example is WhatsApp's contractual Privacy Policy, which was agreed between WhatsApp and every Plaintiff and promises that users can "message privately" and that "your personal messages, photos, calls and more stay between you and the people you choose, meaning not even WhatsApp can see them." FAC ¶ 25. Additionally, WhatsApp's home page until recently "touted that WhatsApp is encrypted for everyone and allows users to message privately with everyone." FAC ¶ 24 (cleaned up). All these misrepresentations are in printed form, satisfying Rule 9(b)'s requirements as to "what" and "where" (and the other particularity requirements).

Defendants' authorities are not to the contrary, as each involved consumer-advertising claims where the plaintiffs did not identify specific deceptive marketing, or even the medium for the alleged misrepresentations. *See In re NJOY Inc. Consumer Class Action Litigation,* 2014 WL 12586074, at *9–11 (C.D. Cal. Oct. 20, 2014); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978–79 (N.D. Cal. 2016). Indeed, *NJOY* endorsed the opposite result where a complaint pleads a campaign's

"core message," gives examples, and identifies the medium. 2014 WL 12586074, at *9–11. And *Yastrab* ultimately failed because those plaintiffs "ha[d] not particularly explained ***what*** was false about Apple's marketing materials and ***why*** such materials were false." 173 F. Supp. 3d at 980 (emphasis added). None of these cases suggest dismissal would be appropriate where the plaintiff identifies misrepresentations: in the defendant's app, contract with plaintiffs, written marketing, and concessions in the lawsuit.

***When and How.*** The "when" is April 5, 2016 through the present, as Defendants have continuously represented throughout that users' WhatsApp messages are private and that Defendants would not access and store them. FAC ¶¶ 22, 108, 193. This more than suffices. *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (allegation that "when" is "since at least 2006" satisfies Rule 9(b)); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1100 (holding that complaint asserting "when" was "throughout the class period" satisfied Rule 9(b)). It bears repeating that users encountered Defendants' deceptive messaging each time they started a new WhatsApp conversation. FAC ¶¶ 1, 28. In Defendants' cases, the software at issue did not contain a consistent, unchanging fraudulent message within the actual product. *See Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 921 (N.D. Cal. 2026) (defendant could not "determine what specific representations" were made without specific dates); *In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (misrepresentation at issue was not in Zoom application itself). This immediately distinguishes their authority in full.

The "how" is by consistently telling users that their WhatsApp messages were private, while maintaining access to, storing, and using those messages. FAC ¶¶ 108, 193. This satisfies Rule 9(b). *Chacanaca*, 752 F. Supp. 2d at 1126; *ConAgra*, 908 F. Supp. 2d at 1099. Defendants ask instead how executives "managed to carry out a decade-long fraudulent scheme" and "why anyone" would. Mot. at 14. Rule 9(b) does not require particularity as to how they kept their misconduct concealed or as to the "conditions of a person's mind," and motive is not an element of any claim here.

## V. <u>CONCLUSION</u>

The Court should deny Defendants' motion to dismiss the First Amended Complaint.

DATED: September 15, 2026

By: */s/ Adam Wolfson*
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Adam Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
Stephen A. Broome (Bar No. 314605)
stephenbroome@quinnemanuel.com
Kevin Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Valerie Roddy (Bar No. 235163)
valerieroddy@quinnemanuel.com
Lauren B. Lindsay (Bar No. 280516)
laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN, LLC
Warren Postman (Bar No. 330869)
wdp@kellerpostman.com
Ashley Keller (pro hac vice forthcoming)
ack@kellerpostman.com
J.J. Snidow (pro hac vice forthcoming)
jj.snidow@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (833) 633-0118

BARNETT LEGAL, PLLC
Jay W. Barnett (pro hac vice forthcoming)
jay@barnettlegal.net
3404 NW 135th Street
Oklahoma City, OK 73120
Telephone: (405) 456-9343

*Attorneys for Plaintiffs*