Dane H. Butswinkas (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
David M. Krinsky (*pro hac vice*)
William B. Snyderwine (*pro hac vice*)
dbutswinkas@wc.com
cwilson@wc.com
dkrinsky@wc.com
wsnyderwine@wc.com
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000

Rebecca Furman (SBN 294082)
Marjon Y. Momand (SBN 327877)
rfurman@lewisllewellyn.com
mmomand@lewisllewellyn.com
Lewis & Llewellyn LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 800-0590

*Counsel for Defendants Meta Platforms, Inc. and WhatsApp, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMA DAWSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 3:26-cv-00751-RFL<br><br>**META PLATFORMS, INC.'S, AND WHATSAPP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. Rita F. Lin |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Do Not Plausibly Allege Access or Use. ..... 1

II. Plaintiffs Do Not Plausibly Allege That Defendants Accessed WhatsApp Messages for Any Purpose Beyond What Defendants Publicly Disclose. ..... 4

III. Plaintiffs' Benefit-and-Loss Allegations Remain Deficient. ..... 4

IV. Plaintiffs' Fraudulent Averments Are Not Pleaded With Particularity. ..... 8

A. The Egregiousness of the Intrusion Depends On Fraud. ..... 8

B. Plaintiffs' Particularity Arguments Fail. ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## CASES

*Alhathloul v. DarkMatter Grp.*, 795 F. Supp. 3d 1253 (D. Or. 2025) ........ 3

*Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ........ 9

*Arcell v. Google LLC*, 744 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 2, 3, 4

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ........ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3, 4

*Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806 (N.D. Cal. 2022) ........ 5

*Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 7

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 7

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........ 9

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ........ 3

*Clancy v. Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) ........ 9

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 5

*CTC Real Estate Servs. v. Lepe*, 44 Cal. Rptr. 3d 823 (2006) ........ 7

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 7

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1062 (N.D. Cal. 2023) ........ 7, 8

*Hall v. Marriott*, 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ........ 9

*In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888 (N.D. Cal. 2026) ........ 7

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) ........ 2

*In re ConAgra Foods*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012) ........ 9

*In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) ........ 6, 7

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 6, 7, 8

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 6

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........ 2, 3

*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 7

*In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ..... 10

*In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ..... 6

*Lau v. Gen Digital Inc.*, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ..... 7

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..... 7

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..... 6

*Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025) ..... 6

*Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116 (N.D. Cal. 2019) ..... 5

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..... 9

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..... 7

*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) ..... 8, 10

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 5, 2025) ..... 6

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..... 2

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 7

*Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) ..... 10

*Tanner v. Acushnet Co.*, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ..... 5

*Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ..... 8

*Urenia v. Pub. Storage*, 2015 WL 3378247 (C.D. Cal. May 7, 2015) ..... 3

*Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972 (N.D. Cal. 2016) ..... 10

**STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ..... 4, 6, 7

Cal. Penal Code § 502 ..... 4, 5

Cal. Penal Code §§ 484, 496 ..... 4, 5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ..... *passim*

Federal Rule of Civil Procedure 9 ..... 8, 9, 10

Federal Rule of Civil Procedure 12 ..... *passim*

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I, § 1 ..... 1, 8

## INTRODUCTION

Plaintiffs have long implied that they can supply facts for their claims. But although Plaintiffs' Opposition, Dkt. No. 75 ("Opp."), attempts to rehabilitate the First Amended Complaint's allegations, Dkt. No. 59 ("FAC"), their case ultimately turns on no more than the say-so of a single person, who Plaintiffs fail to allege had any first-hand knowledge or another reliable basis to explain the source of messages he or she allegedly saw. At most, Plaintiffs' allegations are consistent with receiving access only to messages Defendants disclose are not end-to-end encrypted, such as messages users choose to share when reporting potentially problematic messages. The two articles Plaintiffs cite offer no help—not least because those articles and the sources upon which they rely refute Plaintiffs' claim. Dismissal of the FAC in its entirety, with prejudice, is warranted.

Multiple claims also still suffer from additional fatal flaws. Plaintiffs' Opposition confirms that their allegations of benefit and damage hinge on "information and belief" and the implausible, conclusory assertion that WhatsApp messages are similar to other forms of data. No pleaded facts suggest Defendants benefit or profit from WhatsApp messages. As to the fraud claims, Plaintiffs first obscure the issue, by arguing their reasonable expectation of privacy does not depend on fraud, contrary to the Court's order. *See* Dkt. No. 58 ("Order") at 13–14 (holding the elements of "highly offensive" and "serious, egregious" invasion of privacy depend on fraud). And as Plaintiffs' allegations of a decade-long "scheme" involving unknown "officers" and "every" privacy statement do not meet Rule 9's requirements, all of Plaintiffs' fraud-dependent claims fail.

## ARGUMENT

### I. Plaintiffs Do Not Plausibly Allege Access or Use.

The plausibility of Plaintiffs' "information and belief" claim of a vast, worldwide conspiracy to defraud 3 billion WhatsApp users hinges on a single contractor, who Plaintiffs claim personally accessed users' messages. But it is undisputed that the contractor never worked on WhatsApp and lacks any understanding of the source of the messages he or she allegedly reviewed. *See* FAC ¶¶ 42–44. Plaintiffs fail to identify a single factual allegation establishing the contractor was able to distinguish between private messages and user-reported messages, much less that the contractor knew they could access every message for every user. Plaintiffs even concede that they and their supposed

source do not know ***how***—and thus ***whether***—Defendants access WhatsApp users' encrypted messages. *See* Opp. at 5–6. Plaintiffs instead tout allegations the contractor had "personal access to users' WhatsApp messages[.]" *Id.* at 2 (quoting FAC ¶¶ 41–42) (emphasis omitted). Standing alone, that conclusory assertion fails to plead facts showing firsthand knowledge or a reliable basis. Further, it fails to explain the source of the messages and whether it was every single message (as alleged) or only those messages users choose to report to WhatsApp. Thus, Plaintiffs fail to "do more than allege facts that are merely consistent with both [Plaintiffs'] explanation and [the] defendants' competing explanation" that the contractor viewed messages reported to WhatsApp consistent with Defendants' disclosures, which are not at issue. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). The FAC should be dismissed with prejudice.

Plaintiffs assert that Defendants' argument "boils down to demonstrating that their reading is ***plausible*** alongside Plaintiffs' allegations" under *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011). Opp. at 4–5. But *Starr* requires "two alternative [plausible] explanations," and the theories here are mutually exclusive. 652 F.3d at 1216. Plaintiffs' contractor either only reviewed messages that users chose to share by reporting ***or*** he or she saw messages beyond that. As a result, while Plaintiffs need not plead facts "tending to rebut all possible" allegations, Opp. at 5 (quotation omitted), they had to but failed to allege facts "***tending to exclude***" Defendants' alternative explanation, *Century Aluminum*, 729 F.3d at 1108 (emphasis added),[1] and the allegations "do not permit the court to infer more than the mere possibility of misconduct," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs also assert they pleaded sources additional to the contractor. Notably, Plaintiffs' Opposition does not rely on the hearsay from the contractor's "friend." FAC ¶ 42. Instead, Plaintiffs attempt to bolster the contractor with purported sources from two articles published ***after*** Plaintiffs first filed the complaint. Opp at 3. Plaintiffs must "describe some basic facts about how each [source from the article] knows about what they have described," Order at 10, and they must buttress the articles with facts from a sufficient factual investigation, *In re McKesson HBOC, Inc. Sec. Litig.*, 126

[1] Plaintiffs say the complaint in *Century Aluminum* was "devoid of factual content." Opp. at 5, n.1. So is the FAC. In *Century Aluminum*, the shares in question "*could have* come from the secondary offering," potentially resulting in liability. 729 F.3d at 1108 (emphasis added). Here, Plaintiffs argue the same, saying "the case is about" what Defendants "*could* access." Opp. at 5–6 (emphasis added).

F. Supp. 2d 1248, 1271–72 (N.D. Cal. 2000) (requiring articles "provide[] detailed factual allegations . . . in combination with plaintiff's investigative efforts" and describe sources "with sufficient particularity to support the probability that a person . . . would possess the information alleged").[2]

Plaintiffs do neither. Plaintiffs mischaracterize one article as having "relied on firsthand testimony from a named source" describing his "personal access" to WhatsApp messages. *Id.* at 6. Plaintiffs' allegations do not describe "testimony" but multi-level hearsay—an article about a report about an interview—and a vague sentence fragment ("pull whatever they wanted and then send it"). FAC ¶ 45. That fails to show the "source" personally accessed WhatsApp messages, and the article never says he did. *See* Order at 10; FAC ¶ 45. (In fact, that supposed source has testified via affidavit that he never viewed WhatsApp encrypted messages.) Next, Plaintiffs allege a reporter's "firsthand review of a federal agent's report" supports their claims. Opp. at 6–7. But that fails to supply the missing details of whether any of the unnamed people in the report had a basis to say they personally accessed WhatsApp messages beyond what is disclosed. Such details are particularly crucial here, as the federal agent's own agency said the report was "unsubstantiated." Dkt. 40-2 at 2. Plaintiffs' allegation "on information and belief" that Meta lobbied the government cannot corroborate the unnamed source's supposed knowledge and, in any event, is classic conclusory speculation. FAC ¶ 47; *see also Iqbal*, 556 U.S. at 678.

Plaintiffs also passingly rely on vague expert speculation, asserting "this Court has already held [Plaintiff's expert's] explanations plausible." Opp. at 6 (citing Order at 18). But Plaintiffs conflate the plausibility standard with the sanctions standard. *Compare Iqbal*, 556 U.S. at 678, *with Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). The Court also never stated the expert's theory (which has not been disclosed in any detail) was plausible, *see* Order at 18, and the expert's second-hand speculation is no substitute for pleading facts, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Finally, Plaintiffs argue that they and their source need not explain "how the widget worked,"

[2] Plaintiffs argue *In re McKesson* is a PSLRA case, but its reasoning is not so limited and other courts have adopted it in non-PSLRA cases. *See, e.g.*, *Alhathloul v. DarkMatter Grp.*, 795 F. Supp. 3d 1253, 1287 (D. Or. 2025); *Urenia v. Pub. Storage*, 2015 WL 3378247, at *3 (C.D. Cal. May 7, 2015).

because the case is about "what the widget . . . ***could access***." Opp. at 5–6. This Court dismissed the original complaint because "[i]t is insufficient for purposes of Rule 8 to merely ***state the conclusion*** that Defendants' employees can access users' messages" "by sending a 'task' and receiving a 'widget' in response." Order at 10 (emphasis added). Rather than address the deficiency, Plaintiffs simply disclaim their obligation to fix it and instead restate the conclusion of "what the widget . . . could access." FAC ¶ 49. But because Plaintiffs fail to plausibly allege what the supposed widget could access—or explain how—their claim that Defendants "could" access all WhatsApp messages is just a "'naked assertion[]' devoid of 'further factual enhancement'" insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## II. Plaintiffs Do Not Plausibly Allege That Defendants Accessed WhatsApp Messages for Any Purpose Beyond What Defendants Publicly Disclose.

Plaintiffs argue Defendants' alleged access to WhatsApp users' messages was not "incident to [the] operation of WhatsApp" or "routine behavior." Opp. at 7–8 (citing Order at 11, 14). Plaintiffs identified no purpose or reason why Defendants would access all messages, contrary to their longstanding representations. And, for the reasons discussed above, Plaintiffs failed to allege anything more than routine, disclosed behavior here. Plaintiffs' rote, conclusory paragraph copied into each dismissed Count does not cure the deficiency. *See* FAC ¶¶ 102, 131, 149, 162. Even if the alleged access had occurred, Plaintiffs' allegations confirm any alleged access was part of routine "investigating frauds on Facebook Marketplace." Opp. at 7. The Court should dismiss Counts 1, 3, 4, and 5 with prejudice.

## III. Plaintiffs' Benefit-and-Loss Allegations Remain Deficient.

After the Court dismissed Plaintiffs' complaint for failing to provide "any explanation of what loss Plaintiffs experienced and what benefit Defendants allegedly received," Order at 12, Plaintiffs attempted to reverse engineer allegations of benefit and damage from other cases. But Plaintiffs' borrowed, "information-and-belief" allegations fail to cure the defects facing the CDAFA, unjust enrichment, statutory larceny, and UCL claims. *See* FAC ¶¶ 117, 184, 196, 204. The Court should again dismiss Counts 2, 8, 9, and 10.

***CDAFA, Unjust Enrichment, and Statutory Larceny (Counts 2, 8, and 9)***. Plaintiffs argue

that their damages theory for each of these claims is based on Defendants' unjust retention of a benefit. Opp. at 9. But Plaintiffs' Opposition glosses over the speculative and implausible nature of the FAC's benefit allegations. Plaintiffs argue Defendants allegedly "used the content of WhatsApp messages to investigate . . . fraud on Facebook Marketplace," which "was meant to increase Meta's profits." Opp. at 8. But Plaintiffs fail to plausibly allege that Defendants access WhatsApp messages beyond what they disclose. *Supra* at 3–4. Further, "the allegations . . . are too conclusory, and [the FAC's] proffered inferences too speculative, to plausibly support the asserted theories" of injury. *Arcell v. Google LLC*, 744 F. Supp. 3d 924, 933–34 (N.D. Cal. 2024).[3] Plaintiffs allege no facts connecting the alleged use of messages to increased profits—only speculation and information and belief. *E.g.*, FAC ¶ 117. It is also facially implausible to suggest that an alleged "shut down" training program to incorporate WhatsApp messages into review of Facebook Marketplace provided Defendants any benefit. FAC ¶¶ 42–44; *e.g.*, FAC ¶ 196.

Plaintiffs next argue (Opp. at 8) that Defendants received a benefit because "WhatsApp messages provide ***the same type of*** invaluable information" as the data Defendants allegedly use in advertising or training AI models. *E.g.*, FAC ¶ 196 (emphasis added). That is nothing more than conclusory legal argument devoid of supporting factual allegations. *See Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1130–31 (N.D. Cal. 2019) (finding conclusory the allegation that defendant "was enriched by this transaction because it made a profit on the sale"). It also fails to suggest anything more than "mere misappropriation." Order at 16; *see Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) ("[T]he mere misappropriation of personal information does not establish compensable damages." (cleaned up)). The FAC contains no factual allegations suggesting Defendants use WhatsApp messages for advertising targeting or AI training, that Defendants profited from selling WhatsApp messages, or that the messages have any value, market, or traceable revenue. Rather, Plaintiffs rely on an analogy to other data. *See, e.g.*, FAC ¶ 196. But just because two types of data may be similar does not plausibly plead facts suggesting

---

[3] Plaintiffs argue *Arcell* is inapposite because it is an antitrust case. Opp. at 9. But the requirement of plausible damages extends to the claims here. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021) (CDAFA); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 817 (N.D. Cal. 2022) (unjust enrichment).

Defendants profited from WhatsApp messages at Plaintiffs' expense. That Plaintiffs dismiss the need to provide more detail, Opp. at 8–9, only confirms the allegations are conclusory.

Plaintiffs further argue (Opp. at 9) that they were damaged and "retain a stake in all the profits Meta earned from their messages." *E.g.*, FAC ¶ 196. This theory attempts to turn Plaintiffs' benefit allegations into alleged profit, but does no more than layer conclusory assertions on top of the conclusory theory that Defendants use WhatsApp messages in advertising and AI models. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 834–35 (N.D. Cal. 2020) (dismissing claim where plaintiffs did not adequately plead defendants had profited). Plaintiffs argue the case law permits their FAC to survive regardless. *See* Opp. at 9. But Plaintiffs' cases confirm the FAC's insufficiency, as all those cases involved factual allegations suggesting profit from the sale of data. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) ("*Internet Tracking*") ("Facebook sold user data to advertisers in order to generate revenue."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 5, 2025) (alleging "targeted marketing campaigns using customer profiles that integrated the customers' personally identifiable browsing history"); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("Plaintiffs here . . . present evidence that their data has economic value."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025) (alleging "detailed factual allegations as to how [defendant] . . . create[d] a 'surveillance ecosystem' at the heart of its revenue generation."); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *19 (N.D. Ill. Oct. 1, 2024) ("Plaintiffs have plausibly alleged . . . that Defendants monetized this data for their own benefit[.]"). By contrast, the FAC only speculates that WhatsApp messages are *like* other types of data with no facts suggesting actual profit from those messages. *See, e.g.*, FAC ¶ 196.

***UCL (Count 10)***. Plaintiffs support this Count with a damages theory that, without the privacy promised by Defendants, users of a free service were "effectively charged" when their encrypted WhatsApp messages were allegedly accessed. Opp. at 9–10 (citing FAC ¶¶ 116, 196, 203–05). But the Ninth Circuit has affirmed dismissal of a UCL claim where the district court held that "personal information does not constitute property for purposes of a UCL claim" and that, for free services (like WhatsApp), "as a matter of law, Plaintiffs cannot state a UCL claim." *In re Facebook Priv. Litig.*,

791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014). Likewise, another court in this jurisdiction recently held that "Plaintiffs' personal information does not constitute property." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025); *see also In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 904–05 (N.D. Cal. 2026) (dismissing a UCL claim involving access of user data where Plaintiffs failed to allege "they lost money or property").

Plaintiffs contend that Defendants "ignore th[e] clear line of cases post-dating *Low*," relying on *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021). Opp. at 10–11. But *Low v. LinkedIn Corp.* remains good law. 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012), and found that personal digital information "is not property over which [individuals] have established a legitimate claim to exclusivity" or are "capable of exclusive possession or control." *Id.* (cleaned up). Further, numerous courts have held that disclosure of personal information alone does not constitute loss, where, as here, plaintiffs fail to allege the information has concrete value. *See, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 748 (N.D. Cal. 2023); *see also, e.g.*, *Shah*, 768 F. Supp. 3d at 1048; *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024); *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023). *Calhoun* also relies inapposite authority. *See Doe I*, 741 F. Supp. 3d at 845. *CTC Real Estate Servs. v. Lepe* is about personal information stolen and used for identity theft, where the damages in question were surplus *funds* from fraudulent transactions. 44 Cal. Rptr. 3d 823, 860–61 (2006). *Internet Tracking* is about Article III standing and, unlike here, also contained concrete factual allegations of financial value. 956 F.3d at 600–01.

Plaintiffs also rely on *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ("*Meta Pixel*"), and *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021), in support of their "effectively charged" theory. Opp. at 10. But Plaintiffs fail to mention that in those cases, unlike here, the court found that the plaintiffs alleged facts sufficient to plead an economic injury. *See Meta Pixel*, 724 F. Supp. 3d at 1025 (alleging their personal data "has value as [] demonstrated by the use and *sale* of it by" the defendant (emphasis added)); *Brown*, 2021 WL 6064009, at *15 (describing market for plaintiffs' browser data). Here, Plaintiffs have not alleged the existence of *any* historic or contemporary market for their encrypted WhatsApp messages. *See* FAC ¶¶ 197–206. Nor did Plaintiffs pay to use WhatsApp. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1062, 1089

(N.D. Cal. 2023) ("Courts in this district have dismissed cases where, like here, . . . it was undisputed that plaintiffs paid no money to the defendant.").

## IV. Plaintiffs' Fraudulent Averments Are Not Pleaded With Particularity.

### A. The Egregiousness of the Intrusion Depends On Fraud.

For Plaintiffs' invasion of privacy (Count 4) and intrusion upon seclusion (Count 5) claims, Plaintiffs argue that they need not satisfy Rule 9(b), because that rule does not apply to whether Plaintiffs had a "reasonable expectation of privacy" when using WhatsApp. *See* Opp. at 11. But Plaintiffs focus on the wrong element. The relevant question is whether the FAC's allegations supporting the separate "'highly offensive' or a 'serious, egregious' invasion of privacy" elements are themselves grounded in fraud. *See* Order at 13. This Court has already answered that question in the affirmative. *See id*. Although Plaintiffs assert it "would be legal error" Opp. at 11, they identify no reason to revisit the Court's decision. Nor is there one. Plaintiffs' FAC merely repackages fraud as contractual misrepresentation, and whether the alleged conduct was "highly offensive" or "egregious" turns on the alleged misrepresentations. FAC ¶¶ 143–44, 156–57.

Plaintiffs rely on *Internet Tracking*, citing the court's analysis of the "reasonable expectation of privacy" element. Opp. at 11–12. But Plaintiffs ignore the court's separate analysis of the "highly offensive" element. The court did not look to Facebook's representations, as Plaintiffs argue; rather, the court focused on the "allegations of surreptitious data collection" on third-party sites. 956 F.3d at 606. Here, by contrast, Plaintiffs focus exclusively on Defendants' "promises and representations," and allege the gap between the promise (messages are private) and the alleged conduct (accessing those messages) makes the conduct highly offensive. *E.g.*, FAC ¶ 143.

Plaintiffs also make unwarranted assumptions about the Ninth Circuit's silence on Rule 9(b), but that only reflects that the issue was not raised. *See generally Internet Tracking*, No. 17-17486, ECF No. 33. Recently, courts have held that these types of claims require plaintiffs to "sufficiently allege that Defendants did more than engage in" data collection. *See, e.g.*, *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (citation omitted). Some kind of deceit is often required. *See id.*; *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 917 (N.D. Cal. 2026). For that reason, Plaintiffs' allegations about those elements are laden with Defendants' alleged

misrepresentations. *E.g.*, FAC ¶ 143. But because their fraudulent averments fail to meet Rule 9(b), these claims should be dismissed. *See* Order at 13–14; Mot. at 12–15; *infra* at 9–10.

**B. Plaintiffs' Particularity Arguments Fail.**

Relying on inapposite cases primarily from the food-labeling context, Plaintiffs claim to meet Rule 9(b) by alleging that entire companies (Meta and WhatsApp) engaged in a "scheme" to defraud all WhatsApp users over a decade through "[e]very single statement" regarding WhatsApp privacy. *See* Opp. at 12–15; *e.g.*, FAC ¶ 108. But Plaintiffs' allegations that Defendants deceived users by "consistently tell[ing them] that their WhatsApp messages were private" while accessing those messages, *id.* at 15 (the "how"), are not even plausible under Rule 8(a), *e.g.*, *supra* at 1–2, much less particularized under Rule 9(b). Plaintiffs further admit they allege only "the company is the speaker" and provide "examples" of public statements regarding WhatsApp privacy. *See* Opp. at 12–14. That is not adequate notice of a decade-long "***scheme*** to deceive or defraud consumers," perpetrated by unknown "officers and/or high-level employees of Meta and WhatsApp," involving "[e]very single" privacy statement. FAC ¶ 108 (emphasis added). Plaintiffs' vague allegations, *e.g.*, FAC ¶ 193, come nowhere close to providing the notice required by Rule 9(b), *see, e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) (collecting cases).

Plaintiffs' Opposition attempts to salvage the fraud claims, but the arguments are unavailing. *First,* Plaintiffs' reliance on food-labeling cases is misplaced. *See* Opp. at 12–14. Those cases concern alleged fraud through a specific, static statement on a food product label.[4] Identifying it was thus sufficient to provide adequate notice. *See, e.g.*, *In re ConAgra Foods*, 908 F. Supp. 2d at 1098–1100 (agreeing that the complaint "pleads sufficient information to put [the defendant] on notice of its allegedly wrongful conduct").[5] But here, Plaintiffs allege a wide-ranging, decade-long "scheme"

---

[4] *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *4 (N.D. Cal. Sept. 25, 2013) ("excellent source of fiber"); *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) ("Pure Green Tea," "100% Organic Pure Black Tea"); *In re ConAgra Foods*, 908 F. Supp. 2d 1090, 1099–1100 (C.D. Cal. 2012) ("100% Natural"); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *5–6 (N.D. Cal. May 26, 2011) ("all natural"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119, 1126 (N.D. Cal. 2010) ("0 grams trans fat").

[5] Similarly, the court in *Hall v. Marriott* found that the plaintiffs gave "adequate notice" through examples of specific online and print materials that they viewed, plus particularized allegations about their booking dates, properties, and prices. 2020 WL 4727069, at *11–12 (S.D. Cal. Aug. 14, 2020).

and cover-up, *see, e.g.*, FAC ¶ 108, and the privacy representations at issue were not made on a static label, but rather in different forms, across different media, with different wording, during different periods of time. As courts have consistently held, providing "examples" (that this Court already reviewed, *see* Order at 2–3) does not provide adequate notice of the "what" and "where" required to plead fraud under Rule 9(b). *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig*., 2014 WL 12586074, at *10–11 (C.D. Cal. Oct. 20, 2014); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016). And a blanket allegation that fraud occurred from April 5, 2016 through present fails to allege "when" it occurred under Rule 9(b), where the representations themselves varied. *See Shah*, 824 F. Supp. 3d at 921.

*Second*, Plaintiffs claim the "Ninth Circuit has held that identifying [the company] satisfies Rule 9(b)." Opp. at 12–13 (citing *Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016)). But *United Healthcare* concerned a standard specific to the False Claims Act, which has no application here. Further, unlike here, the plaintiff-relator did identify a specific employee involved in the alleged fraud. *See United Healthcare*, 848 F.3d at 1180, 1182 ("it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference" that claims were submitted (citation omitted)).

*Third,* Plaintiffs conflate their obligation to identify the "who" with knowledge of falsity by explaining at length the circumstances under which—pursuant to state law, not Rule 9(b)—knowledge of an employee may be imputed to a corporation. Opp. at 13. That plaintiffs may allege knowledge generally does not obviate their obligation to identify *who* at the company was responsible for false representations.

**CONCLUSION**

The Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: September 22, 2026

*/s/ C. Bryan Wilson*

Dane H. Butswinkas (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
David M. Krinsky (*pro hac vice*)
William B. Snyderwine (*pro hac vice*)
dbutswinkas@wc.com
cwilson@wc.com
dkrinsky@wc.com
wsnyderwine@wc.com
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000

Rebecca Furman (SBN 294082)
rfurman@lewisllewellyn.com
Marjon Y. Momand (SBN 327877)
mmomand@lewisllewellyn.com
Lewis & Llewellyn LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 800-0590

*Counsel for Defendants*

**CERTIFICATIONS**

On September 22, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Federal Rule of Civil Procedure 5(a) and Civil Local Rule 5-1 have been so served.

*/s/ C. Bryan Wilson*
C. Bryan Wilson